## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

KATHLEEN A. BREEN                         )
58 Ames Road                              )
Lisbon, CT 06351,                         )
                                          )
MILTON J. TORRES, III                     )
16071 S.W. 73rd Street                    )
Miami, FL 33193,                          )
                                          )
RICHARD C. ANDERSON                       )
1945 67TH Avenue North                    )
St. Petersburg, FL 33702,                 )
                                          )
RONALD J. CONSALVO                        )
5 Devonshire Drive                        )
Glassboro, NJ 08028,                      )
                                          )
MARK JAFFE                                )
918 West Lovers Lane                      )
Arlington, TX 76013,                      )
                                          )
DARRELL G. MOUNTS                         )
10230 Melody Drive                        )
Northglenn, CO 80260-6044,                )
                                          )
JOHN O'CONNELL                            )
1776 Havenshire Lane                      )
Brighton, MI 48114-8737,                  )
                                          )
MICHAEL J. SHELDON                        )
151 Gulf Street                           )
Milford, CT 06460,                        )
                                          )
JERRY VANVACTER                           )
2424 Popular Avenue                       )
Duncombe, IA 50532,                       )
                                          )
        Plaintiffs &                      )
        Class Representatives,            )
                                          )
        and                               )

```
785 ADDITIONAL PLAINTIFFS          )
(as listed in Exhibit 1),          )
                                   )
     Plaintiffs,                   )
                                   )
     v.                            )    Civil Action No. _____
                                   )
NORMAN Y. MINETA                   )
SECRETARY                          )
U.S. Department of                 )
        Transportation             )
400 7th Street, S.W.               )
Washington, DC 20590,              )
     v.                            )
                                   )
MARION C. BLAKEY                   )
ADMINISTRATOR                      )
Federal Aviation Administration    )
800 Independence Avenue, S.W.      )
Washington, DC 20591,              )
                                   )
        Agency.                    )
_____)
```

## CLASS ACTION COMPLAINT

1.  By and through undersigned counsel, Plaintiffs Kathleen A. Breen, Milton J. Torres, III, Richard C. Anderson, Ronald J. Consalvo, Mark Jaffe, Darrell G. Mounts, John O'Connell, Michael J. Sheldon, and Jerry VanVacter, on their own behalf and on behalf of a class of all Flight Service Air Traffic Control Specialists employed by the Federal Aviation Administration ("FAA" or "Defendants"), an agency of the U.S. Department of Transportation, who are over 40 years of age (approximately 1,770 persons) and adversely affected by the

FAA's decision to eliminate federal employment and related benefits within the next seven (7) months at the 58 Automated Flight Service Stations as announced by the FAA on February 1, 2005, hereby file this Class Action Complaint.  The nine Plaintiff Class Representatives are joined by 785 additional Plaintiffs in bringing this Complaint. (See Exhibit 1).  Each of these 785 additional Plaintiffs not only is a member of the class, but also asserts individual claims of age discrimination on his or her own behalf.  The purpose of this Complaint is to challenge unlawful age discrimination in employment by the FAA pursuant to the Age Discrimination in Employment Act of 1967, as amended.  29 U.S.C. § 621, 633a et seq.  Plaintiffs, on their own behalf and on behalf of the class described above, seek relief for harms caused by the Defendants' unlawful and intentional age discrimination in eliminating federal employment and related benefits for Flight Service Air Traffic Control Specialists (hereinafter "Flight Service Controllers") including Plaintiffs, which workforce consists of approximately 92 percent older[1] employees (i.e., over 40) employees, at the Automated Flight Service Stations in the continental United States, Puerto

---

[1] Affected Flight Service Controllers number approximately 1,935, and approximately 1,770 of them are over the age 40.

Rico, and Hawaii.   The Flight Service Controllers adversely affected by the announcement, including Plaintiffs, will have their federal positions eliminated by the FAA within the next seven (7) months and will be terminated from federal employment. Many will be forced to accept private employment with the designated government contractor, Lockheed Martin, which is scheduled to assume total control of the Flight Service component of Air Traffic Control within seven (7) months, and to incur related moving expenses.

