IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                         )
KATHLEEN A. BREEN, et al.,               )
                                         )
        Plaintiffs,                      )
                                         )
                v.                       )        Case No. 1:05CV00654-RWR
                                         )
MARY E. PETERS, et al.,                  )
                                         )
        Defendants                       )
_____)

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION 1) TO "PLAINTIFF'S MOTION FOR JOINDER,
OR, IN THE ALTERNATIVE, TO INTERVENE AS PLAINTIFFS
IN THE INSTANT ACTION" AND 2) TO "PLAINTIFFS' MOTION
TO REINSTATE FORMER PLAINTIFF STEPHEN C. SZYMANSKI"

PETER D. KEISLER
Assistant Attorney General

KENNETH L. WAINSTEIN
United States Attorney

STUART A. LICHT
Assistant Branch Director
Civil Division

BRIAN G. KENNEDY (D.C. Bar # 228726)
MARCIA BERMAN (PA Bar # 66168)
WILLIAM B. JAFFE (NY Bar)
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue N.W.  Room 6104
Washington, D.C.  20530
Tel.: (202) 514-3357  Fax: (202) 616-8470
Email: brian.kennedy@usdoj.gov
Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

)
KATHLEEN A. BREEN, <u>et al.</u>,      )
)
    Plaintiffs,                    )
)
           v.              )    Case No. 1:05CV00654-RWR
)
MARY E. PETERS, <u>et al.</u>,          )
)
    Defendants                    )
_____)

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION 1) TO "PLAINTIFF'S MOTION FOR JOINDER,
OR, IN THE ALTERNATIVE, TO INTERVENE AS PLAINTIFFS
IN THE INSTANT ACTION" AND 2) TO "PLAINTIFFS' MOTION
<u>TO REINSTATE FORMER PLAINTIFF STEPHEN C. SZYMANSKI</u>"

<u>INTRODUCTION</u>

      Twenty putative new plaintiffs seek to intervene in this action.  The motion
was filed nineteen months after the reduction-in-force at issue in this action and
more than two years after the original plaintiffs were able to file their notices of
intent to sue.  The new would-be plaintiffs offer no explanation for this delay (for all
we know, they might have been deliberately sitting on the sidelines until the motion
to dismiss was decided).  But, whatever the unexplained reason for their having
slept on their rights for so long, the motion is made far too late.  Those would-be
plaintiffs no longer have any interest in the subject matter of this action.  Any claim
they may once have had to challenge the personnel action at issue here – the
reduction in force that occurred nineteen months before their motion was filed – is

barred by their failure to file either a civil action or the notice of intent to sue that is

a statutory prerequisite of a civil action within the prescribed time periods.[1]

ARGUMENT

1.    The Would-Be Intervenors Did Not
      File Timely Notices Of Intent To Sue

The provisions of the Age Discrimination in Employment Act ("ADEA")

applicable to federal workers, 29 U.S.C. § 633a, provide two avenues for asserting

claims.  One is through exhaustion of administrative remedies followed by suit if

the case is not resolved administratively.  The second, which the would-be

intervenors rely upon here, is accomplished by providing a "notice of intent to file" a

civil action to the Equal Employment Opportunity Commission (EEOC) followed by

a civil action.  29 U.S.C. § 633a(d).

The requirement that a notice be filed with the EEOC where an individual

elects to file suit without filing an administrative complaint is set out in

unmistakable statutory language: "When the individual has not filed a complaint

concerning age discrimination with the Commission, no civil action may be

commenced by any individual under this section until the individual has given the

Commission not less than thirty days' notice of an intent to file such action.  Such

notice shall be filed within one hundred and eighty days after the alleged unlawful

---

[1] That would-be intervenors' claims are barred by the statute of limitations is
an appropriate basis on which to deny intervention. *See Bridges v. Maryland State
Police*, 441 F.3d 197, 209, 213 (4th Cir. 2006); *Southern Calif. Fed. Savings & Loan
Ass'n v. United States*, 51 Fed. Cl. 114 (2001); *Abrams v. Communications Workers*,
1992 WL 88038 (D.D.C.) (Lamberth, J.).

practice occurred." 29 U.S.C. § 633a(d). Thus, "§ 633a(d) provides express prerequisites to suit (30 days advance notice of intent to sue, within 180 days of the discriminatory act's occurrence) by a claimant who 'has not filed a complaint concerning age discrimination with the [EEOC].'" *Rann v. Chao*, 346 F.3d 192, 195 (D.C. Cir. 2003), *cert. denied*, 543 U.S. 809 (2004). The EEOC's implementing regulation similarly provides that "[a]s an alternative to filing a complaint under this part, an aggrieved individual may file a civil action in a United States district court under the ADEA against the head of an alleged discriminating agency after giving the Commission not less than 30 days notice of the intent to file such an action." 29 C.F.R. 1614.201(a). The regulation further requires that the notice be filed "in writing" with the EEOC "within 180 days of the occurrence of the alleged unlawful practice." *Id.*

The would-be intervenors here do not suggest that they have ever filed an age discrimination complaint with the EEOC. Nor do they contend that they provided advance notice to the EEOC of their intent to sue within 180 days after the effective date of the RIF (*i.e.*, no later than April 1, 2006) which, as the D.C. Circuit held in *Rann*, is an "express prerequisite[] to suit" under Section 633a(d). The plain language of the statute thus mandates that "[n]o civil action may be commenced" by would-be intervenors. *Rann v. Chao*, 346 F.3d at 198-99.

