# EXHIBIT 8

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| KATHLEEN A. BREEN, et al., )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>MARY E. PETERS, et al., )<br>)<br>Defendants. )<br>)<br>_____ ) | Case No. 1:05CV00654-RWR |

Defendants Response to Plaintiffs' Interrogatory 24, Excerpted From:

**DEFENDANTS' THIRD RESPONSES TO PLAINTIFFS'**
**THIRD SET OF DISCOVERY REQUESTS;**
**DEFENDANTS' RESPONSES TO THE INTERROGATORIES**

Pursuant to Federal Rules of Civil Procedure 33 and 34, Defendants, by and through their undersigned attorneys, hereby respond to Plaintiffs' Third Set of Discovery Requests. By agreement of the parties, Defendants previously provided two sets of preliminary, partial responses to Plaintiffs' Third Set of Discovery Requests. See Defs.' First Responses to Pls.' Third Set of Discovery Requests, dated Dec. 20, 2007 (Defendants' "First Responses"); Defs.' Second Responses to Pls.' Third Set of Discovery Requests, dated Jan. 15, 2008 (Defendants' "Second Responses"). This third set of responses (Defendants' "Third Responses") replaces in the entirety the earlier responses, including all objections, provided by Defendants. These Third Responses include the reproduction of documents previously produced to Plaintiffs in Defendants' First Responses and Second Responses.

**GENERAL OBJECTIONS**

1.     Defendants object to the interrogatories and discovery requests to the extent they seek information that is reasonably accessible in the files of plaintiffs' attorneys.  Defendants' disclosure of such information does not constitute a waiver of such objection.

2.     Defendants object to the interrogatories and discovery requests, and to the instructions and definitions thereto, to the extent they are vague, unduly burdensome, not likely to lead to the discovery of relevant information, seek privileged information, or impose obligations beyond those established by the Federal Rules of Civil Procedure and the Local Rules of this Court.

Subject to the foregoing general objections, Defendants hereby submit specific objections and responses to the Interrogatories and Document Requests in Plaintiffs' Third Set of Discovery Requests.  Defendants reserve the right to supplement or revise any of these specific objections and responses.

**INTERROGATORIES**

**INTERROGATORY NO. 7:**

Describe the organizational structure of the FAA as of February 1, 2005, including the name and task description of each unit or subdivision, the number of employees in each, the median and mean ages of the employees in each, and the percentage of employees 40 years or older in each.

**RESPONSE NO. 7:**

Defendants object to Interrogatory No. 7 because it is overly broad and vague and asks for information that is not sufficiently likely to lead the discovery of relevant information to justify burdens in addition to those Defendants have undertaken in order to provide a response to

record indicating from which persons, if any, Ms. Kansier and Mr. Smith obtained data used in the presentation.

**INTERROGATORY NO. 24:**

Describe in detail all activities undertaken to assist Flight Service personnel, with either employment or retirement options, who were not expected to be employed more than three years by the successful bidder of the Flight Services competitive sourcing, and identify all persons who were involved in those activities, including name, title, and current contact information.

**RESPONSE NO. 24:**

Defendants object to Interrogatory No. 24 as overly broad, unduly burdensome, seeking information that is not relevant, and not sufficiently likely to lead to discovery of relevant information to justify burdens in addition to those Defendants have undertaken in order to provide a response to this request. One respect in which the request is overly broad, for example, is that it seeks "all persons who were involved …" without reference to whether the person played any substantive role in such activity. The interrogatory request's reference to "[personnel] who were not expected to be employed more than three years by the successful bidder of the Flight Services competitive sourcing" is vague and ambiguous and it seeks information that is not relevant nor likely to lead to relevant evidence.

