# Exhibit 1

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KATHLEEN A. BREEN, et al.,  )
                            )
        Plaintiffs,         )   Case No. 1:05CV00654-RWR
   v.                       )
                            )
MARY E. PETERS, et al.,     )
                            )
        Defendants.         )

ORAL DEPOSITION

WALTER PIKE

APRIL 14, 2008

ORAL DEPOSITION OF WALTER PIKE, produced as a witness at the instance of the Defendant and duly sworn, was taken in the above-styled and numbered cause on the 14th day of April, 2008, from 10:25 a.m. to 5:10 p.m., before Vanessa P. Pompa, Certified Shorthand Reporter in and for the State of Texas, reported by computerized stenotype machine at the offices of United States Attorney, 601 N.W. Loop 410, Suite 600, San Antonio, Bexar County, Texas, pursuant to the Federal Rules of Civil Procedure and the provisions stated on the record or attached hereto.

Federal Court Reporters of S.A.
(210) 340-6464

8787f1c7-e54f-49b4-9da4-f759e5e0a824

```
 1      Q.   This is your declaration?
 2      A.   This is my declaration, right.  I asked her --
 3  because she did not volunteer I asked her what had
 4  happened with that.  And she said she had shopped it,
 5  she did not tell me who she had shopped it with, but
 6  that it was not going to work.  In the meantime I was
 7  informed that Steve Brown, who was ATS1, which was the
 8  air traffic services -- he was at the juncture of air
 9  traffic and airway facilities, the chief.  And I would
10  occasionally meet with him.  I'd been informed that he
11  had a copy of it, which caused me a little problem
12  because my understanding was we were keeping it on close
13  hold between the administrator and whoever she just had
14  to talk with and I, but that no copies would be out.  He
15  apparently came up with one.  In any case at the
16  December meeting she told me that she had shopped it and
17  they weren't going to be able to do it.
18      Q.   Had you told her that you wanted this to be
19  closely held?
20      A.   We agreed that it would be closely held.
21      Q.   Who did you expect her to shop it to?
22      A.   Well, I knew she would have to talk with the
23  necessary people about it.  What I didn't expect was
24  that they would have copies of it.  That was the problem
25  that I had with Steve Brown having it.
```

```
 1      A.   Yes, I think there were several turf battles.
 2      Q.   What kind of turf battles were going on?
 3      A.   Well, there were turf battles over the budget,
 4 there were turf battles over who should negotiate with
 5 the unions, there were turf battles over whether there
 6 ought to be one labor relationship department in HR
 7 versus the fact that for a while air traffic had their
 8 own labor relations group.  I was aware of all of those
 9 kind of turf battles.  I'm sure there were more.
10      Q.   Okay.  Did you meet with Marion Blakey in
11 between the June 2003 meeting where you presented her
12 with the NAATS proposal and the December meeting where
13 she said that she wasn't prepared to move on it?
14      A.   No.
15      Q.   In those meetings did you talk with her about
16 other aspects of the A76?
17      A.   Well, I'm sure we indicated that we didn't
18 think A76 was a fair thing to do to the employees or put
19 them through, but I don't recall the specifics of those
20 discussions.
21      Q.   Do you recall what she said about why she was
22 moving forward with A76?
23      A.   I recall talking with her one time and her
24 indicating to me that it had gone too far, that although
25 maybe on the technical side she could stop it in
```

1  you thought the FAA overemphasized the distinction
2  between controllers who do separate traffic and
3  controllers who don't.  And I know you also indicated
4  that one of the important things that flight service
5  controllers do is they separate planes from bad weather?
6       A.   Correct.
7       Q.   Do flight service controllers also separate
8  traffic from traffic?
9       A.   Airplanes from airplanes.
10      Q.   Airplanes from airplanes.  What did you mean by
11 the term fenced?
12      A.   Fenced in congressional appropriations means an
13 amount of money that cannot be used for any other
14 purpose other than what it is identified for.  It's a
15 specific pot of money that can't be moved to any other
16 program or purposes.
17      Q.   And so money that's not fenced can be moved by
18 the agency?
19      A.   At the discretion of the agency.
20      Q.   And that was the kind of money that the agency
21 was moving, not fenced money?
22      A.   That was their position that it was not fenced.
23 There could be an argument made that it wasn't supposed
24 to be done that way but in effect that's what they did
25 so you'd have to say it was not fenced.