# Exhibit 6

## DECLARATION OF HOMER MCCREADY

I, Homer McCready, hereby declare under penalty of perjury and state as follows:

1. I am over the age of eighteen years and competent to testify to the matters stated herein.

2. I was employed with the Federal Aviation Administration as an Air Traffic Control Specialist for twenty-two years. From July 1983 to November of 1984, I was an Air Traffic Control Specialist (En Route) at the Washington Air Route Traffic Control Center; from November 1984 to June of 1986, I was an Air Traffic Control Specialist (Station) at the Dubois Flight Service; from June 1986 to August 1986, I was an Air Traffic Control Specialist (Station) at the Altoona Flight Service Station; and from August 1986 until October 3, 2005, I was an Air Traffic Control Specialist (Station) at the Altoona Automated Flight Service Station ("AFSS").

3. My date of birth is January 12, 1962, and I have resided in Martinsburg, Pennsylvania, since 1990.

4. On January 4 or 5, 2005, FAA Administrator Marion Blakey visited Altoona Flight Service Station. I know January 4 or 5, 2005 are the dates that Administrator Blakey visited because I remember this day clearly, and I saved an FAA article about her visit to my flight service station. See Attachment A.

5. During Administrator Blakey's visit, she mingled with Flight Service Controllers and spoke face-to-face with us.

6. A group of people were casually standing around, and I was standing near Administrator Blakey. I approached her and told her that I had previously worked at a Center as an en route controller, and I asked her if it would be possible to return to that position.

7. As a result of my question to Administrator Blakey, Administrator Blakey and I exchanged the following information: my age and my previous employment as an en route controller. She told me I could not return to a Center as an en route controller because of my age due to the 31-maximum-age rule.

8. I was very confused by Administrator Blakey's statement since she had just announced that day at the Altoona AFSS that the 31-maximum-age rule would be waived.

9. During the A-76 process, someone from FAA came to give a presentation, and one of the slides said that the Flight Service's "aging workforce" was one of the reasons for the A-76 competition.

10. I was concerned that the A-76 would be implemented, and my position as a Flight Service Controller would be outsourced. As a result, I applied for positions as an Air Traffic Control Specialist (en route) at the Cleveland Center, which was the highest paying

1

air-traffic-control-facility position. These Air Traffic Control Specialist positions were not under consideration for outsourcing.

11. On or around February 25, 2005, I received a letter from the FAA informing me that that I could participate in the Air Traffic Organization Preferred Placement Program and the Maximum Entry Age Exemption for Surplus or Displaced Employees. *See* Attachment B.

12. Despite the FAA's notice that I could participate in the Preferred Placement Program, I was not placed in the Air Traffic Control Specialist positions I applied to. On March 3, 2005, the FAA informed me I was not selected for the position (Vacancy Announcement Number AGL-AT-04-098-74480), but did not provide a reason. *See* Attachment C. On March 11, 2005, the FAA informed me I was not selected for the position (Vacancy Announcement Number AGL-AT-05-0028-76091M), but did not provide a reason. *See* Attachment D.

13. On November 14, 2005, the FAA informed me that I was not eligible for the Selection Priority Program because I was outside the area of consideration, which the FAA defined as my "local commuting area or designated substitute location." *See* Attachment E. No FAA official ever asked me if I wanted my designated substitute location to be Cleveland, Ohio.

14. On January 12, 2006, I mailed an inquiry to an FAA personnel specialist asking if I was eligible for priority consideration for a different Air Traffic Control Specialist position. *See* Attachment F. On January 18, 2006, an FAA personnel specialist again informed me I was not eligible for priority consideration because I was outside the area of consideration. *See* Attachment G.

15. After the RIF, I began working for Lockheed Martin on October 5, 2005.

16. I was adversely affected by the RIF because I was forced to retire from the government sixteen and a half years earlier than I intended to retire. I fully intended to work for forty-two years so that I could achieve my full retirement benefits.

17. I was also harmed by the RIF because, unlike the FAA, Lockheed Martin did not offer premium pay for Sundays or holidays. While FAA paid me premium pay for night shifts, until approximately 2013, Lockheed Martin did not offer me premium pay for working night shifts.

18. In February 2007, I was permanently transferred to Lockheed Martin's Ashburn, Virginia facility, but I still resided in Pennsylvania. As a result, I had to begin renting a place to stay during the workweek and would travel home approximately once a week. Since February 2007, I have had to incur all the extra costs of maintaining another residence in Virginia and traveling back and forth from Ashburn to my home in Martinsburg, Pennsylvania. My family has remained in Pennsylvania, and I consequently missed so much time with my family, including memories that I can never recover. My family needed to stay in Pennsylvania because my oldest daughter is mildly autistic, and I did not want to disrupt her school life.

I hereby declare under penalty of perjury that the foregoing statements are true and correct to be best of my knowledge and belief.

*Homer M Cready*
Name

*[signature]*
Signature

9/19/16
Date