# Exhibit 8

ORIGINAL

1

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - - - x
KATHLEEN A. BREEN, et al.,       :
                                 :
     Plaintiffs,                 :
                                 :
  vs.                            : Civil Action
                                 :
MARY E. PETERS, SECRETARY        : No. 05-00654 (RWR)
OF TRANSPORTATION,               :
DEPARTMENT OF TRANSPORTATION,    :
et al.,                          :
                                 :
     Defendants.                 :
                                 :
- - - - - - - - - - - - - - - - x

                    Washington, D.C.
                    Monday, January 28, 2008

     The deposition of JOANN KANSIER, called for examination by counsel for Plaintiffs in the above-entitled matter, pursuant to Notice, in the offices of Department of Justice, 20 Massachusetts Avenue, N.W., Washington, D.C., convened at 10:18 a.m., before Cathy Jardim, a notary public in and for the District of Columbia, when were present on behalf of the parties:

JARDIM REPORTING ASSOCIATES
(703) 867-0396

```
 1   the Office of Competitive Sourcing?
 2       A.   From that January timeframe until I left the
 3   FAA in January of 2006.
 4       Q.   So that was a three-year period?
 5       A.   Yes, just about.
 6       Q.   Just so the record is complete, and I will
 7   come back to what we have been talking about, in
 8   January of 2006, you say, you left the FAA.  Did you
 9   retire?
10       A.   I retired.
11       Q.   And have you obtained employment since then?
12       A.   I have.
13       Q.   With whom?
14       A.   Grant Thornton.
15       Q.   What is Grant Thornton?
16       A.   Grant Thornton is an accounting firm that
17   has -- I work for a piece of Grant Thornton that does
18   government consulting.
19       Q.   Do you do any government consulting with the
20   FAA?
21       A.   I do.
22       Q.   What is the nature of that?
```

1    Q.    Do you believe that you told the reporter
2  that you worked with the contractors and FAA human
3  resources, et cetera?
4    A.    Yes.
5    Q.    Tell me a little bit about the attractive
6  benefits package offered to FAA employees who
7  transitioned to Lockheed Martin?
8    A.    Let me start off by saying, in the
9  declaration where we talked about the four different
10 areas that were evaluated, one of them was called
11 staffing and -- remember that one?
12   Q.    Yes.
13   A.    I think I told you earlier that we were very
14 concerned about the employees and wanted to make sure
15 that the employees would actually go to work for
16 whoever won, and so we built into the RFP this
17 portion which basically said that we were going to
18 evaluate their benefits package because if their
19 benefits package was not sufficient, it would be a
20 risk to the program.
21        So, I felt that through working through the
22 FAA's personnel office to ensure that there were

1  experienced lawyers on the other side of the table,
2  but wouldn't the pilots getting better service after
3  the A-76 process, wouldn't that be quite dependent on
4  the system that was used to communicate with them?
5  What if the new system wasn't as good as OASIS?
6      A.   You still had old buildings, a disgruntled
7  workforce, a workforce that was eligible to retire
8  when many people could have walked out at any time.
9  The system was a mess.  So, your focus on the
10 automation is only a piece of the whole system that
11 provides advice to the pilots, so I consider that
12 that was only a piece.  Again, we were trying to
13 provide a service.
14     Q.   One more document to take a look at, Ms.
15 Kansier.  And it will be -- handing it to you,
16 Exhibit 7.
17                  (Kansier Exhibit No. 7
18                  was marked for identification.)
19      BY MR. GEBHARDT:
20     Q.   It appears you have become an author.
21     A.   It was a short-lived career.
22     Q.   Don't sell yourself short, now.  We have a