2.   In this action, Plaintiffs seek injunctive relief for continuation of their Flight Service Controller (ATCS) positions that the FAA proposes to eliminate, plus back pay and benefits, front pay, record correction, and attorney fees.

### Parties

3.   Plaintiff Class Representative Kathleen A. Breen is employed as an Air Traffic Control Specialist in the Flight Service component of the FAA.   Her address is 58 Ames Road, Lisbon, CT 06351.   At the filing of this Complaint, Ms. Breen is 44 years of age.

4.   Plaintiff Class Representative Milton J. Torres, III is employed as an Air Traffic Control Specialist in the Flight Service component of the FAA.   He resides at 16071 S.W. 73rd

4

Street, Miami, FL 33193.  At the filing of this Complaint, Mr. Torres is 47 years of age.

5.    Plaintiff Class Representative Richard C. Anderson is employed as an Air Traffic Control Specialist in the Flight Service component of the FAA.  He resides at 1945 67th Avenue North, St. Petersburg, FL 33702.  At the filing of this Complaint, Mr. Anderson is 45 years of age.

6.    Plaintiff Class Representative Ronald J. Consalvo is employed as an Air Traffic Control Specialist in the Flight Service component of the FAA.  He resides at 5 Devonshire Drive, Glassboro, NJ 08028.  At the filing of this Complaint, Mr. Consalvo is 46 years of age.

7.    Plaintiff Class Representative Mark Jaffe is employed as an Air Traffic Control Specialist in the Flight Service component of the FAA.  He resides at 918 West Lovers Lane, Arlington, TX 76013.  At the filing of this Complaint, Mr. Jaffe is 52 years of age.

8.    Plaintiff Class Representative Darrell G. Mounts is employed as an Air Traffic Control Specialist in the Flight Service component of the FAA.  He resides at 10230 Melody Drive, Northglenn, CO 80260-6044.  At the filing of this Complaint, Mr.

Mounts is 47 years of age.

9.   Plaintiff  Class  Representative  John  O'Connell  is employed  as  an  Air  Traffic  Control  Specialist  in  the  Flight Service  component  of  the  FAA.   He  resides  at  1776  Havenshire Lane,  Brighton,  MI  48114-8737.   At  the  filing  of  this  Complaint, Mr. O'Connell is 63 years of age.

10.  Plaintiff Class Representative Michael J. Sheldon is employed  as  an  Air  Traffic  Control  Specialist  in  the  Flight Service  component  of  the  FAA.   He  resides  at  151  Gulf  Street, Milford,  CT  06460.   At  the  filing  of  this  Complaint,  Mr.  Sheldon is 46 years of age.

11.  Plaintiff  Class  Representative  Jerry  VanVacter  is employed  as  an  Air  Traffic  Control  Specialist  in  the  Flight Service  component  of  the  FAA.   He  resides  at  2424  Poplar  Avenue, Duncombe,  IA  50532.   At  the  filing  of  this  Complaint,  Mr. VanVacter is 42 years of age.

12.  All 785 additional Plaintiffs listed in Exhibit 1 are current  Flight  Service  Controllers  employed  by  the  Federal Aviation  Administration  and  are  over  the  age  of  40,  as  of  the date  of  filing  this  Complaint.   Each  of  these  785  additional Plaintiffs  not  only  is  a  member  of  the  class,  but  also  asserts individual  claims  of  age  discrimination  on  his  or  her  own

6

behalf.

13.   The first Defendant in this action is the Honorable Norman Y. Mineta, Secretary, U.S. Department of Transportation. Secretary Mineta is sued in his official capacity only.   The Department of Transportation is headquartered at 400 7th Street, S.W., Washington, DC 20590.

14.   The second Defendant is Marion C. Blakey, Administrator, Federal Aviation Administration.   Administrator Blakey is sued in her official capacity only.   The Federal Aviation Administration is headquartered at 800 Independence Avenue, S.W., Washington, DC 20591.

## Jurisdiction and Venue

15.   This Court has jurisdiction over this Complaint because it presents a question of federal law.   28 U.S.C. § 1331.   Specifically, this Court has jurisdiction over this Complaint pursuant to 29 U.S.C. § 626(b).