The would-be intervenors contend, however, that the original plaintiffs "vicariously exhausted their administrative remedies" for them, Pls' Mem. at 6, and that "[a]ny further proceedings [*sic*] would have been a futile act and thus are not

required by law," *id.* at 4.  As we explain below, however, the would-be intervenors'
conceded failure to comply with the notice requirement, which is an express
<u>statutory</u> "prerequisite" for suit, cannot be excused based on either futility or
"vicarious exhaustion."[2]

The word "exhaustion" describes "two distinct legal concepts."  *Avocados Plus
Inc. v. Veneman*, 370 F.3d 1243, 1247 (D.C. Cir. 2004).  "The first is a judicially
created doctrine requiring parties who seek to challenge agency action to exhaust
available administrative remedies before bringing their case to court."  *Id.*  "[W]here
Congress has not clearly required exhaustion, sound judicial discretion governs."
*McCarthy v. Madigan*, 503 U.S. 140, 144 (1992).  "Exhaustion is a 'rule of judicial
administration,' . . . and unless Congress directs otherwise, rightfully subject to
crafting by judges."  *Id. quoting Patsy v. Board of Regents of Florida*, 457 U.S. 496,
518 (1982) (White, J, concurring in part).

"The second form of exhaustion arises when Congress requires resort to the
administrative process as a predicate to judicial review," and is "rooted, not in
prudential principles, but in Congress' power to control the jurisdiction of the
federal courts."  *Avocados Plus*, 370 F.3d at 1247.  When Congress has imposed a

---

[2]  Plaintiffs' vicarious "exhaustion" argument is somewhat of a misnomer as
none of the plaintiffs filed an administrative complaint or otherwise sought to
exhaust their administrative remedies.  The question here is not "exhaustion" of
"administrative remedies," vicariously or otherwise, and it is not "proceedings" that
would-be plaintiffs bypassed.  The statutory requirement is instead that a <u>notice</u> of
intent to sue be filed.  While it may be sometimes be "futile" to pursue remedies in
"proceedings," it is in no sense futile to provide a required notice.

"statutorily specified jurisdictional prerequisite," the requirement is "something more than simply a codification of the judicially developed doctrine of exhaustion, and may not be dispensed with merely by a judicial conclusion of futility . . . ." *Weinberger v. Salfi*, 422 U.S. 749, 766 (1975).  As the Supreme Court explained in *Booth v. Churner*:

> That Congress has mandated exhaustion in either case defeats the argument . . . [that a litigant] need not exhaust where doing so would otherwise be futile . . . [W]e will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise.

532 U.S. 731, 741 n.6 (2001); *accord*, *Avocados Plus*, 370 F.3d at 1247 ("If the statute does mandate exhaustion, a court cannot excuse it.").

The D.C. Circuit's decision in *Spinelli v. Goss*, 446 F.3d 159 (D.C. Cir. 2006) is particularly instructive here.  *Spinelli* involved claims by a retired federal employee against the Director of the Central Intelligence Agency under the Federal Tort Claims Act and the Rehabilitation Act.  The D.C. Circuit held that the district court "should have dismissed Spinelli's Rehabilitation Act claim for lack of jurisdiction on the ground that he failed to exhaust his administrative remedy," *id.* at 162; in so doing, the court specifically considered and rejected Spinelli's contention that exhaustion was not required because it would be futile:

> The [Rehabilitation] Act limits judicial review to employees "aggrieved by the final disposition" of their administrative 'complaint' . . . thereby mandating administrative exhaustion.  Spinelli never filed an administrative complaint. He says it would have been futile to do so because the CIA did not provide him and his counsel with medical records.  But a court may "not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise."

*Spinelli*, 446 F.3d at 162, *quoting in part Booth v. Churner*, 532 U.S. at 741 n.6.

As in *Spinelli*, *Booth*, and *Weinberger v. Salfi*, Congress here has created an express statutory "prerequisite to suit" – namely a requirement that a claimant who has not filed an administrative complaint must provide advance notice to the EEOC of the individual's intent to sue within 180 days of the discriminatory act's occurrence and at least 30 days before filing suit. *Rann v. Chao*, 346 F.3d at 195. If a complainant fails to comply with this requirement, the ADEA unequivocally and expressly bars claims in district court: "*[N]o civil action may be commenced* by any individual under this section until *the individual* has given the Commission not less than thirty days' notice of an intent to file such action." 29 U.S.C. § 633a(d) (emphasis supplied). Such a statutory prerequisite to suit "may not be dispensed with merely by a judicial conclusion of futility," *Weinberger v. Salfi*, 722 U.S. at 766, and cannot be excused based on "futility or other exceptions" to prudential exhaustion requirements developed by the courts in the absence of any mandate by Congress. *Spinelli*, 446 F.3d at 162; *Booth*, 532 U.S. at 741 n.6.