Subject to and without waiving these objections, Defendants respond as follows. Ventris Gibson, FAA Assistant Administrator for Human Resource Management, and George Williams, Program Manager in the FAA Office of Human Resource Management, were the individuals primarily responsible for developing and implementing actions to assist Flight Service personnel with employment or retirement options. Defendants took the following actions to assist Flight Service personnel with employment or retirement options:

44

a. The Office of Human Resource Management's website contained a dedicated section for employees affected by the A-76 competition. The website provided information on employee benefits, labor relations, additional resources, career transition assistance, veterans' information, pay, qualifications, and posted copies of the presentation material used for site visits conducted at all 58 facilities, for employees to review when desired.

b. The FAA developed and provided to the AFSS employees affected by the A-76 competition an "*Automated Flight Service Station A-76 Information Packet*," in January 2005, which identified and provided resource information on employment and benefits programs. The packet included the names and phone numbers for HR Management Division contacts throughout the country specifically dedicated to this workforce. Subsequent to the announcement of the chosen service provided, this packet was supplemented with additional information received from employees primarily through an interactive website sponsored, in part, by the Office of Human Resource Management.

c. Surplus/displaced employees received career transition services pursuant to the FAA Human Resource Policy Manual (HRPM) EMP-1.22, Career Transition Program. This part of the HRPM required that career transition assistance services consist of skills assessment, career counseling, networking, job information, employee work/life programs, employee assistance programs (EAP), and financial planning. Along with the career transition assistance services provided for by the HRPM, the FAA used its Voluntary Early Retirement Authority and Voluntary Separation Incentive Payment authorities. The FAA also contacted other Federal agencies and Federal Executive boards for placement assistance, offered pay retention when possible, provided career transition hours for employees to utilize career transition assistance services, and provided employees with information via site visits, printed materials, and websites, as discussed in the paragraphs below.

d. As a major component of FAA's overall career transition assistance services, the FAA established a Career Transition Assistance Center (CTAC) in February 2005, supported via contract with FPMI Solutions, a company that specializes in providing career transition assistance. The CTAC provided web-based and telephonic services from a centralized location with professional career counselors and job developers. The services included providing job outplacement services, one-on-one counseling sessions on resume writing and development, job networking, interview coaching and techniques, and a *Job Search Training Guide*. The CTAC was available Monday through Friday, from 8:00 a.m. to 8:00 p.m. Eastern time, except during federal holidays.

e. Employees certified as surplus were also allowed to use up to 16 hours per pay period to engage in career transition activities. See HRPM EMP-1.22. Employees could have been granted credit hours, if requested and approved in advance. After accepting or declining a position with Lockheed Martin, employees who accepted employment with Lockheed Martin were eligible to receive eight hours per pay period to search for employment with the federal government while on the federal payroll.


 f. Employees certified as surplus/displaced were also eligible to participate in the FAA's Preferred Placement Programs (PPPs). The FAA established one PPP for vacancies within the Air Traffic Organization (ATO), as described in Office of Human Resource Management (AHR) Policy Bulletin #29, and another for vacancies within the FAA but outside the ATO, as described in AHR Policy Bulletins #32 and #32A. Under the PPPs, surplus/displaced employees received priority on all internal job vacancies. All internal vacancy announcement dates were extended and the area of consideration amended to include surplus/displaced employees when the PPPs were established. Under these programs, employees only had to meet basic qualification requirements to be referred for consideration. Selecting officials were required to provide written justification to higher-level officials if they did not select a surplus/displaced employee. The PPPs began February 25, 2005, and February 28, 2005, respectively, and continued through October 3, 2005. Over 650 announcements were published under the PPPs. Among these announcements, there were three separate ATO nationwide vacancy announcements for Air Traffic Control Specialists (ATCSs) positions in the terminal option at level 6, 7, and 8 facilities; persons considered for the vacancies in these nationwide vacancy announcements was limited, per the announcements, to AFSS surplus/displaced employees.

 g. In coordination with AHR, the ATO established a policy to permit employees designated as surplus/displaced to be considered for ATCS positions subject to the maximum entry age of 30 even if those employees were older than 30 years of age, provided they met the qualifications specified in AHR Policy Bulletin #30.[2] ATCS positions in the terminal and en route options with duties that require that employees be actively engaged in the direct separation and control of air traffic generally have a maximum entry age of 30. The age exemption program allowed surplus/displaced employees to apply for ATCS positions in the terminal and en route options (in addition to the nationwide vacancy announcement discussed above) for which they would not otherwise be qualified. The program period began February 25, 2005, and continued until October 3, 2005.