16.   This Court is the proper venue pursuant to 28 U.S.C. § 1391 and 29 U.S.C. § 633a(c) because all of the unlawful discriminatory decisions and transactions were determined and issued by the Federal Aviation Administration, an agency of the U.S. Department of Transportation, at its headquarters in the District of Columbia.

## Exhaustion of Administrative Remedies

17.   Plaintiffs Kathleen A. Breen, Milton J. Torres, III, Richard C. Anderson, Ronald J. Consalvo, Mark Jaffe, Darrell G. Mounts, John O'Connell, Michael J. Sheldon, and Jerry VanVacter, provided Notice to the Equal Employment Opportunity Commission of their intent to file this civil action pursuant to section 15(d) of the ADEA on February 8, 2005.  29 U.S.C. § 633a(d); 29 C.F.R. § 1614.201(a).  This initial Notice was supplemented on February 9, 2005.

18.   The 785 additional Plaintiffs listed in Exhibit 1 provided Notice to the Equal Employment Opportunity Commission of their intent to file this civil action pursuant to section 15(d) of the ADEA on March 1, 2005 (30 days ago).  29 U.S.C. § 633a(d); 29 C.F.R. § 1614.201(a).

## Definition of the Class

19.   The class in this case includes approximately 1,770 of the 1,935 current Flight Service Controllers now employed by the FAA, who are over the age of 40 and adversely affected by the FAA's February 1, 2005 announcement.  The discriminatory decision to contract out the Flight Service component of Air Traffic Control, which has historically been classified as inherently governmental, will have the effect of terminating

8

Plaintiffs' positions with the FAA, eliminating or reducing their pay, dramatically limiting their retirement benefits, and prematurely ending their federal careers at the conclusion of the seven-month or earlier phase-in period in or about October 2005. Prior to the February 1, 2005 announcement, no private-sector industry existed that compared to the Flight Service functions performed by the FAA's Automated Flight Service Stations. Plaintiffs have been made the targets of the FAA's discriminatory decision because they are over 40 years of age. See Exhibit 3 attached.

20. Plaintiff Class Representatives propose to represent a class of approximately 1,770 current FAA Flight Service Air Traffic Control Specialists, a class whose members are over the age of 40. This class includes the 785 additional Plaintiffs listed in Exhibit 1.

## Class Allegations

21. This action is properly maintainable as a class action under Rule 23(a) of the Federal Rules of Civil Procedure.

22. The members of the proposed class, numbering approximately 1,770 FAA Flight Service Air Traffic Control Specialists, are sufficiently numerous to make joinder impracticable. See Fed. R. Civ. P. 23(a)(1).

9

23.   Plaintiffs' claims raise questions of law or fact common to the class.  The common question is whether Defendants discriminated against the over-40 class members (represented by the Plaintiff Class Representatives) by the FAA's decision to eliminate these persons' federal employment and related benefits within the next seven (7) months at the 58 Automated Flight Service Stations as announced on February 1, 2005. <u>See</u> Fed. R. Civ. P. 23(a)(2).

24.   The FAA's discriminatory decision affected all of the approximately 1,770 class members; and the class members are faced with almost identical questions of fact, differing only with respect to which of the limited options they availed themselves as a result of the FAA's decision.  Moreover, the class members have common issues of fact because the contracting-out and personnel decisions were entirely determined and administered by the FAA. <u>See</u> Fed. R. Civ. P. 23(a)(2).

25.   The class members are all being subjected to age discrimination and therefore have claims in common. <u>See</u> Fed. R. Civ. P. 23(a)(2).

26.  The class members are alleging age discrimination because 92 percent of the affected Flight Service Controllers are over age 40 and protected by the Age Discrimination in

10

Employment Act. <u>See</u> Fed. R. Civ. P. 23(a)(2).

27.  The claims of the Plaintiff Class Representatives are typical of the claims of the class.  Like all class members, the Plaintiff Class Representatives are Flight Service Controllers who will lose their federal employment and related benefits unless they prevail in this action. <u>See</u> Fed. R. Civ. P. 23(a)(3).

28.  The named Plaintiff Class Representatives and undersigned counsel will properly represent the interests of the class and its members. <u>See</u> Fed. R. Civ. P. 23(a)(4).