The "vicarious exhaustion" doctrine relied upon by the would-be intervenors here is precisely the type of "other exception" encompassed within the courts' reasoning in *Spinelli* and *Booth*. As one court explained in concluding that a claim of vicarious exhaustion cannot excuse compliance with the mandatory exhaustion requirement in the Rehabilitation Act:

> *Spinelli* recognizes that there are "other exceptions" to the statute's exhaustion requirement beside futility, on which plaintiff relied in that case, and makes all such exceptions unavailable to plaintiffs in this jurisdiction.

> Plaintiffs provide no rationale for excluding vicarious exhaustion from the category of "other exceptions" precluded by *Spinelli* and the Court cannot conceive of one.  Accordingly, the Court finds that *Spinelli* does not allow Plaintiffs to invoke the doctrine of vicarious exhaustion.

*International Union v. Clark*, 2006 WL 2598046 *10 (D.D.C. 2006); *accord*, *Blackmon-Malloy v. U.S. Capitol Police Bd.*, 338 F.Supp.2d 97, 105 (D.D.C. 2004) (doctrine of vicarious exhaustion cannot be applied because it is "barred by the plain meaning" of the Congressional Accountability Act).[3]  For these same reasons, the doctrine of "vicarious exhaustion" cannot be used to permit the would-be intervenors to pursue age discrimination claims in district court in circumstances where no advance notice has been provided to the EEOC when the statute upon which the claim is based specifically prohibits such claims.   *See* 29 U.S.C. § 633a(d) ("no civil action may be commenced by any individual under this section until the individual has given the Commission not less than thirty days' notice of an intent to file such action"); *Rann v. Chao*, 346 F.3d at 198 ("the plain language of this statute requires the filing of a notice of intent to sue with the EEOC").

The timeliness and exhaustion requirements in the ADEA "are statutory conditions precedent to the instigation of litigation and are therefore subject to waiver, estoppel, and equitable tolling," *Kennedy v. Whitehurst*, 690 F.2d 951 (D.C.

---

[3] The statutory language construed in *Blackmon-Molloy*, 2 U.S.C. § 1361(e), has a quite comparable focus on whether an individual has or has not initiated the appropriate procedures, as it provides that "[o]nly a covered employee who has undertaken and completed the procedures described in sections 1402 [counseling] and 1403 [mediation] of this title may be granted a remedy under part A of this subchapter."

Cir. 1982); *Brown v. Marsh*, 777 F.2d 8, 14 (D.C. Cir. 1985)(Title VII); *see generally Irwin v. Dept. Of Veterans Affairs*, 498 U.S. 89, 95-96 (1990), and "are in that sense non-jurisdictional." *Rann v. Chao*, 346 F.3d at 195. In *Kennedy*, the claimant had "[a]t any event . . . satisfied the only exhaustion requirement mandated by . . . the ADEA, that of either providing the EEOC with notice of intent to sue within 180 days of the unlawful practice, or actually filing a discrimination complaint with the EEOC." 690 F.2d at 961. In contrast, the would-be intervenors here made no attempt to provide notice to the EEOC to bring suit in district court. As the Court of Appeals noted in *Rann*, the D.C. Circuit has "characterized non-compliance with similar requirements in comparable statutes as depriving the district court of 'authority' to hear the plaintiffs' suit . . . which sounds jurisdictional." *Rann*, 346 F.3d at 195. Because the would-be intervenors "did not meet the notice requirements of § 633a(d)," they "cannot proceed to federal court by that route." *Id.*

In any event, the doctrines of equitable tolling, estoppel and waiver do not provide any basis for excusing the would-be intervenors from complying with the statutory notice requirement here. The courts "have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Irwin*, 498 U.S. at 96. The courts have been "much less forgiving" where, as here, "the claimant failed to exercise due diligence in preserving his legal rights." *Id.*

Similarly, it is established that "equitable estoppel will not lie against the Government as it lies against private litigants." *Office of Personnel Management v. Richmond*, 496 U.S. 414, 429 (1990). Indeed, the Supreme Court has repeatedly recognized that the arguments in favor of a "flat rule" that "estoppel may not in any circumstances run against the Government" are "substantial." *Id.* at 423 (citing *Heckler v. Community Health Services*, 467 U.S. 51, 60 (1984)). At the same time, the Court's opinions have "continued to mention the possibility, in the course of rejecting estoppel arguments, that some type of 'affirmative misconduct' might give rise to estoppel." *Id.* at 421. The would-be intervenors here have not suggested that the Government engaged in any "affirmative misconduct" that caused them to refrain from providing notice to the EEOC. Indeed, plaintiffs cannot even satisfy the requirements for equitable estoppel against a private litigant which, "in the statute of limitations context prevents a defendant from asserting untimeliness where the defendant has taken active steps to prevent the plaintiff from litigating in time." *Currier v. Radio Free Europe/Radio Liberty, Inc.*, 159 F3d 1363, 1367 (DC Cir. 1998).