 h. The FAA also authorized pay retention for those employees selected for FAA positions resulting in pay rates lower than their current rate of pay. (An exception to this provision, consistent with existing collective bargaining agreements, was selections for ATCS positions in the terminals and en route centers.)

 i. On or about August 22, 2005, the FAA announced the availability of up to 42 positions in the ATO Safety Service Unit, which were open only to surplus/displaced AFSS employees. The positions were temporary (not to exceed two years). Employees would represent Safety Services Unit Evaluations personnel at air traffic control facilities to

---

[2] Pursuant to 5 U.S.C. § 3307(b), the Secretary of Transportation "may, with the concurrence of such agent as the President may designate, determine and fix the maximum limit of age within which an original appointment to a position as an air traffic controller may be made." The Secretary has established a maximum entry age of 30 for entry into civilian air traffic control positions in the Federal Aviation Administration (FAA) whose duties require that the employees be actively engaged in the separation and control of air traffic. See FAA Policy Bulletin #30, Maximum Entry Age Exemption Program for Surplus or Displaced Employees.

46

      assist personnel in planning the conduct of internal safety evaluations and assist in conducting various aspects of air traffic control facility audits.

j. With the issuance of formal RIF notices on or about July 22, 2005, the affected employees became designated as "displaced." As displaced employees, they became eligible for the FAA's Selection Priority Program (SPP) as described in AHR Human Resource Policy Manual EMP-1.9, Selection Priority. The SPP provides that, beginning with receipt of the formal RIF notice and continuing for two years beyond their separation date, displaced employees must be selected for all external FAA vacancies within their local commuting area, if well-qualified for the position, before a non-FAA candidate. In some instances, displaced employees also received selection priority for internal FAA vacancies within their local commuting area. Eligibility for participation in the SPP began with receipt of the RIF notice and extended for two years beyond the employees' separation from the FAA, i.e., through October 3, 2007. In addition, the FAA expanded the geographic area where an employee could receive SPP consideration beyond the local commuting area to any location within the FAA. For ATCS positions only, bargaining unit employees were limited to SPP consideration for positions in the 5, 6, 7 and 8 level terminals in accordance with the negotiated Memorandum of Agreement between FAA and the National Association of Air Traffic Specialists (NAATS), the labor organization that was the exclusive representative of a majority of the displaced/surplus employees. Eligibility to participate in the SPP ended if an employee, or former employee, accepted a permanent position at the same or a higher salary with any organization, federal or non-federal. Eligibility for displaced employees to participate in the SPP, however, was not affected by initial acceptance/refusal of Lockheed Martin's job offer, or refusal of a subsequent Lockheed Martin job offer.

k. The FAA used its Voluntary Early Retirement Authority (VERA) and Voluntary Separation Incentive Payment (VSIP) authority as another means to facilitate placements and provided employees, not otherwise eligible, an opportunity to retire.[3] Between February and April 2005, FAA offered all employees of the Flight Services Unit the opportunity to apply for early retirement. Subsequently, in June 2005, VSIPs in the amount of $25,000 and VERAs were offered to employees in the Alaska Flight Service area; approval of the VSIPs for Alaska Flight Service personnel was contingent upon the selection of employees affected by the AFSS competition to fill the positions in Alaska.

l. Teams of FAA human resources professionals visited all 58 AFSS facilities twice (once before and once after the A-76 performance decision was made) to brief affected employees. The scope of those briefings included employment and retirement options, career transition, RIF procedures, federal employment benefits, and entitlements (such as unemployment, severance pay, interchange agreement). In addition, during the first site visit, employees were provided information specific to them on RIF-data elements that would be used in a RIF. Employees had access to a website to submit questions and