29.  This class action should properly be maintained under Fed. R. Civ. P. 23(b)(2) because Defendant's actions in contracting out all Flight Service Controllers are generally applicable to all members of the class, and injunctive relief is appropriate and sought in this case.

30.  This class action is also properly maintainable pursuant to Fed. R. Civ. P. 23(b)(1) because there is a real danger of inconsistent and varying adjudications with respect to the 1,770 class members, who are geographically dispersed throughout the country and who might otherwise bring inconsistent claims in different jurisdictions.

31.  In addition, this class action is properly

11

maintainable pursuant to 23(b)(3) because the questions of law and fact common to members of the class predominate over questions affecting individual members, and a class action is superior to other available methods for the fair and efficient resolution of this controversy.

## Facts

32.  Flight Service Controllers perform crucial functions for our country's aviation community, which are central to the core mission of the FAA and vital to our national security. These dedicated, experienced public servants provide critical services to all types of aircraft ranging from the commercial airline captain on a cross-country flight to the pilot flying his family on a vacation trip.  For pilots awaiting departure and preparing to land, Flight Service Controllers monitor traffic and weather conditions.  Occasionally, Flight Service Controllers will direct activities for airports where there is no control tower or where the tower has been taken off-line for a temporary period.  Once airborne, pilots turn to Flight Service Controllers for briefings on hazardous weather conditions[2] as well as guidance on temporary flight

---

[2] Based on data from the National Transportation Safety Board ("NTSB"), the FAA's National Aviation Safety Data Analysis

restrictions, which are constantly being updated and altered. Flight Service Controllers maintain communication with the pilots in the air to provide up-to-the-minute route adjustments to avoid these severe weather conditions as well as prohibited, restricted, or special use airspace.  For example, when the President travels by air, his location is monitored and communicated to other aircraft through the work of the Flight Service Controllers.

33.  The tragic events of September 11, 2001, demonstrate the vital role that Flight Service Controllers play for our nation.  All safety and security directives relayed on 9/11 to the aviation community were made through Flight Service Controllers at the Automated Flight Service Stations.[3]  In the days following that fateful day, Flight Service Controllers were the ONLY human link between the pilots in the air and the FAA.

Center ("NASDAC") reports that weather contributed to or caused more than 1 out of every 5 aircraft accidents between 1991 and 2001.  NASDAC, Office of System Safety, FAA, "NTSB Weather Related Accident Study, 1991-2001," available at: https://www.nasdac.faa.gov/aviation_studies/weather_study.

[3]  In the wake of 9/11, the government decided that it had to federalize those employees who check passengers and baggage at airports. There is, of course, no logical reason to treat the highly experienced FAA Controllers who manage communications and monitor safety and security for the aviation community any differently.

34.  Without the vital experience and dedication of the present Flight Service Controllers, the number of weather-related accidents is sure to increase.  Pilots in the air will suffer, and such suffering may result in loss of life or property, which will affect all Americans.

35.  The FAA has long treated its older employees in Air Traffic Control abysmally.  <u>See, e.g.</u>, <u>Torres v. Mineta</u>, Civil Action No. 04-0015 (GK) (D.D.C., filed Jan. 8, 2004).

36.  The FAA has long wanted to eliminate its predominantly older Flight Service Controllers. According to widely available FAA materials, the Automated Flight Service Stations were targeted for contracting out to the private sector because a large percentage of the Flight Service Controller workforce was or would soon become "retirement eligible."  FAA, "Background on AFSS," available at: <u>http://www.faa.gov/aca/afss/afss.html</u> (last accessed, Feb. 1, 2005), copy attached as Exhibit 2. The Defendants have thus openly admitted an age discriminatory motive in eliminating this highly experienced, highly dedicated group of public servants.