Finally, a waiver is the "intentional relinquishment or abandonment of a known right." *United States v. Weathers*, 186 F.3d 948, 955 (D.C. Cir. 1999). As the Supreme Court has recognized, while the courts may not "dispense with" a "statutorily specified jurisdictional prerequisite" merely by a "judicial conclusion of futility," *Weinberger v. Salfi*, 422 U.S. at 766, the agency itself may determine that "full exhaustion of internal review procedures is not necessary" and, in that event,

decline to "raise any challenge to the sufficiency of the allegations of exhaustion in [the plaintiffs'] complaint." *Id.* at 767.  In this case, however, defendant challenged the would-be intervenors' failure to comply with the statutory notice requirement at the earliest opportunity available - - in defendant's opposition to their motion to intervene.  Accordingly, there is no colorable basis for concluding that the agency waived the requirement.

Plaintiffs also rely on two Court of Appeals decisions that are more than 20 years old, *Foster v. Gueory*, 655 F.2d 1319 (D.C. Cir. 1981) and *Cook v. Boorstin*, 763 F.2d 1462 (D.C. Cir. 1985) as support for a conclusion contrary to that reached by the D.C. Circuit in *Spinelli*.  As we explain below, however, neither case is on point.

*Foster* was a putative class action under Title VII alleging racial discrimination by a labor organization and several private sector employers and the opinion rests entirely on other decisions in private sector cases.  The court's opinion has no application here where plaintiffs seek to bring suit against a federal agency under an entirely different statutory scheme.

Plaintiffs' attempt to apply private sector precedent to the federal government "overlooks one critical requirement firmly grounded in [the Supreme Court's] precedents: A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text . . . and will not be implied [internal citations omitted]." *Lane v. Pena*, 518 U.S. 187, 192 (1996).  In addition, "[a] waiver of the Government's sovereign immunity will be strictly construed, in

terms of its scope, in favor of the sovereign." *Id.* "[L]imitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied." *Lehman v. Nakshian*, 453 U.S. 156, 161 (1981). The waiver cannot be enlarged beyond the boundaries that the statutory language plainly requires. *United States v. Nordic Village*, 503 U.S. 30, 34 (1992). The statutory language in section 633a(d) is clear and unambiguous, and quite plainly provides that "no civil action may be commenced by any individual" unless "the individual" has given the EEOC thirty days' notice of an intent to file the action. As the notice requirement is an explicit condition on the Government's waiver of sovereign immunity, "exceptions" to that requirement "are not to be implied." *Lehman*, 453 U.S. at 161.

The private sector precedent relied upon by plaintiffs is inapposite to federal sector ADEA claims for a second reason. Specifically, in 1978, Congress amended the federal sector ADEA provision to make plain that the Government is not subject to the private sector ADEA requirements. ADEA Amendments of 1978, Pub. L. No. 95-256, § 5(e), 92 Stat. 189, 192. That section, which is codified at 29 U.S.C. § 633a(f), provides that "Any personnel action of any department, agency, or other entity referred to in subsection (a) of this section shall not be subject to, or affected by, any provision of this chapter, other than the provisions of section 631(b) of this title and the provisions of this section." Thus, the statute, by its terms, provides that claims against federal agencies are to be governed exclusively by sections

631(b) and 633a, and "shall not be subject to, or affected by" any of the ADEA provisions governing the private sector.

*Cook v. Boorstin* likewise provides no support for the would-be intervenors' contentions here. *Cook* was a case where the appropriate procedures <u>had</u> been invoked administratively on behalf of a class that <u>included</u> those seeking to intervene. 763 F.2d at 1465; *see* 29 C.F.R. §§ 1614.201(c) and 1614.204 (EEOC regulations authorizing exhaustion of administrative remedies through the filing of a class complaint alleging age discrimination). As plaintiffs predicted (Pls' Mem. at 10), we argue that "the would-be intervenors in" that case therefore "had no need to satisfy the statute of limitations" or file a notice of intent, "whereas the class proposed here does not include the movants in this case." Plaintiffs say that argument "falters . . . because a request to intervene in a class action by definition means that would-be intervenors are *not* automatically in the class, and thus the statute of limitations would not be tolled for them by virtue of the class certification." Pls' Mem. at 10. This misses the point of cases like *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974), and *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345 (1983). Membership in a <u>putative</u> class tolls a statute of limitations (whether to file suit or proceed administratively where class allegations are allowed administratively) <u>until</u> class membership is denied. Thus, in *Cook*, an administrative class complaint had been filed on the would-be intervenors behalf, and it was only after the district court denied class certification that the tolling expired and they had to move to intervene as individuals. In this case, by contrast,

the would-be plaintiffs have <u>never</u> been part of any class, putative or otherwise.
*See* Pls' Mem. at 10.  The putative class is defined as the plaintiffs named in the
First Amended Complaint, *see* First Amended Complaint ¶ 1, and the would-be
intervenors were not so named.  Unlike the intervenors in *Cook*, therefore, these
would-be plaintiffs can make no argument that their administrative remedies had
been exhausted on their behalf as part of a class claim.