---

[3] With the approval of the U.S Office of Personnel Management (OPM), agencies may utilize VERA to offer early retirement to certain employees. See 5 U.S.C. §§ 8336(d)(2)(D), 8414(b)(1)(B); 5 C.F.R. §§ 831.114, 842.213. With the approval of OPM, agencies may offer VSIPs to certain employees. See 5 U.S.C. § 3521; 5 C.F.R. § 576.

received answers to frequently asked questions. Twelve help-desks staffed with human resources professionals were established to answer employee questions regarding retirement, severance pay, terminal leave, career transition services available, and the reduction-in-force process.

m. The FAA expanded its Employee Assistance Program (EAP) by adding resources to accommodate an anticipated increase in counseling services to employees, designated as surplus/displaced, and their families, and to provide two separate on-site seminars were conducted at each of the 58 AFSS facilities covered by the A-76 competition. The EAP was available to retirees and separated employees for six months after separation and was available 24 hours a day, seven days a week. Financial planning information also was available through the EAP.

n. The FAA increased its coordination with the U.S. Office of Personnel Management (OPM), the U.S. Department of Veterans Affairs (VA), and the U.S. Department of Labor (DOL) to assist in the placement of displaced employees. OPM and VA provided information to the FAA regarding federal agencies, state and local governments, and private sector employers seeking veterans for employment, so that the FAA could pass such information on to the Flight Service personnel. DOL assisted with unemployment compensation and information on job search and State job retraining and dislocated workers' programs. In addition, the FAA contacted 22 Federal Executive Board chairs throughout the nation notifying them of the upcoming RIF and asking for their assistance in placing displaced employees.

o. Section 179 of the Transportation, Treasury, Housing and Urban Development, The Judiciary, The District of Columbia, and Independent Agencies Appropriations Act of 2006, 119 Stat. 2396, Pub. L. 109-115 (Nov. 30, 2005) provided that the FAA offer positions to certain RIF'd Flight Service employees in order for them to attain eligibility for an immediate annuity under 5 USC §§ 8336(d) or 8414(b), not later than October 4, 2007.

Dated: February 12, 2008

Respectfully submitted,

Jeffrey S. Bucholtz
Acting Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

STUART A. LICHT
Assistant Branch Director
Civil Division

_____
LISA ZEIDNER MARCUS

        ADAM D. KIRSCHNER
        BRIAN G. KENNEDY (D.C. Bar 228726)
        Trial Attorneys
        United States Department of Justice
        Civil Division, Federal Programs Branch
        20 Massachusetts Avenue N.W.  Room 7126
        Washington, D.C.  20530
        Tel.: (202) 514-3336
        Fax: (202) 616-8470
        Email: lisa.marcus@usdoj.gov

        Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KATHLEEN A. BREEN, et al., )
)
Plaintiffs, )
)
v. )  Case No. 1:05CV00654-RWR
)
MARY E. PETERS, et al., )
)
Defendants. )
)

## CERTIFICATION OF GEORGE WILLIAMS

I, George Williams, declare that I assisted in the preparation of and provided information for the responses of the Defendants to Interrogatory Nos. 7 and 24 of Plaintiffs' Third Set of Discovery Requests in the above-captioned case. The responses are based upon information maintained in the regular course of agency activities in personnel management and payroll databases and information gathered in the course of my inquiry, supplemented in some instances with personal knowledge.

I have received the above-mentioned responses and declare under penalty of perjury that to the best of my knowledge and belief, based upon the information available to me after diligent inquiry, that these responses are true and correct.

_____    Feb 11, 2008
George Williams                          Date
Program Manager
Federal Aviation Administration
800 Independence Avenue, S.W.
Washington, DC 20591
(202) 267-9788

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 12, 2008, I caused a true and correct copy of the foregoing Responses to The Requests for Interrogatories to be served by courier (hand delivery) upon Plaintiffs' counsel of record at the address listed below:

Joseph D. Gebhardt
Gebhardt & Associates, LLP
1101 17th Street, NW
Suite 807
Washington, DC 20036-4718
(202) 496-0400
Fax: (202) 496-0404
Email: jgebhardt@covad.net

*Lisa Z Marcus*
Lisa Zeidner Marcus