37.  On February 1, 2005, the FAA announced that Lockheed Martin was awarded the contract for the nation's Flight Service work for the next five years at a cost of $1.9 billion, with an

14

option of five additional years. FAA, "AFSS A-76 Performance Decision: Text of Remarks by Dennis DeGaetano, Vice President of Acquisition and Business Services, FAA," available at http://www.faa.gov/aca/perf_decision/Dennis%20DeGaetano.pdf. The FAA's February 1, 2005 decision will shrink the 58 existing Automated Flight Service Stations to 20 new, consolidated facilities. See Exhibits 3 and 4 attached. This will naturally result in a reduction of the number of employees who staff the new consolidated Stations as Lockheed Martin contractors, as well as necessary relocations of those incumbent employees selected to staff the new facilities but currently working out of one of the soon-to-be-closed stations. The February 1st decision is certain to cause high attrition among the current Flight Service Controllers. These soon-to-be former federal employees have been asked to give up a meaningful federal career and significant retirement benefits. Many will likely have to move to new locations without the moving assistance benefits currently available to federal employees.

38. The FAA will be separating from federal service 1,935 Flight Service Controllers, approximately 92 percent of whom are over the age of 40, who staff the Automated Flight Service Stations. The years of experience accrued by the current Flight

15

Service Controller workforce, as the FAA well knows, cannot be replaced.  On average, it takes a full two years to properly train a new Flight Service Controller from the date of hire to when that employee attains his or her full performance level.

39.  The actions at issue here will allow the FAA to replace its older, dedicated, experienced Flight Service Controllers with new, younger workers as contractors.  All new Controllers must be under the age of 31. <u>See</u> FAA, Human Resource Policy Manual, "Maximum Entry and Retention Age for Air Traffic Control Specialists," § EMP-1.20 (July 29, 2003).

40.  In 2003, the FAA began actively recruiting new Air Traffic Controllers from outside the FAA.  Over the next 10 years, the FAA plans to supplement its present workforce with some 12,500 new, younger Controllers.

41.  Upon information and belief, no other FAA workforce unit has more older employees (older than 40 years of age) per capita than the Defendants' Flight Service Controllers.

42.  The FAA's decision to contract out its Automated Flight Service Station functions will have concrete, adverse effects on the careers of the Flight Service Controllers who stay with the FAA or Lockheed Martin.  Approximately 200 Flight Service Controllers are eligible for other Air Traffic

16

Controller positions elsewhere in the FAA.  Controllers who are forced to accept private-sector jobs with Lockheed Martin will lose their hard-earned retirement benefits and most likely future earnings.  The elimination of their federal positions at this juncture will have a severe, adverse effect on the retirement eligibility, "high three's"[4], and retirement benefits of all Flight Service Controllers.

43.  Currently, Flight Service Controllers contribute 1.3 percent of their salary to their retirement as opposed to other federal government employees who contribute only .08 percent.  This additional money (.05 percent of a Flight Service Controller's annual income) allows these Controllers who earn "good time" as a Controller to retire with either 20 years of "good time" at age 50 years or 25 years of "good time" at any age.  If a Flight Service Controller meets these criteria, he/she will then receive 1.7 percent of his/her "high three" for each year of service as part of the retirement package.  If a Flight Service Controller does not have the requisite years of

---

[4]"High three" refers to a federal employee's highest three years of earnings, which is a base calculation for determining the employee's annuity at retirement.  Generally, the longer a federal employee works, the higher his/her pay will be at retirement.  Employees who retire with higher pay receive a higher annuity.

service with the FAA but has enough years in other government service to qualify for retirement, that employee will lose the 1.7 percent bonus and revert back to a package containing only 1.0 percent of his/her "high three" for each year of federal service regardless of how many years of "good time" the Controller has.  The terminated Flight Service Controllers will lose all of the additional money they have put into their retirement fund over the years, which the FAA and the U.S. Office of Personnel Management will not refund.

44. Further, the only option for a Flight Service Controller who is not eligible for an immediate annuity is a deferred or discontinued retirement.  With penalties for years below the minimum retirement age, these employees will be left with greatly reduced retirement income and no health or life insurance benefits.

45. The FAA has announced that the award to Lockheed Martin will save the government $2.2 billion.  Logically, these savings will come from the elimination of the current older-age Flight Service Controller workforce, together with the reduction in pay and benefits for these employees now and in the future. Lockheed Martin has guaranteed three years of employment to only that portion of the current workforce that is retained at and

18

moves to the 20 new, consolidated facilities.