    2. <u>Would-Be Intervenors' Claims Are Barred By The Statute Of Limitations</u>

        a.    The Appropriate Statute Of Limitations For
                     Plaintiffs' Age Discrimination In Employment Act
                     <u>Claims Is The 90-Day Period Borrowed From Title VII</u>

The provisions of the ADEA applicable to federal workers, 29 U.S.C. § 633a,
do not specify what statute of limitations applies, so an "appropriate statute of
limitations" should be "borrowed" from "an analogous statute."  *Price v. Bernanke*,
470 F.3d 384, 387 (D.C. Cir. 2006).  Where an employee initiates an ADEA claim
after filing an administrative complaint, that analogous statute from which the
statute of limitations is borrowed is Title VII, which similarly deals with
employment discrimination.  *Id.* at 388-89.

Under the ADEA, as an alternative to presenting a claim administratively,
an employee may instead file a notice of intent to sue and then "proceed directly to
court," Pls' Mem. at 8, "directly" evidently meaning to plaintiffs a leisurely 19
months after the alleged discrimination and more than two years after the original
notices of intent to sue.  (Of course, as we pointed out above, none of these would-be
plaintiffs even filed a notice of intent to sue themselves.  *Id.* at 4.)

-13-

The statute of limitations in such direct suit cases should also be borrowed from Title VII.  As plaintiffs note when they argue the vicarious exhaustion point, the "aims and substantive provisions of the" ADEA and Title VII are "substantially similar."  *Id.* at 6-7.  As the Court of Appeals recognized in *Price*, Title VII, as another statute dealing with employment discrimination, is the logical place from which to borrow a statute of limitations for the ADEA.

We recognize that one circuit has held that, where a claimant proceeds directly to court after filing a notice of intent to sue, the applicable statute of limitations is instead a two-year period borrowed from the Fair Labor Standards Act ("FLSA").  *Rossiter v. Potter*, 357 F.3d 26 (1st Cir. 2004).  The better view, however, is that the 90-day provision of Title VII is the most appropriate statute of limitations to borrow for ADEA claims filed directly in court.  *Edwards v. Shalala*, 64 F.3d 601 (11th Cir. 1995).  (This can effectively give a claimant up to 300 days from the act of discrimination to file suit, 180 days from the complained-of act to file a notice of intent to sue, 29 U.S.C. § 633a, the mandated 30-day waiting period between the notice and the suit, and then 90 days following the waiting period.)

*Rossiter*'s contrary holding seems based primarily on that court's view that *Stevens v. Department of the Treasury*, 500 U.S. 1 (1991), had already rejected applicability of Title VII's statute of limitations.  *Rossiter*, 357 F.3d at 30-31.  But in *Stevens* the Court expressly stated that it "need not decide which limitations period is applicable."  500 U.S. at 8.  To be sure, the Court quoted a government concession that a suit filed one year and six days after the alleged discriminatory act was "'well

-14-

within whatever statute of limitations might apply,'" *id. quoting* Respondents' Brief, timing inconsistent with applying the Title VII standard.  However, it is manifest that, the issue having been conceded by the government, the Court's recitation of the undisputed point that was not debated before it is dictum.  *See Central Virginia Community College v. Katz*, 546 U.S. 356, 126 S. Ct. 990, 996 (2006).[4]

Apart from the mistaken notion that the Supreme Court has already decided the issue in a case in which it was not even litigated, there is relatively little to commend the First Circuit's stretching beyond other employment discrimination cases to borrow the FLSA statute of limitations.  Granted, the First Circuit is right that the ADEA notice-of-intent-to-sue procedure is not "homologous" with the Title VII enforcement scheme.  *Rossiter*, 357 F.3d at 30.  But homologousness isn't the standard.  The question is instead what statute is sufficiently <u>analogous</u> to provide a statute of limitations for this employment discrimination statute.  *See Price v. Bernanke*, 470 F.3d 384, 387 (D.C. Cir. 2006).  The answer is another statute that likewise deals with employment discrimination, Title VII.

---

[4] In lower courts, of course, even dictum of the Supreme Court can be binding if it is "carefully considered" dictum.  *E.g.*, *Natural Resources Defense Council v. Nuclear Regulatory Comm'n*, 216 F.3d 1180, 1189 (D.C. Cir. 2000).  But given the government's concession, the *Stevens* court had no reason to address or consider the issue in any depth, and expressly disclaimed deciding which statute of limitations did apply.  By comparison, in *Natural Resources Defense Council* , the dictum at issue had been "carefully considered" after a "detailed review" and was dictum only because an alternative and independent basis for the decision existed.  216 F.3d at 1189.

Indeed, although the D.C. Circuit's decision in *Price* did not deal with this precise situation, the court's decision to borrow a Title VII statute of limitations for ADEA cases that proceed first administratively is based in large part on reasoning that also would compel rejection of the First Circuit's view that the FLSA provides a more apt analogy.  Specifically, the Court of Appeals noted:

> In his initial brief, Price pointed us to the FLSA's two-year statute of limitations.  In particular, he noted that when the ADEA was enacted in 1967, its prohibition on discrimination in private employment on the basis of age incorporated the enforcement scheme of the FLSA.  Moreover the Supreme Court once held that "violations of the ADEA generally are to be treated as violations of the FLSA." *Lorillard v. Pons*, 434 U.S. 575, 578, 98 S. Ct. 866 (1978).  Unfortunately for Price, the analogy made in *Lorillard* "has no application in th[e] context" of federal-sector ADEA cases "because Congress did not incorporate the FLSA enforcement scheme" into § 633a, the ADEA section applicable to the federal government. *Lehman v. Nakshian*, 453 U.S. 156, 163, 101 S. Ct. 2698 (1981).  The analogy also now happens to be outdated, as in 1991 Congress removed the FLSA's incorporated statute of limitations from the private-sector portions of the ADEA and inserted a limitations scheme akin to that governing Title VII actions--*i.e.*, 90 days.  *See* Civil Rights Act of 1991, Pub. L. No. 102-166, § 115, 105 Stat. 1071, 1079 (codified as amended at 29 U.S.C. § 626(e)).