46.  President Bush's Presidential Management Agenda allows
federal agencies to identify possible areas of competitive
sourcing for "commercial" Agency functions, based on Office of
Management and Budget (OMB) Circular A-76 (revised May 2003) as
one of five government-wide initiatives.  The Flight Service
component of Air Traffic Control was the only FAA workforce unit
singled out for an A-76 contracting-out study in purported
response to the President's Management Agenda.  The fact that
Flight Service Controllers in Alaska, numbering approximately
155, were allowed to remain federal employees for the FAA shows
that Flight Service Control Work is a proper governmental
function.  Flight Service Control Work has historically been
considered a public function, not a private enterprise.  The
FAA's contracting-out decision contradicts the inherently
governmental function of Air Traffic Control; the decision is
based on an incorrect classification of the Flight Service
Controller function to the detriment of the flying public,
simply U.S. taxpayers and for the benefit of a private
corporation.  Most importantly, the decision is motivated by
unlawful age discrimination.

47.  In sum, FAA management officials are intentionally

destroying their Flight Service Controller workforce, targeting these older workers simply because they are older. Plaintiffs and their fellow Flight Service Controllers are being asked to pay a heavy price simply because of the Defendants' unlawful age discrimination against older employees. The FAA contracting-out decision at issue in this Complaint reflects disparate treatment and has a disparate impact on its older Flight Service Controllers.

## Causes of Action

(Disparate Treatment - Violation of the Age Discrimination in Employment Act)

48. Based on the facts described in the foregoing Paragraphs, Defendants and their agents at the FAA unlawfully discriminated against the Plaintiff Class Representatives, the other 785 Plaintiffs, and class members on the basis of their age (over 40) in violation of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621, 633a et seq. Approximately 92 percent of Flight Service Controllers are federal employees over the age of 40. The FAA has engaged in disparate treatment of its older "retirement eligible" workforce of Flight Service Controllers by deliberately and cynically targeting their jobs for elimination in order to replace them

with younger contractors (under 31) as required by FAA policy.
See ¶ 39 supra.  Further, on information and belief, the Flight
Service Control workforce is older than other FAA workforces not
contracted out.

(Disparate Impact - Violation of the Age Discrimination in
Employment Act)

49. Alternatively, based on the facts described in the
foregoing Paragraphs, Defendants and their agents are unlawfully
discriminating against the Plaintiff Class Representatives, the
other 785 Plaintiffs, and class members on the basis of their
age (over 40) for no legitimate reason in violation of the Age
Discrimination in Employment Act of 1967, as amended, 29 U.S.C.
§ 621, 633a et seq.  The decision at issue here, the FAA's
decision to contract out its Automated Flight Service Stations,
has a disparate impact upon a disproportionately older workforce
of the FAA, i.e., the approximately 92 percent of Flight Service
Controllers over the age of 40.  There is no reasonable factor
other than the age of the workforce that is motivating this
contracting-out decision.  The FAA's purported reasons for its
actions are unjustified and baseless, not to mention arbitrary
and capricious.

## Prayer for Relief

50.   WHEREFORE, Plaintiffs respectfully request this Court to:

a.   Issue preliminary and permanent injunctions to prevent the loss to Plaintiffs and class members of their federal employment and related benefits;

b.   Award appropriate back pay and benefits, front pay, and record correction to Plaintiffs and class members;

c.   Award reasonable attorney's fees and expenses of bringing this action and the earlier administrative action; and

d.   Order such other and further relief as the Court deems just and proper.

## Jury Trial Demand

51. The Plaintiffs hereby demand a jury trial on all counts triable by a jury.

Respectfully submitted,

_Joseph D. Gebhardt_
_____
JOSEPH D. GEBHARDT
    (DC Bar No. 113894)
CHARLES W. DAY, JR.
    (DC Bar No. 459820)
REBECCA M. HAMBURG
    (Admitted in CA)
GEBHARDT & ASSOCIATES, LLP
1101 17th Street, N.W.
Suite 607
Washington, DC 20036-4718
(202) 496-0400

March 31, 2005          Attorneys for Plaintiffs

Attachments:  Exhibits 1-4 (as noted above)

23