470 F.3d at 388 (dictum).[5]

The Court of Appeals held that Title VII supplied the appropriate statute of limitations for federal sector ADEA cases:

> [Section] 633a is "patterned directly after" 42 U.S.C. § 2000e-16, the provision that provides Title VII protections to federal employees, and

---

[5] The passage is dictum for essentially the same reason that the even shorter consideration in *Stevens* is dictum since, "not surprisingly, Price retreated from reliance on the FLSA's two year-limit in both his reply brief and at oral argument." 470 F.3d at 388.

. . . . the bill's author intended the age provision to be "substantially
similar to" the rights in place for federal workers under Title VII.
*Nakshian*, 453 U.S. at 163-64 & n. 15, 101 S. Ct. 2698.  Moreover, "the
ADEA and Title VII share a common purpose, the elimination of dis-
crimination in the workplace . . . ." *Oscar Mayer & Co. v. Evans*, 441
U.S. 750, 756, 99 S. Ct. 2066 (1979).

470 F.3d at 388-89.  Although the D.C. Circuit's holding in *Price* relates specifically

to a claim brought administratively, its reasoning that Title VII is more analogous

to the ADEA than is the FLSA applies with similar force where an employee seeks

to go directly to district court.

The Supreme Court's recent decision in *Ledbetter v. Goodyear Tire & Rubber

Co.*, No. 05-1074 (U.S. May 29, 2007), further undercuts Rossiter's reach to apply an

FLSA analogy to a discrimination statute.  The *Ledbetter* Court acknowledged that

the statutes of limitations in discrimination statutes are "short by any measure,"

slip opinion at 11, but explained that discrimination cases typically involve disputes

over "the employer's intent," and "evidence relating to intent may fade quickly with

time."  Id. at 12.  The Court specifically rejected an attempt to interpret the Title

VII statute of limitations by analogizing to the FLSA statute of limitations, since

FLSA cases do not similarly require evaluation of such fast-fading evidence of an

employer's past intent.  Id. at 23.

The *Rossiter* court seemed to think that the 90-day Title VII period for

initiating a civil action "is actually more like a right to appeal than a statute of

limitations–and rights to appeal often have a severely limited shelf time."  357 F.3d

at 32.  But Title VII claimants not only face such a short deadline to appeal but an

-17-

even shorter deadline to <u>initiate</u> proceedings.  *See*, *e.g.*, *In re James*, 444 F.3d 643, 644 (D.C. Cir. 2006) (employee has within 45 days of discriminatory act to see an EEO counselor and similarly short times to take subsequent steps).  The *Rossiter* court failed to convincingly explain why those complaining of age discrimination should be able to wait two full years before suing without doing anything more than filing a single notice, while those who complain of race or sex discrimination must act promptly to protect their rights.  The ADEA does, of course, provide an opportunity to go "directly" to court.  But that should and must be done relatively directly, not after a lapse of well over a year.

> b.   The Statute Of Limitations On The Would-Be Intervenors'
>       <u>Claims Was Not Tolled By The Pendency Of This Case</u>

It may at first seem strange that there could even be a statute of limitations issue with respect to the intervenors' claims since they challenge the same personnel action as the original plaintiffs who (some of the time anyway) assert that this is a class action.  After all, the pendency of a putative class action ordinarily tolls the statute of limitations for class members.  *E.g.*, *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974); *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345 (1983).

However, as plaintiffs concede (Pls' Mem at 10), the "class proposed here does <u>not</u> include the movants."  (Emphasis supplied).  The putative class is defined as the plaintiffs named in the First Amended Complaint, *see* First Amended Complaint ¶ 1, and the would-be intervenors were not so named.  Thus, as plaintiffs acknow-

ledge (Pls' Mem. at 10), "the statute of limitations would not be tolled for [the movants] by virtue" of the allegations that <u>other</u> persons (*i.e.*, the original plaintiffs) form a class.  Never having been part of even a putative class, none of the movants could have justifiably slept on their rights under any impression that those rights were being asserted on their behalf as part of a class.

> 3. One-Time Plaintiff Szymanski's Action Is
> <u>Now Barred By The Statute Of Limitations</u>

Stephen C. Szymanski, an original plaintiff in this action who voluntarily dismissed his claim, seeks to "reinstate it."  According to his motion, he had dismissed his case under what turns out to be the mistaken impression that doing so would allow him to proceed before the MSPB.  "As a result" of the MSPB's rejecting this contention last July, he "now" in May "wishes to be reinstated as a plaintiff herein."  Mem. in Support of Szymanski Reinstatement Motion at 1.

Szymanski's claim is also barred by the statute of limitations.  In that respect, his having previously been a party to the suit places him in no better (or worse) a situation than that of the would-be intervenors who had never been par-ties.[6]  As one court observed in another ADEA case, a "voluntary dismissal without prejudice results in a *tabula rasa*" that "leaves the parties in the same position as if the action had never been prosecuted."  *Jorge v. Rumsfeld*, 404 F.3d 556, 563 (1st Cir. 2005).  "Consequently, 'a prescriptive period is not tolled by filing a complaint

---

[6] He did, however, file a notice of intent to sue, so his claim for reinstatement fails on only one of the two grounds that bar the other intervenors' belated claims.

that is subsequently dismissed without prejudice.'" *Id.*, *quoting Chico-Velez v. Roche Products*, 139 F.3d 56, 59 (1st Cir. 1998).  Accordingly, for the same reasons that the would-be intervenors' claims are barred by the statute of limitations, Mr. Szymanski's equally belated claims are also barred.

Mr. Szymanski argues that because his dismissal of the case was a doomed effort to resurrect his option of proceeding before the MSPB, it would be "unduly harsh to bar him from rectifying his error."  Mem. in Support of Szymanski Reinstatement Motion at 2.  Szymanski waited nearly 10 months after the MSPB decision before trying to "rectify[ ] his error," which is in no sense attributable to sharp dealing by the government.  To the contrary, <u>before</u> he <u>voluntarily</u> dismissed his claim, we noted that the government did not agree that doing so would revive his claim before the MSPB (a point his memorandum seems now to concede) and that, if his dismissal ploy failed to resurrect his MSPB claim, he would have no automatic right to "flip" a switch of participation in this case back into the "on position."  Docket ## 41, 42.  After we pointed out the possible consequences of dismissal, the Court waited a month before allowing the dismissal, Docket # 43, a month during which Szymanski could have withdrawn his request for dismissal in light of our observations.  There is no reason why Szymanski's eyes should not have been wide open to the consequences of dismissal <u>before</u> the dismissal was granted, and no particular "harsh[ness]" in holding him to his voluntary decision to dismiss the only claim he made within the limitations period.

<u>CONCLUSION</u>

For the reasons stated above, plaintiffs' motion for joinder, or in the alternative to intervene, as plaintiffs in the instant action should be denied, and the motion to reinstate former plaintiff Stephen C. Szymanski should be denied.[7]

        Respectfully Submitted,

        PETER D. KEISLER
        Assistant Attorney General

        KENNETH L. WAINSTEIN
        United States Attorney

        STUART A. LICHT
        Assistant Branch Director
        Civil Division

        ___*/s/ William B. Jaffe*___
        WILLIAM B. JAFFE (NY Bar)
        BRIAN G. KENNEDY (D.C. Bar # 228726)
        MARCIA BERMAN (PA Bar # 66168)
        United States Department of Justice
        Civil Division, Federal Programs Branch
        20 Massachusetts Avenue N.W.  Room 6104
        Washington, D.C.  20530
        Tel.: (202) 514-3357  Fax: (202) 616-8470
        Email: brian.kennedy@usdoj.gov
        Attorneys for Defendants

---

[7] Plaintiffs' counsel recently filed a *praecipe* indicating that 720 of the plaintiffs have decided to proceed *pro se*.  Under this Court's rules, withdrawal of representation of those plaintiffs by their current counsel of record will be complete only upon entry of an order permitting such withdrawal pursuant to Local Rule 83.6.  In reliance on that local rule, defendants' counsel understand that their communications with plaintiffs (including the plaintiffs who wish to proceed *pro se*) must continue to be made through counsel of record rather than directly with those plaintiffs.  Accordingly, this memorandum is not being separately served on those persons who have indicated that they will proceed *pro se* but for whom Gebhardt and Associates, at the moment, remain counsel of record.

<u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

1.    The Would-Be Intervenors Did Not
      File Timely Notices Of Intent To Sue . . . . . . . . . . . . . . . . . . . . . . . . .  2

2.    Would-Be Intervenors' Claims Are Barred By The Statute
      Of Limitations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

      a.    The Appropriate Statute Of Limitations For
            Plaintiffs' Age Discrimination In Employment Act
            Claims Is The 90-Day Period Borrowed From Title VII . . . . .  13

      b.    The Statute Of Limitations On The Would-Be
            Intervenors' Claims Was Not Tolled By The
            Pendency Of This Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

3.    One-Time Plaintiff Szymanski's Action Is
      Now Barred By The Statute Of Limitations . . . . . . . . . . . . . . . . . . . .  19

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

i.
<u>TABLE OF AUTHORITIES</u>

<u>CASES</u>                                                                                    <u>Page(s)</u>

<u>Abrams v. Communications Workers</u>,
     1992 WL 88038 (D.D.C.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

<u>American Pipe & Constr. Co. v. Utah</u>,
     414 U.S. 538 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12, 18

<u>Avocados Plus Inc. v. Veneman</u>,
     370 F.3d 1243 (D.C. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4, 5

<u>Blackmon-Malloy v. U.S. Capitol Police Bd.</u>,
     338 F.Supp.2d 97 (D.D.C. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

<u>Booth v. Churner</u>,
     532 U.S. 731 (2001)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5, 6

<u>Bridges v. Maryland State Police</u>,
     441 F.3d 197 (4th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

<u>Brown v. Marsh</u>,
     777 F.2d 8, 14 (D.C. Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

<u>Central Virginia Community College v. Katz</u>,
     546 U.S. 356, 126 S.Ct. 990 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

<u>Chico-Velez v. Roche Products</u>,
     139 F.3d 56 (1st Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

<u>Cook v. Boorstin</u>,
     763 F.2d 1462 (D.C. Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10, 12, 13

<u>Crown, Cork & Seal Co. v. Parker</u>,
     462 U.S. 345 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12, 18

<u>Currier v. Radio Free Europe/Radio Liberty, Inc.</u>,
     159 F3d 1363 (DC Cir. 1998)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

<u>Edwards v. Shalala</u>,
     64 F.3d 601 (11th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

Foster v. Gueory,
       655 F.2d 1319 (D.C. Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Heckler v. Community Health Services,
       467 U.S. 51, 60 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

International Union v. Clark,
       2006 WL 2598046 (D.D.C. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Irwin v. Dept. Of Veterans Affairs,
       498 U.S. 89 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

In re James,
       444 F.3d 643 (D.C. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Jorge v. Rumsfeld,
       404 F.3d 556 (1st Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Kennedy v. Whitehurst,
       690 F.2d 951 (D.C.  Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

Lane v. Pena,
       518 U.S. 187 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Ledbetter v. Goodyear Tire and Rubber Co.,
       No. 05-1074 (U.S. May 29, 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

Lehman v. Nakshian,
       453 U.S. 156 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 16, 17

Lorillard v. Pons,
       434 U.S. 575, 98 S. Ct. 866, 55 L. Ed. 2d 40 (1978) . . . . . . . . . . . . . . . . . . . 16

McCarthy v. Madigan,
       503 U.S. 140 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Natural Resources Defense Council v. Nuclear Regulatory Comm'n,
       216 F.3d 1180 (D.C. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Office of Personnel Management v. Richmond,
       496 U.S. 414 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

iii.

Oscar Mayer & Co. v. Evans,

441 U.S. 750, 99 S. Ct. 2066, 60 L. Ed. 2d 609 (1979) . . . . . . . . . . . . . . . . . 17

Patsy v. Board of Regents of Florida,
        457 U.S. 496 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Price v. Bernanke,
        470 F.3d 384 (D.C. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Rann v. Chao,
        346 F.3d 192 (D.C. Cir. 2003), *cert. denied*, 543 U.S. 809 (2004) . . . . 3, 6, 7, 8

Rossiter v. Potter,
        357 F.3d 26 (1st Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15, 17

Southern Calif. Fed. Savings & Loan Ass'n v. United States,
        51 Fed. Cl. 114 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Spinelli v. Goss,
        446 F.3d 159 (D.C. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 7, 10

Stevens v. Department of the Treasury,
        500 U.S. 1 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15, 16

United States v. Nordic Village,
        503 U.S. 30 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

United States v. Weathers,
        186 F.3d 948 (D.C. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Weinberger v. Salfi,
        422 U.S. 749 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 9, 10

Weinberger v. Salfi,
        722 U.S. at 766 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

STATUTES AND REGULATIONS

29 U.S.C. §
633a. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

42 U.S.C. § 2000e-16 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

iv.

29 C.F.R. 1614.201(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3, 12

29 C.F.R. § 1614.204 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

v.

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 1, 2007, the foregoing Defendants' Memorandum of

Points and Authorities in Opposition 1) to "Plaintiffs Motion for Joinder, or in the

Alternative to Intervene, as Plaintiffs in the Instant Action" and 2) to "Plaintiffs'

Motion to Reinstate Former Plaintiff Stephen C. Szymanski" is being filed through

the Court's electronic filing system and is thereby being served through that system

upon counsel for all plaintiffs, *viz.*, Joseph D. Gebhardt, Charles W. Day, Mark A.

Dann, and Lenore C. Garon of Gebhardt and Associates, LLP, 1101 17th St., N.W.,

Washington D.C. 20036.


Plaintiffs' counsel recently filed a *praecipe* indicating that 720 of the plaintiffs have

decided to proceed *pro se*.  Under this Court's rules, withdrawal of representation of

those plaintiffs by their current counsel of record will be complete only upon entry

of an order permitting such withdrawal pursuant to Local Rule 83.6.  In reliance on

that local rule, defendants' counsel understand that their communications with

plaintiffs (including the plaintiffs who wish to proceed *pro se*) must continue to be

made through counsel of record rather than directly with those plaintiffs.

Accordingly, this memorandum is not being separately served on those persons who

have indicated that they will proceed <u>pro se</u> but for whom Gebhardt and Associates,

at the moment, remain counsel of record.

Dated: Washington D.C.
       June 1, 2007


<u>/s/ <em>William B. Jaffe</em>             </u>
William B. Jaffe
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue N.W.  Room 6104
Washington, D.C.  20530
Tel.: (202) 514-3357  Fax: (202) 616-8470
Email: brian.kennedy@usdoj.gov
Attorney for Defendants