UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                                        )
KATHLEEN BREEN, et al.,                 )
                                        )
        Plaintiffs,                     )
                                        )
        v.                              )      Civil Action No. 05-0654 (PLF)
                                        )
ELAINE L. CHAO, Secretary of            )
Transportation, Department of           )
Transportation, et al.,                 )
                                        )
        Defendants.                     )
_____ )
```

OPINION

This matter comes before the Court on the motion [Dkt. No. 317] of dismissed

plaintiffs for reconsideration of the Court's orders of dismissal. For the following reasons, the

Court will grant the dismissed plaintiffs' motion and reinstate their claims.[1]

---

[1]     In connection with the pending motion, the Court has reviewed the following
filings, including the exhibits attached thereto: Class Action Complaint [Dkt. No. 1] ("Compl.");
First Amended Class Action Complaint [Dkt. No. 3] ("Am. Compl."); Plaintiffs' Motion for
Class Certification (Corrected) [Dkt. No. 4] ("Mot. for Certif."); Gebhardt & Associates' Motion
to Withdraw as Counsel for 714 Plaintiffs [Dkt. No. 71] ("Mot. to Withdraw"), Defendants'
Opposition [Dkt. No. 77] ("Opp'n to Mot. to Withdraw"), and Gebhardt & Associates' Reply
[Dkt. No. 83] ("Reply to Mot. to Withdraw & Opp'n to Mot. to Bifurcate"); Defendants' Motion
to Bifurcate Discovery and Trial on Liability and Damages [Dkt. No. 78] ("Mot. to Bifurcate"),
Plaintiffs' Opposition [Dkt. No. 83] ("Reply to Mot. to Withdraw & Opp'n to Mot. to
Bifurcate"), and Defendants' Reply [Dkt. No. 85] ("Reply to Mot. to Bifurcate"); Defendants'
Motion to Compel Plaintiffs' Responses to Defendants' First Set of Interrogatories and Requests
for Production of Documents to Plaintiffs [Dkt. No. 90] ("Mot. to Compel") and Defendants'
Notice of Supplement [Dkt. No. 91] ("Suppl. to Mot. to Compel"); Plaintiffs' Consent Motion to
Defer Consideration of Defendants' Motion to Compel [Dkt. No. 99] ("Mot. to Defer"); Plaintiff
Donna Dodson's Motion for Reconsideration of the Court's May 30, 2008, Order [Dkt. No. 156]
("Dodson Mot."), Defendants' Opposition [Dkt. No. 159] ("Opp'n to Dodson Mot."), and
Dodson's Reply [Dkt. No. 164] ("Reply to Dodson Mot."); Plaintiff Steven K. Patterson's
Motion for Reconsideration of the Court's Order of May 30, 2008 [Dkt. No. 165] ("Patterson

In their motion for reconsideration, the dismissed plaintiffs ask the Court to

review, on the basis of new evidence, its prior orders dismissing a total of 663 plaintiffs from this

case.[2]  The Court's orders, issued in 2008 and 2009, dismissed the 663 plaintiffs for their failures

to respond to defendants' discovery requests and to the Court's subsequent show cause orders.

As new evidence, the dismissed plaintiffs proffer correspondence sent by their prior counsel –

Gebhardt & Associates, LLP – conditioning the firm's continued representation on satisfaction

of a new and substantial demand for payment by each individual plaintiff.[3]  In the letters, the

Mot."), Defendants' Opposition [Dkt. No. 166] ("Opp'n to Patterson Mot."), Patterson's Reply
[Dkt. No. 175] ("Reply to Patterson Mot."), and Patterson's Supplement [Dkt. No. 182] ("Suppl.
to Patterson Mot."); Plaintiff Kenneth D. Thomas' Motion for Reconsideration of the Court's
Order of May 30, 2008 [Dkt. No. 172] ("Thomas Mot."), Defendants' Opposition [Dkt. No. 177]
("Opp'n to Thomas Mot."), and Thomas' Reply [Dkt. No. 185] ("Reply to Thomas Mot.");
Plaintiff Frank Matkins' Motion for Modification of the Court's May 30, 2008, Order [Dkt. No.
203] ("Matkins Mot."), Matkins' Reply to Defendants' Opposition [Dkt. No. 204] ("First Reply
to Matkins Mot."), Defendants' Opposition [Dkt. No. 207] ("Opp'n to Matkins Mot."), and
Matkins' Reply to Defendants' Opposition of October 24, 2008 [Dkt. No. 212] ("Second Reply
to Matkins Mot."); Plaintiff Janice I. Teed-Wilson's Motion for Modification of the Court's May
30, 2008, Order [Dkt. No. 213] ("Teed-Wilson Mot.") and Defendants' Opposition [Dkt. No.
216] ("Opp'n to Teed-Wilson Mot."); Plaintiff Henry Ontiveros' Motion for Modification of the
Court's May 30, 2008, Order [Dkt. No. 234] ("Ontiveros Mot.") and Defendants' Opposition
[Dkt. No. 241] ("Opp'n to Ontiveros Mot."); Defendants' Motion to Dismiss James S. Hill [Dkt.
No. 257] ("Mot. to Dismiss Hill"); Transcript of Status Hearing (Feb. 7, 2007) [Dkt. No. 286]
("Feb. 7, 2007 Hr'g Tr."); Transcript of Status Hearing (Sept. 14, 2007) [Dkt. No. 311] ("Sept.
14, 2007 Hr'g Tr."); Plaintiffs' Notice of Filing Regarding Individuals Who Retained Plaintiffs'
Counsel [Dkt. No. 313] ("Notice of Individuals Who Retained Pls.' Counsel"); Dismissed
Plaintiffs' Motion for Reconsideration of Dismissal [Dkt. No. 317] ("Mot. for Recons."),
Defendants' Opposition [Dkt. No. 330] ("Opp'n to Mot. for Recons."), and Dismissed Plaintiffs'
Reply [Dkt. No. 335] ("Reply to Mot. for Recons."); Plaintiffs' Third Status Report [Dkt. No.
337] ("Third Status Report"); and Plaintiffs' Request for Status Conference [Dkt. No. 348]
("Req. for Status Conf.").

[2]        The Court notes that at the time the instant motion for reconsideration was filed,
only 226 of the 663 dismissed plaintiffs had retained counsel and thus moved for
reconsideration.  See Notice of Individuals Who Retained Pls.' Counsel at 1.

[3]        In total, the motion for reconsideration attaches four documents as new evidence:
Exhibit A is a letter dated February 16, 2007, from Gebhardt & Associates conditioning the
firm's continued representation on payment of $10,000 by each individual client; Exhibit B is a

dismissed plaintiffs argue, the firm used misleading language to suggest to its clients that they were unrepresented, despite the fact that Gebhardt & Associates remained counsel of record. See Mot. for Recons. at 4-6, 8-9, 10-11. The dismissed plaintiffs also argue that the letters emphasized, in various implicit ways, that plaintiffs would have little chance of prevailing on their claims and recovering damages without counsel. See id. at 5 n.7, 8.

The dismissed plaintiffs assert that these letters, presented for the first time in their entirety, amount to new evidence explaining why they failed to respond to defendants' requests for discovery and the Court's show cause orders. See Mot. for Recons. at 10-11, 15-17. The dismissed plaintiffs argue that these communications – showing that Gebhardt & Associates denied its clients assistance in complying with pending discovery requests, discouraged them from participating in the case unless they could pay the firm $10,000 each, and inaccurately suggested that the firm did not already represent them – demonstrate that their failures to respond were neither willful nor egregious. See id. at 2, 15-17. Rather, they argue that their failures to respond resulted from the misleading and confusing nature of the letters. See id. In addition, the dismissed plaintiffs proffer the declarations of fourteen dismissed plaintiffs, attached to the motion for reconsideration as Exhibit E, to affirm that this confusing and misleading correspondence did in fact cause the declarants to misunderstand their rights, obligations, and options for proceeding in the case.

---

letter dated April 12, 2007, from Gebhardt & Associates to those clients who made payments pursuant to the February 16, 2007, letter; Exhibit C is a letter dated April 17, 2007, from Gebhardt & Associates to those clients who did not make payments pursuant to the February 16, 2007, letter; and Exhibit D is an undated "Frequently Asked Questions" handout. Although the dismissed plaintiffs explain that Exhibit D was also prepared by Gebhardt & Associates, it is not clear when or to whom it may have been sent. See Mot. for Recons. at 6 n.8. Accordingly, the Court has limited its analysis to the correspondence attached as Exhibits A through C.

In their opposition, defendants challenge whether the proffered correspondence amounts to new evidence. Defendants acknowledge that the letters were not previously provided to the Court in full. They argue, however, that the communications between Gebhardt & Associates and the dismissed plaintiffs "were described in sum and substance" in the parties' prior briefings and by the Court itself. <u>See</u> Opp'n to Mot. for Recons. at 14. Defendants maintain that the dismissed plaintiffs failed to use reasonable diligence in prosecuting their claims and have not adequately explained why they did not communicate with Gebhardt & Associates or respond to the Court's show cause orders. <u>See</u> <u>id</u>. at 15-20. To the contrary, defendants note that "the Court was clear about the consequences of plaintiffs' continued non-responsiveness in its show cause orders" and "even considered – and in appropriate cases, granted – reconsideration motions a year later." <u>See</u> <u>id</u>. at 24. And although defendants concede that the dismissed plaintiffs may have some dispute with their prior counsel, they assert that such issues are more appropriately resolved in a separate attorney malpractice action. <u>See</u> <u>id</u>. at 21-22. This is especially so, defendants explain, because permitting the dismissed plaintiffs to rejoin the litigation would unfairly prejudice defendants. <u>See</u> <u>id</u>. at 22-24.

In their reply, the dismissed plaintiffs reemphasize why the proffered communications should be considered new evidence warranting reconsideration. <u>See</u> Reply to Mot. for Recons. at 1. They also characterize the prejudice alleged by defendants as both minimal and premature – the dismissed plaintiffs' discovery responses regarding liability would have been duplicative, while damages discovery will need to be supplemented for all plaintiffs in any event, and the Court may address defendants' other concerns without resorting to the extreme sanction of dismissal. <u>See</u> <u>id</u>. at 5-7, 11-12. This is especially so, the dismissed plaintiffs argue, because their conduct was neither willful nor egregious and has not unduly

burdened the Court or delayed the litigation.  See id. at 2, 8-11.  The dismissed plaintiffs

conclude by proposing more appropriate alternatives to dismissal.  See id. at 11-12.


## I.  FACTUAL AND PROCEDURAL BACKGROUND

The Court recently recounted the factual and procedural history of this case in its

opinion granting in part and denying in part defendants' motion for summary judgment.  See

Breen v. Chao, 253 F. Supp. 3d 244, 247-53 (D.D.C. 2017).  The Court thus recites here only

those facts relevant to the instant motion for reconsideration.

In seeking to challenge defendants' reduction-in-force, the National Association

of Air Traffic Specialists retained Gebhardt & Associates in a letter dated January 29, 2005.  See

Reply to Mot. to Withdraw & Opp'n to Mot. to Bifurcate Ex. 2.  In the letter, the union stated

that it "would like to engage [the] firm to represent [union] members in an age discrimination

claim against the Federal Aviation Administration."  Id. at 1.  The letter recited the terms of the

retention agreement:  "Our understanding of the agreement is your firm will charge us $250.00

per hour for services and if there is any monetary award 10 percent of the final award.  We will

send your firm a $10,000.00 retainer the week of January 31st to begin."  Id.

On February 1, 2005, plaintiff Kathleen A. Breen sent her individual authorization

letter to Gebhardt & Associates.  See Reply to Mot. to Withdraw & Opp'n to Mot. to Bifurcate

Ex. 3.  Ms. Breen, a former president of the National Association of Air Traffic Specialists,

explained in her declaration that this letter was "substantially similar" to those sent by each of

the other union members seeking to be plaintiffs in the case.  See Reply to Mot. to Withdraw &

Opp'n to Mot. to Bifurcate Ex. 1 at 1-3.  Ms. Breen's authorization letter stated:  "I am writing to

retain you and your law firm, Gebhardt & Associates, LLP, to file an age discrimination claim on

my behalf, as part of the age discrimination action organized by the National Association of Air

Traffic Specialists."  <u>See</u> Reply to Mot. to Withdraw & Opp'n to Mot. to Bifurcate Ex. 3 at 1.

The letter provided relevant personal details and contact information, but did not mention

payment or any other requirements for representation.  <u>Id</u>.

   Thereafter, Gebhardt & Associates filed a complaint in this Court on March 31,

2005, amended on June 24, 2005, on behalf of the 834 individuals who had retained the firm

with the assistance of the union.  <u>See</u> Compl.; Am. Compl.  Gebhardt & Associates then filed a

motion for class certification on June 29, 2005.  <u>See</u> Mot. for Certif.  The union paid Gebhardt &

Associates in accordance with their agreement through February 3, 2006.  <u>See</u> Reply to Mot. to

Withdraw & Opp'n to Mot. to Bifurcate Ex. 1. at 3.  Following the reduction-in-force, however,

the union no longer received dues from those affected – now former members of the union – and

ceased payments to Gebhardt & Associates.  <u>See</u> <u>id</u>. at 3-4.

   On February 7, 2007, Judge Richard W. Roberts, to whom this case was then

assigned, held a status conference at which he denied the motion to certify the class without

prejudice and set a schedule for discovery.  <u>See</u> Feb. 7, 2007 Hr'g Tr. at 8-10.  Gebhardt &

Associates then sent a letter to each of the individual plaintiffs dated February 16, 2007, the first

of the three letters attached to plaintiffs' motion for reconsideration.  <u>See</u> Mot. for Recons. Ex.

A.  This letter advised plaintiffs that they had a decision to make about their continued

involvement in the case and had three options for proceeding in the litigation:  "(1) Continue as

an active Plaintiff with our law firm's representation.  (2) Stay in the case without representation

('<u>pro se</u>').  (3) Request dismissal from the case."  <u>See</u> <u>id</u>. at 2.  In order to remain represented by

Gebhardt & Associates, the letter made clear that individual plaintiffs would have to make

significant financial payments:

> Your case is large and complex, and it will be time-intensive and hence necessarily expensive. . . .  Your former union at the FAA initially financed this case, but the union is no longer in the picture. . . .  [W]e have designed a payment structure assuming that we have approximately 100 paying clients who continue with our representation (we do not know the actual number at this time, and it may change depending on your interests).  With 100 paying clients, your total individual cost will be $10,000 over the next two years.  However, in order to assist you with the cost of litigation, we have decided to give you the option of making four payments in the first two years of your case. . . .  Your payment of $2,500 by March 9, 2007, will constitute your agreement to also pay the next three semi-annual payments of $2,500 . . . .  If you do not make your next promised payment, you will fall automatically into the <u>pro</u> <u>se</u> group and no longer be represented by our firm.

<u>See</u> <u>id</u>. at 2-3.  If plaintiffs would or could not commit to paying this substantial sum, the letter misleadingly explained:  "The <u>pro</u> <u>se</u> individuals who stay in the case without our representation will get whatever (if anything) the FAA decides to give them when the case ends.  If these individuals get relief, it is likely to be less than the remedies awarded to the represented Plaintiffs."  <u>See</u> <u>id</u>. at 2.  The letter did not make clear that Gebhardt & Associates already represented each of the individual plaintiffs and, as a result, the firm had ongoing obligations toward its clients.  Rather, the letter simply stated that if a client did not commit to the payment plan, Gebhardt & Associates would "inform the Court that you intend to proceed as an unrepresented <u>pro</u> <u>se</u> plaintiff."  <u>See</u> <u>id</u>. at 4.

On March 16, 2007, defendants served their initial discovery requests on plaintiffs' counsel.  <u>See</u> Mot. to Compel Ex. 1.  The discovery requests included four interrogatories and four requests for production of documents.  The first interrogatory sought current contact information, while the three other interrogatories pertained to damages.  <u>See</u> <u>id</u>. at 4-6.  Defendants requested production of documents related to these four interrogatories.  <u>See</u> <u>id</u>. at 6-7.

On April 12, 2007, Gebhardt & Associates sent a letter to those clients who had paid or agreed to pay Gebhardt & Associates in accordance with the firm's February 16, 2007, letter. <u>See</u> Mot. for Recons. Ex. B. This letter informed recipients that 172 flight service controllers had paid or agreed to pay Gebhardt & Associates, requested that clients encourage others to do likewise, and provided the interrogatories and requests for production to be completed and returned to Gebhardt & Associates for compilation. <u>See</u> <u>id.</u> at 1.

On April 17, 2007, Gebhardt & Associates sent a letter to those individuals who had not paid or agreed to pay Gebhardt & Associates in accordance with the February 16, 2007, letter. <u>See</u> Mot. for Recons. Ex. C. From the outset, the letter implied that Gebhardt & Associates did not in fact already represent the recipients. The letter was addressed "Dear Unrepresented Plaintiff," and began:

> We are writing to you and all the plaintiffs in the Flight Service Controllers' age discrimination case against the FAA <u>who have not yet signed up for legal representation</u>. This is to offer you <u>one last chance to obtain representation</u> in this large, complex federal district court lawsuit before the Court's May 8, 2007 deadline.

<u>See</u> <u>id.</u> at 1 (emphasis added). The letter also used confusing language that, when read one way, suggested that those without counsel were likely to be dismissed from the case for failure to prosecute. <u>See</u> <u>id.</u> ("If you do not have legal representation, you will be obligated to represent yourself, and if you don't, you run the substantial risk of being dismissed from the case under the legal doctrine of 'failure to prosecute.'"). The letter emphasized that "[i]n [the firm's] experience, <u>pro se</u> and inactive plaintiffs often fair [sic] poorly in multi-party and class cases," and described two of the firm's "recent cases" in which numerous <u>pro se</u> plaintiffs had either been "recommended [for] dismiss[al]" by a magistrate judge or "got nothing," after each of the other represented plaintiffs "received a monetary settlement and a full refund of their legal fees."

See id. at 3-4.  The letter enclosed defendants' discovery requests and advised that those who did

not pay Gebhardt & Associates "should answer the enclosed government discovery requests, and

return your discovery answers . . . to the government's lead attorney . . . ."  See id. at 1.

On June 8, 2007, Gebhardt & Associates filed a motion to withdraw as counsel

for those plaintiffs who did not fulfill the firm's payment demands.  See Mot. to Withdraw.  The

motion included a copy of the notice sent to those plaintiffs from whom counsel sought to

withdraw, in accordance with Local Civil Rule 83.6.  See Mot. to Withdraw Ex. 3.  In the motion

to withdraw, Gebhardt & Associates explained that these individuals had "indicated in writing or

by their conduct that they no longer wish[ed] to be represented by GEBHARDT &

ASSOCIATES, LLP."  See Mot. to Withdraw at 1.  The firm clarified that twenty plaintiffs had

affirmatively indicated in writing that they wished to proceed pro se, while nearly seven hundred

other individuals had simply "not responded to counsel's two written communications to them

regarding representation in prosecuting their claims."  See Mot. to Withdraw Mem. at 1-2.

Regarding the nature and contents of these two written communications, the motion simply

stated:  "Plaintiffs' counsel has twice written detailed letters, with lengthy attachments . . . in

order to obtain the information necessary to prosecute this case on their behalf, respond to

Defendants' discovery requests, and make payment arrangements."  See id.  The motion also

selectively quoted the letters, but these quotations did not paint a complete picture of the letters'

tone and contents.  See id. at 2-3.  Thus, Gebhardt & Associates represented to the Court that

despite the firm's "diligent[] attempt[s] to communicate with the 694 nonresponding pro se

Plaintiffs, . . . these individuals ha[d] remained uncommunicative," but did not disclose the

confusing and misleading letters that likely brought about this unresponsiveness.  See id. at 3.

Defendants opposed the motion to withdraw, arguing that leaving hundreds of individual plaintiffs to represent themselves pro se would be "manifestly unworkable, . . . severely prejudice defendants, and . . . delay resolution of the case." See Opp'n to Mot. to Withdraw at 1. Defendants also argued that because "Gebhardt's motion does not disclose what its underlying fee arrangement with plaintiffs was, . . . [it] does not support any conclusion that the 714 plaintiffs have failed, let alone failed substantially, to meet their obligations under the undisclosed fee arrangement." See id. at 2-3. In addition, on June 22, 2007, defendants filed a motion to bifurcate discovery and the trial on liability and damages. See Mot. to Bifurcate. In their briefings, defendants explained that it was "uncontroverted that proving damages and liability will require no duplicative testimony: plaintiffs admit that 'the damages portion of this lawsuit for each plaintiff will relate solely to the harm suffered, not to whether each was in fact a victim of the discrimination proved to have occurred.'" See Reply to Mot. to Bifurcate at 2. The Court subsequently denied defendants' motion to bifurcate without prejudice. See Sept. 14, 2007 Hr'g Tr. at 6.

On August 14, 2007, defendants filed a motion to compel 708 plaintiffs to respond to their first set of interrogatories and requests for production of documents. See Mot. to Compel. One week later, plaintiffs filed a consent motion to defer consideration of the motion to compel until the Court ruled on Gebhardt & Associates' motion to withdraw as counsel for the non-paying plaintiffs. See Mot. to Defer. The consent motion represented that plaintiffs' counsel, "[c]onsistent with their ethical obligations" had "transmitted copies of Defendants' discovery requests to all Plaintiffs named in the Complaint who had not requested withdrawal from the case," including those from whom counsel sought to withdraw representation. See id. at 2. Gebhardt & Associates explicitly acknowledged that the firm still "formally represent[ed]"

those from whom it sought to withdraw and explained that deferred consideration of the motion to compel would allow counsel to "know on whose behalf they are expected to respond and . . . , if necessary, be able to formulate an effective response in light of the Court's rulings." See id. at 3-4. As to the reason counsel sought to withdraw, the motion simply explained that these plaintiffs "were not responding to counsel's communications, particularly regarding discovery, and . . . were not willing to pay for continued representation." See id. at 2.

On September 14, 2007, Judge Roberts held a hearing at which he granted Gebhardt & Associates' motion to withdraw as to the twenty plaintiffs who affirmatively represented in writing that they wished to proceed pro se. See Sept. 14, 2007 Hr'g Tr. at 4. But Judge Roberts denied the motion as to all of the remaining plaintiffs from whom the firm sought to withdraw. See id. Judge Roberts explained that he would instead order the remaining 692 plaintiffs to show cause why they should not be dismissed from the case for their unresponsiveness. See id. at 4-5. In doing so, he also denied defendants' motion to compel discovery responses without prejudice and denied plaintiffs' consent motion to defer ruling on the motion to compel as moot. See id. at 6.

Judge Roberts then issued a show cause order [Dkt. No. 107] on November 8, 2007, to those plaintiffs identified both by defendants as unresponsive to discovery requests and by Gebhardt & Associates as unresponsive to counsel's "multiple attempts to contact them to determine whether they wish to proceed with this case." He issued a second show cause order [Dkt. No. 123] on January 8, 2008, for those parties for whom the first show cause order had been returned as undeliverable and new addresses had been found. On May 30, 2008, Judge Roberts issued an order [Dkt. No. 151] dismissing the plaintiffs who did not respond to these two show cause orders, except those for whom mail had been returned as undeliverable and updated

addresses could not be identified. On October 23, 2008, Judge Roberts issued a third show cause order [Dkt. No. 206] for twenty additional plaintiffs who failed to respond to defendants' written requests for discovery. On February 12, 2009, he issued an order [Dkt. No. 245] dismissing thirteen of those plaintiffs who did not respond to the third show cause order.

Judge Roberts considered six individual motions for reconsideration filed by those whom he had dismissed. On January 6, 2009, he issued a memorandum opinion and order [Dkt. No. 230] granting motions for reconsideration filed by dismissed plaintiffs Steven K. Patterson and Kenneth D. Thomas. Gebhardt & Associates had filed both motions for reconsideration on the movants' behalves, as Messrs. Patterson and Thomas had apparently "re-retained" the firm after their dismissals. Both motions represented that the movants had been unaware of the show cause orders and discovery requests because they had undergone several moves since the start of litigation as a result of the reduction-in-force and had not timely received the mailings. See Patterson Mot. Ex. 1; Suppl. to Patterson Mot. Ex. 1; Thomas Mot. Ex. 1. Judge Roberts emphasized in his opinion that he would grant the motions for reconsideration because nothing in the record disproved the movants' explanations for why they did not sooner learn about the show cause orders and discovery requests and both movants had apparently acted as soon as they did learn about them.

Unlike Messrs. Patterson and Thomas, four other dismissed plaintiffs filed motions for reconsideration of their dismissals pro se.[4] Judge Roberts denied each of these motions for reconsideration, finding that his prior show cause orders had been "unambiguous." See Mem. Op. & Order Den. Matkins, Ontiveros & Teed-Wilson Mots. [Dkt. No. 247] at 3 n.2

---

[4]    It appears that Gebhardt & Associates did assist these pro se movants with their motions, although the extent of this assistance is unclear. See Dodson Mot. at 1 n.1; Teed-Wilson Mot. at 1 n.1; Ontiveros Mot. at 1 n.1.

(Feb. 17, 2009); Mem. Op. & Order Den. Dodson Mot. [Dkt. No. 180] at 4 n.2 (Aug. 15, 2008).

Not having seen the letters sent by Gebhardt & Associates, he found that the dismissed plaintiffs

had not provided "any justification for failing to stay in communication with plaintiffs' counsel

to monitor the progress of the litigation and learn of their obligation to respond to the order to

show cause in a timely fashion." See Mem. Op. & Order Den. Matkins, Ontiveros & Teed-

Wilson Mots. at 6-7; see also Mem. Op. & Order Den. Dodson Mot. at 6-7 ("[P]laintiffs are

expected to use reasonable diligence in participating in litigation, and plaintiffs are expected to

maintain communication with their counsel.  Unfortunately for her, Dodson's conduct has fallen

short." (citations omitted)).


## II.  LEGAL STANDARD

The Federal Rules of Civil Procedure do not specifically address motions for

reconsideration.  See Estate of Klieman v. Palestinian Auth., 82 F. Supp. 3d 237, 241-42 (D.D.C.

2015).  "While the most analogous rule is Rule 60, which provides relief from a final judgment

or order, motions to reconsider interlocutory orders are not governed by Rule 60(b), but rather,

such determinations 'are within the discretion of the trial court.'"  Id. at 242 (quoting Keystone

Tobacco Co. v. U.S. Tobacco Co., 217 F.R.D. 235, 237 (D.D.C. 2003)); see also FED. R. CIV.

P. 54(b) ("[A]ny order or other decision, however designated, that adjudicates fewer than all the

claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time

before the entry of a judgment adjudicating all the claims and all the parties' rights and

liabilities.");  Langevine v. District of Columbia, 106 F.3d 1018, 1023 (D.C. Cir. 1997)

("Interlocutory orders are not subject to the law of the case doctrine and may always be

reconsidered prior to final judgment.  This is true even when a case is reassigned to a new

judge." (citations omitted)).

This judicial discretion is broad. While the judicial interest in finality disfavors reconsideration, a district court has inherent authority to reconsider its interlocutory orders "as justice requires." See Wannall v. Honeywell Int'l, Inc., 292 F.R.D. 26, 30-31 (D.D.C. 2013), aff'd sub nom. Wannall v. Honeywell, Inc., 775 F.3d 425 (D.C. Cir. 2014) (citations omitted). Although the "as justice requires" standard may be imprecise, it is at least clear that a court has "more flexibility in applying Rule 54(b) than in determining whether reconsideration is appropriate under Rules 59(e) and 60(b)." See id. at 30, 32 (internal quotations and citation omitted).

To determine whether justice requires reconsideration of an interlocutory decision, courts look to whether the moving party has demonstrated "(1) an intervening change in the law; (2) the discovery of new evidence not previously available; or (3) a clear error of law in the first order." Estate of Klieman v. Palestinian Auth., 82 F. Supp. 3d at 242 (citation omitted). Even where none of these three factors is present, "the Court may nevertheless elect to grant a motion for reconsideration if there are other good reasons for doing so." Cobell v. Norton, 355 F. Supp. 2d 531, 540 (D.D.C. 2005). For example, justice may require revision where "the Court has patently misunderstood a party, has made a decision outside the adversarial issues presented to the Court by the parties, [or] has made an error not of reasoning but of apprehension . . . ." See Singh v. George Washington Univ., 383 F. Supp. 2d 99, 101 (D.D.C. 2005) (internal quotations and citation omitted); see also Stewart v. FCC, 189 F. Supp. 3d 170, 173 (D.D.C. 2016).

The efficient administration of justice requires, however, that there be good reason for a court to reconsider an issue already litigated by the parties: "[W]here litigants have once battled for the court's decision, they should neither be required, nor without good reason

permitted, to battle for it again." Isse v. American Univ., 544 F. Supp. 2d 25, 30 (D.D.C. 2008) (quoting Singh v. George Washington Univ., 383 F. Supp. 2d at 101). Ultimately, the moving party has the burden to demonstrate "that reconsideration is appropriate and that harm or injustice would result if reconsideration were denied." FBME Bank Ltd. v. Mnuchin, 249 F. Supp. 3d 215, 222 (D.D.C. 2017) (quoting U.S. ex rel. Westrick v. Second Chance Body Armor, Inc., 893 F. Supp. 2d 258, 268 (D.D.C. 2012)); see also Isse v. American Univ., 544 F. Supp. 2d at 29.

## III.  ANALYSIS

### A.  *The Proffered Correspondence Amounts to New Evidence Warranting Reconsideration*

Although the correspondence was summarily described and selectively quoted in counsel's earlier representations to the Court, the letters from Gebhardt & Associates, now provided to the Court in full for the first time, amount to new evidence justifying reconsideration of the plaintiffs' dismissals. The letters reflect several issues of which Judge Roberts apparently was unaware: Despite the fact that the firm was counsel of record, Gebhardt & Associates conditioned its continued representation on each plaintiff paying $10,000 over the course of two years and refused to assist its clients with their discovery obligations until and unless they committed to paying that amount; Gebhardt & Associates made these payment demands without any warning to its clients and without any attempt to mitigate the prejudice to them in the midst of litigation; Gebhardt & Associates used misleading language to suggest to its non-paying clients that they were currently unrepresented, that the firm had no ongoing obligation to them, and that legal assistance would be all but necessary for their success in the litigation; for those of its clients who did not forward payment, Gebhardt & Associates continued to withhold any assistance in the case, including with respect to discovery, while its motion to withdraw was

pending and even after Judge Roberts denied the motion to withdraw; and Gebhardt &

Associates did all of this while leading Judge Roberts to believe that counsel simply had been

unable to elicit a response from any of these individuals, <u>see</u> Mot. to Withdraw Mem. at 1-3;

Mot. to Defer at 2; Sept. 14, 2007 Hr'g Tr. at 4.[5] Now having seen the complete contents of

these letters, the Court more fully understands the context giving rise to the dismissed plaintiffs'

misunderstandings – for example, that they were not already represented by counsel, that the

class action was no longer proceeding, or that they would have no realistic chance of success if

they could not pay $10,000 (and possibly more) to Gebhardt & Associates. <u>See</u> Mot. for Recons.

Ex. E at 1-17. With a more complete view of the attendant circumstances, the conduct of the

dismissed plaintiffs now is more understandable. In light of this new evidence, justice requires

reconsideration.

 Defendants' arguments to the contrary are unavailing. They primarily assert that

the proffered letters and affidavits do not amount to new evidence. They characterize the

fourteen declarations as "self-serving" and argue that the relevant correspondence from Gebhardt

& Associates was "already the subject of extensive briefing . . . and . . . described in detail in

several prior orders of this Court . . . ." <u>See</u> Opp'n to Mot. for Recons. at 3 n.4.[6] Because the

---

[5] To be clear, Gebhardt & Associates did allude in its briefings to the fact that its
correspondence had pertained to payment arrangements. <u>See</u> Mot. to Withdraw Mem. at 1-2
(explaining that Gebhardt & Associates had written to its clients to "make payment
arrangements," among other reasons). And the firm did state that it sought to withdraw, in part,
because certain plaintiffs "were not willing to pay for continued representation." <u>See</u> Mot. to
Defer at 2. Thus, Judge Roberts was aware, generally, that payment was one of several matters
at issue. This fact does not negate any of the Court's conclusions here.

[6] Defendants specifically argue that two of the letters – the February 16, 2007, and
April 17, 2007 communications – "were already the subject of extensive briefing circa
2007-2009 and were described in detail in several prior orders of this Court." <u>See id</u>. With
regard to the third letter, dated April 12, 2007, defendants acknowledge that it was not previously

relevant contents of the letters "were described in sum and substance in prior briefing," defendants argue that the proffered documents do not add anything new to the Court's understanding of the matter. See id. at 13-14.[7]

Defendants further argue that the dismissed plaintiffs have failed to show any error in Judge Roberts' decisions to dismiss the claims of those who did not respond to the show cause orders. See Opp'n to Mot. for Recons. at 3-4. These show cause orders were, as Judge Roberts already has described, "unambiguous." See id. at 3-4, 6 n.8, 13, 15, 16. Defendants argue that the dismissed plaintiffs "do not attempt to distinguish themselves from the numerous other individual plaintiffs who did manage to respond to the same show cause orders" or "explain why they waited so long after their dismissals to seek reconsideration by this Court." See id. at 3. And because their "excuses for not responding to the show cause orders are no better than the explanations provided in the past by dismissed plaintiffs seeking reconsideration of their dismissals," defendants assert that Judge Roberts' reasons for denying earlier motions for reconsideration apply equally to the instant motion for reconsideration. See id. at 15-16.

These arguments fail to respond to the dismissed plaintiffs' main point, however. The letters – now disclosed to the Court in full – show for the first time the confusing and misleading nature of Gebhardt & Associates' communications with its clients and belie the notion that the dismissed plaintiffs simply lacked interest in the case and disregarded defendants'

---

described to the Court, but assert that the letter does not "provide any new information relevant to the non-participating plaintiffs' dismissals . . . ." See id.

[7]    In making these arguments, defendants directly contradict the assertions they raised in opposing Gebhardt & Associates' motion to withdraw. In their brief opposing the motion to withdraw, defendants argued that the Court could not meaningfully assess whether the firm's withdrawal was justified because Gebhardt & Associates had almost entirely withheld the contents of its communications with its clients. See Opp'n to Mot. to Withdraw at 2-3, 11-18.

requests for discovery and the Court's orders. A reasonable interpretation of the show cause orders issued by Judge Roberts requires assessment in light of the contemporaneous communications the dismissed plaintiffs received from Gebhardt & Associates, of which Judge Roberts was unaware. He could not have known that Gebhardt & Associates was demanding $10,000 in exchange for continued representation, without ever informing the non-paying plaintiffs that the firm had already assumed the responsibilities of representing them, including the obligation to assist with discovery. Judge Roberts could not have known that these payment demands came without any warning, but came with strong cautions from Gebhardt & Associates that the firm's clients would have no reasonable prospect of success unless they paid $10,000 each to proceed with counsel. And he surely could not have known that Gebhardt & Associates refused to assist its non-paying clients with discovery and instead informed them that they were unrepresented. What Judge Roberts did know when he issued his show cause orders beginning on November 8, 2007, however, was that he had denied the motion of Gebhardt & Associates to withdraw on September 14, 2007, and the firm thus remained counsel of record – with ongoing responsibilities to each of its clients – with respect to all but the twenty plaintiffs who affirmatively represented in writing that they wished to proceed pro se.

The proffered letters provide new insights into why the dismissed plaintiffs did not respond to defendants' discovery requests and the show cause orders, belying the notion that their unresponsiveness reflected a lack of interest in the litigation or a disregard for Judge Roberts' orders. When Gebhardt & Associates suddenly demanded payment for representation after the motion for class certification was denied, it was not unreasonable for a lay person to conclude "that this meant that the class action lawsuit was lost and over." See Mot. for Recons. Ex. E at 3-4 ("I later heard that the judge rejected the class action. I understood that this meant

that the class action lawsuit was lost and over. I heard that Gebhardt & Associates was offering to represent individual Flight Service Control Specialists in a new lawsuit challenging the RIF."). Likewise, the letters emphasized that if plaintiffs could not afford to pay Gebhardt & Associates, they were not entitled to any legal assistance from the firm and had no realistic chance of success in the litigation. It thus is not difficult to see why so many non-paying plaintiffs did not respond – they had been told by their "former" counsel that, without a $10,000 payment, they simply had no meaningful option to proceed in the litigation. See id. at 1-17.[8]

        In addition, defendants argue that the fourteen individual declarations "do not demonstrate why all of the 226 movants should be allowed back in the case eight years after they were dismissed." See Opp'n to Mot. for Recons. at 19. Defendants correctly assert that among hundreds of movants, some have cases more analogous to those of the declarants and some have cases less so, and it is likely that these movants would not all share a single uniform explanation for their unresponsiveness. The Court must keep in mind, however, that the applicable standard here is simply "as justice requires." While the dismissed plaintiffs have submitted only fourteen declarations, each of the declarants confirms that the objectively confusing and misleading communications sent by Gebhardt & Associates did in fact confuse and mislead them. And considering that each of the dismissed plaintiffs would have received these objectively confusing and misleading letters, the slight variations in their individual cases do not alter the overarching

---

[8]    The four prior motions for reconsideration filed pro se also allude to the movants' misunderstandings regarding their rights and responsibilities for proceeding in the litigation. See, e.g., Dodson Mot. at 3; First Reply to Matkins Mot. at 1-2; Teed-Wilson Mot. at 1-3; Ontiveros Mot. at 1. Without fully understanding the nature of Gebhardt & Associates' communications to the firm's clients, these pro se briefings do not make clear the reasons for these misunderstandings. But the correspondence from Gebhardt & Associates similarly puts these pro se briefings into a new light. As a result, the Court finds defendants' arguments that these briefings preclude the letters from being treated as new evidence to be unconvincing. See Opp'n to Mot. for Recons. at 16-19.

impact of former counsel's conduct.  The interests of justice would not be served by parsing the

thin lines that distinguish certain dismissed plaintiffs from others, as defendants ask the Court

to do.[9]

> B.  *Prior Counsel's Conduct Is Appropriate for the Court's Consideration and*
> *Need Not Be Relegated to a Separate Malpractice Action*

Defendants also argue that the instant matter would be more appropriately

resolved in a separate attorney malpractice action, characterizing the dispute as one between the

dismissed plaintiffs and their prior counsel.  Their grievances with counsel, defendants argue, do

not excuse the dismissed plaintiffs' failures to prosecute, and a motion for reconsideration cannot

substitute for a malpractice action.  See Opp'n to Mot. for Recons. at 21-22.  In support of this

argument, defendants cite to United States Supreme Court precedent holding that "clients must

be held accountable for the acts and omissions of their attorneys."  See Pioneer Inv. Servs. v.

---

[9]    For example, defendants cite James Hill as one dismissed plaintiff with a
particularly unique narrative.  Defendants filed a motion to dismiss James Hill on May 6, 2009,
for his failure to respond to discovery requests.  See Mot. to Dismiss Hill.  The motion certified
that Mr. Hill's counsel – Gebhardt & Associates – did not oppose the motion.  See id. at 1.
Mr. Hill had been among the non-paying plaintiffs from whom Gebhardt & Associates sought to
withdraw representation.  See Mot. to Dismiss Hill Mem. at 2.  Because Mr. Hill responded to
the Court's show cause order, however, he was not dismissed from the case (and Gebhardt &
Associates remained his counsel of record).  See id. at 2-3.  After defendants still did not receive
the requested discovery responses, they filed the motion to dismiss, see id. at 3, which the Court
granted by minute order on June 25, 2009.  In addition, two of the movants – Frank Matkins and
Henry Ontiveros – already filed unsuccessful motions for reconsideration of their dismissals.
See supra pp. 12-13.  And two other movants – Jody L. Edwards and Erik C. Greer – were not
listed in Gebhardt & Associates' June 8, 2007, motion to withdraw as counsel, yet were also
subsequently dismissed for their failures to respond to the Court's November 8, 2007, order to
show cause.  See Opp'n to Mot. for Recons. at 10 n.13; see also Mot. to Withdraw Ex. 1.  While
one may speculate as to the reasons for these discrepancies, they are inconsequential to
resolution of the instant motion.  In the face of such overwhelming evidence of misconduct by
Gebhardt & Associates, it seems more than likely that each of these dismissed plaintiffs was
unfairly prejudiced with unwarranted dismissal as a result – the prejudice and confusion they
faced simply manifested in slightly different outcomes.

Brunswick Assocs., 507 U.S. 380, 396-97 (1993) (citing Link v. Wabash R.R. Co., 370 U.S. 626, 633-34 (1962)).

Defendants' reliance on Pioneer Investment Services is unpersuasive for several reasons. First, the Supreme Court issued its ruling in that case in the context of determining whether conduct qualifies as "excusable neglect" for purposes of Rule 60(b) of the Federal Rules of Civil Procedure or Rule 9006(b)(1) of the Federal Rules of Bankruptcy Procedure. See Pioneer Inv. Servs. v. Brunswick Assocs., 507 U.S. at 387-97. Accordingly, the United States Court of Appeals for the District of Columbia Circuit has only ever applied this holding in the Rule 60(b) context, never in the more flexible Rule 54(b) context. Furthermore, the D.C. Circuit has cabined this Supreme Court precedent to instances in which the plaintiff "voluntarily chose his attorney as his representative." See Pigford v. Veneman, 292 F.3d 918, 925-26 (D.C. Cir. 2002) (quoting Link v. Wabash R.R. Co., 370 U.S. at 633-34). In contrast, in class actions where plaintiffs do not "voluntarily choose [counsel] in the usual sense," the D.C. Circuit has found "no basis for holding [a plaintiff] responsible for [counsel]'s failure" to meet a court's deadlines. See id. at 926-27 (internal quotations omitted). And the D.C. Circuit has been particularly reluctant to impose dismissal as a sanction where a client is innocent of counsel's misconduct. See Shea v. Donohoe Constr. Co., 795 F.2d 1071, 1077 (D.C. Cir. 1986) ("When the client's only fault is his poor choice of counsel, dismissal of the action has been deemed a disproportionate sanction."); Butler v. Pearson, 636 F.2d 526, 531 (D.C. Cir. 1980) ("[T]he concept of proportionality demands that plaintiffs not be unfairly penalized for negligence of their attorney. In these circumstances, we are persuaded that the drastic remedy of dismissal was disproportionate to the level of negligence shown."); see also Hildebrandt v. Vilsack, 287 F.R.D. 88, 96-97 & n.5 (D.D.C. 2012). More to the point, the Court is not aware of any case in which

the D.C. Circuit has held a party "accountable for the acts and omissions of their attorneys" where counsel engaged in the kind of conduct involved here, including misleading representations to both counsel's clients and the Court. See Jackson v. Washington Monthly Co., 569 F.2d 119, 122 & n.18, 123-24 (D.C. Cir. 1977); cf. Anderson v. Chevron Corp., 190 F.R.D. 5, 9-12 (D.D.C. 1999).

When an attorney agrees to undertake the representation of a client, "counsel is under an obligation to see the work through to completion." See Sabre Int'l Sec. v. Torres Advanced Enter. Solutions, LLC, 219 F. Supp. 3d 155, 157 (D.D.C. 2016); Byrd v. District of Columbia, 271 F. Supp. 2d 174, 176 (D.D.C. 2003). Of course, attorneys may withdraw where a "client fails substantially to fulfill an obligation to the lawyer regarding the lawyer's services and has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled." See Fid. Nat'l Title Ins. Co. v. Intercounty Nat'l Title Ins. Co., 310 F.3d 537, 540 (7th Cir. 2002) (quoting MODEL RULES OF PROF'L CONDUCT r. 1.16(b) (AM. BAR ASS'N)). But whether an individual has "failed substantially" depends on the obligations agreed upon when the parties entered the attorney-client relationship. Compare Byrd v. District of Columbia, 271 F. Supp. 2d at 178, with Fid. Nat'l Title Ins. Co. v. Intercounty Nat'l Title Ins. Co., 310 F.3d at 540.[10] While an attorney is not expected to work for free forever, see ABA MODEL RULES OF PROF'L CONDUCT r. 1.16(b)(6); RULES OF PROF'L CONDUCT r. 1.16(b)(4) (D.C. BAR), a client's non-payment does not justify failing to provide competent representation, see Aka v. U.S. Tax Court, 854 F.3d 30, 33-35 (D.C. Cir. 2017).

---

[10] For this reason, rules of professional conduct require that "[t]he scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible . . . be communicated to the client, preferably in writing, before or within a reasonable time after commencing . . . the representation . . . ." See ABA MODEL RULES OF PROF'L CONDUCT r. 1.5(b); see also D.C. RULES OF PROF'L CONDUCT r. 1.5(b).

In addition, once an attorney has entered an appearance in a pending lawsuit, the attorney may not unilaterally decide to consider a client unrepresented simply because the client has not paid fees or because a motion to withdraw from the case is pending before the court. One cannot assume that the relief requested will be granted simply because a motion has been filed. And certainly, an attorney may not do so after the court has <u>denied</u> such a motion. Furthermore, even if a court grants a motion for withdrawal, a lawyer must continue to take steps to the extent reasonably practicable to protect a client's interests upon termination of representation, "such as giving reasonable notice to the client, [and] allowing time for employment of other counsel . . . ." <u>See</u> ABA MODEL RULES OF PROF'L CONDUCT r. 1.16(d); D.C. RULES OF PROF'L CONDUCT r. 1.16(d); <u>see also</u> ABA Comm. on Ethics & Prof'l Responsibility, Formal Op. 16-476 ("In effectuating a withdrawal, a lawyer should do so in a manner that minimizes any prejudice to the client."). In fact, even when a lawyer has been unfairly discharged, counsel must nonetheless "take all reasonable steps to mitigate the consequences to the client" of withdrawal. <u>See</u> ABA MODEL RULES OF PROF'L CONDUCT r. 1.16 cmt. 9; <u>see also</u> D.C. RULES OF PROF'L CONDUCT r. 1.16 cmts. 7, 9. Such steps to mitigate prejudice to the client would certainly include responding to pending motions, discovery requests, and directives from the court in compliance with court-ordered deadlines.

Finally, and most fundamentally, a lawyer may "not make a false or misleading communication about the lawyer or the lawyer's services," including statements that are truthful but misleading or material misrepresentations or omissions. <u>See</u> ABA MODEL RULES OF PROF'L CONDUCT r. 7.1 & cmt. 2; <u>see also</u> D.C. RULES OF PROF'L CONDUCT r. 7.1. Rather, lawyers have a professional obligation to explain matters to their clients "to the extent reasonably necessary to

permit [their clients] to make informed decisions regarding the representation." See ABA
MODEL RULES OF PROF'L CONDUCT r. 1.4(b); D.C. RULES OF PROF'L CONDUCT r. 1.4(b).

Here, Gebhardt & Associates did not provide reasonable or sufficient notice to its
clients or even attempt to mitigate the prejudice attendant to the firm's withdrawal.  To the
contrary, Gebhardt & Associates made its initial payment demand only nine days after the Court
set the discovery schedule at the February 7, 2007, status conference and only one month before
defendants served their first requests for discovery, see Mot. to Compel Ex. 1.  In the midst of
discovery, Gebhardt & Associates refused assistance to any client who did not commit to paying
the firm $10,000 and sent them misleading communications that indicated that they were
unrepresented and discouraged them from proceeding in the litigation without counsel.  Gebhardt
& Associates continued to treat the non-paying plaintiffs as if they were unrepresented while its
motion to withdraw was pending and even after the Court denied the motion.  And in explaining
the matter, Gebhardt & Associates represented to the Court that these non-paying plaintiffs had
"indicated in writing or by their conduct that they no longer wish[ed] to be represented" by the
firm.  See Mot. to Withdraw at 1.

Gebhardt & Associates acknowledged in the consent motion to defer
consideration of the motion to compel that it understood its professional obligations, expressly
stating that unless and until the Court granted its motion to withdraw, the firm still "formally
represent[ed]" the non-paying plaintiffs.  See Mot. to Defer. at 3.  Still, it did not fulfill these
obligations.  Gebhardt & Associates also had alternatives avenues for fulfilling its obligations as
it sought to withdraw after the union ceased making payments – for example, providing more
appropriate and advance notice, attempting to find other counsel, and moving to withdraw at a
time that would minimize prejudice.  See, e.g., Brandon v. Blech, 560 F.3d 536, 538 (6th Cir.

2009); Fid. Nat'l Title Ins. Co. v. Intercounty Nat'l Title Ins. Co., 310 F.3d at 540-41. Instead, counsel pursued a course of conduct that did not conform to their ethical and professional obligations. Had Judge Roberts understood then what this Court does now, it is likely that he would have proceeded very differently. Cf. Sanford v. Maid-Rite Corp., 816 F.3d 546, 550 (8th Cir. 2016) ("The presumption favoring withdrawal . . . should be disregarded, however, if it would severely prejudice the client or third parties." (citation omitted)); Brandon v. Blech, 560 F.3d at 538 ("[A] district court may forbid withdrawal if it would work severe prejudice on the client or third parties." (citation omitted)). Instead of holding the dismissed plaintiffs accountable for Gebhardt & Associates' misleading communications and the firm's failure to fulfill its ethical and professional obligations to them, justice requires that this Court reconsider their dismissals.

### C. The Dismissed Plaintiffs' Conduct Did Not Warrant Their Dismissals

Where a plaintiff fails to comply with a discovery order or otherwise fails to prosecute their claims, a court may impose a range of sanctions, including dismissal. See FED. RS. CIV. P. 37(b)(2)(A), 41(b); Bradshaw v. Vilsack, 286 F.R.D. 133, 140 n.5 (D.D.C. 2012) (explaining that "[t]he same factors are relevant to determining whether dismissal is appropriate for failure to prosecute and failure to obey a discovery order" (citations omitted)). The "central requirement" of a Rule 37 sanction is that it "must be just." Campbell v. Nat'l R.R. Passenger Corp., 309 F.R.D. 21, 25-26 (D.D.C. 2015) (citation omitted); see also Bradshaw v. Vilsack, 286 F.R.D. at 140; Arias v. Dyncorp Aerospace Operations, LLC, 677 F. Supp. 2d 330, 332 (D.D.C. 2010). The extreme sanction of dismissal is thus warranted only where (1) the other party has been "so prejudiced by the misconduct that it would be unfair to require [the party] to proceed further in the case"; (2) the party's misconduct has put "an intolerable burden" on the court by

requiring the court to modify its own docket and operations in order to accommodate the delay; or (3) the court finds it necessary "to sanction conduct that is disrespectful to the court and to deter similar misconduct in the future." See Webb v. District of Columbia, 146 F.3d 964, 971 (D.C. Cir. 1998) (citations omitted); see also Young v. U.S. Senate Sergeant at Arms, 217 F.R.D. 61, 65-66 (D.D.C. 2003). In addition, before imposing the sanction of dismissal, "a district court must consider whether lesser sanctions would be more appropriate for the particular violation because the judicial system favors disposition of cases on the merits." See Bradshaw v. Vilsack, 286 F.R.D. at 140 (quoting Moore v. Napolitano, 723 F. Supp. 2d 167, 179 (D.D.C. 2010)); see also Bonds v. District of Columbia, 93 F.3d 801, 808 (D.C. Cir. 1996) ("[D]ismissal is a sanction of last resort to be applied only after less dire alternatives have been explored without success or would obviously prove futile." (quoting Shea v. Donohoe Constr. Co., 795 F.2d at 1075)). These parameters apply not only to dismissal, but to any other "severe" or "litigation-ending" sanction that effectively denies a party the right to a trial on the merits. See Bradshaw v. Vilsack, 286 F.R.D. at 140 (citing Bonds v. District of Columbia, 93 F.3d at 808-09, and Klayman v. Judicial Watch, Inc., 802 F. Supp. 2d 137, 151 (D.D.C. 2011)).

As a result, a sanction that denies a party the right to a trial on the merits must be supported by a finding either that the more severe sanction is necessary to avoid prejudice to the opposing party or to the court's calendar or to prevent a benefit to the sanctioned party or, if the sanction is based only on deterring future misconduct, that the sanctioned party engaged in "flagrant or egregious misconduct." See Bonds v. District of Columbia, 93 F.3d at 809. "In determining whether a party's misconduct prejudices the other party so severely as to make it unfair to require the other party to proceed with the case, courts look to whether the aggrieved party has cited specific facts demonstrating actual prejudice, such as the loss of key witnesses."

Campbell v. Nat'l R.R. Passenger Corp., 309 F.R.D. at 26 (quoting Bradshaw v. Vilsack, 286 F.R.D. at 140-41). And although a court may presume that some prejudice results from any "unreasonable delay," dismissal is warranted only where there are "specific, factually supported allegations" of severe actual prejudice. See Bradshaw v. Vilsack, 286 F.R.D. at 141 (citations omitted).

Reconsidering the issue in light of the new evidence presented, the Court concludes that the dismissed plaintiffs' conduct did not warrant dismissal. As discussed in supra Part III(A), the correspondence from Gebhardt & Associates was confusing and misleading, and the dismissed plaintiffs have proffered fourteen declarations affirming that the correspondence did in fact confuse and mislead the declarants. See Mot. for Recons. Ex. E. Thus, it does not appear that the dismissed plaintiffs' errors were willful or egregious, but likely based on their understandable confusion regarding their rights, obligations, and options for proceeding in the case. As a result, dismissal would not be warranted as a deterrent. In addition, the dismissed plaintiffs have not significantly delayed or prejudiced the Court. The Court's adjudication of summary judgment did not depend on the production of damages discovery, and the paying plaintiffs have continued to drive the case forward.

Defendants argue that they would be severely prejudiced if the Court permitted the dismissed plaintiffs to revive their claims. They assert that the parties have already spent two years in discovery and have spent time and money and made strategic litigation decisions based on the discovery obtained. See Opp'n to Mot. for Recons. at 22. In particular, defendants argue that they relied extensively in their original motion for summary judgment on the depositions of those plaintiffs who remained in the case. See id. at 22-23. Although defendants agreed to plaintiffs' aggregate responses to their merits-based discovery requests, they argue they were still

"entitled to complete[] . . . answers from all the plaintiffs on their merits contentions," as

"defendants would have no way of discovering which of [the dismissed plaintiffs might contend]

that they are aware of potential merits-relevant evidence without receiving discovery responses

from them." See id. Furthermore, defendants argue that they had a right to understand their

ultimate exposure before undertaking extensive, although ultimately unsuccessful, settlement

efforts. See id. at 23 n.19. Defendants also suspect that the dismissed plaintiffs have not

understood their preservation obligations over the past decade and, as a result, they would "face

prejudice due to lost or destroyed evidence." See id. at 23.

   While the Court is sympathetic to defendants' concerns stemming from the long-

running nature of this case, defendants have not identified the kind of substantial prejudice that

would justify the extreme sanction of dismissal. The discovery responses to which the dismissed

plaintiffs failed to respond had little to no relevance to the question of liability. See supra at 7,

10. And defendants already had access to much of the information requested, because each

dismissed plaintiff was a federal employee. See Mot. for Recons. at 14-15. In fact, defendants

were required to maintain some of the requested information by law. See id. at 14 (citing 29

C.F.R. § 1602.14). Most importantly, the delayed discovery responses from the dismissed

plaintiffs would cause little prejudice to defendants, due to the relative uniformity of plaintiffs'

liability discovery and the ongoing need to supplement damages discovery. As the dismissed

plaintiffs have explained:

> Dismissed Plaintiffs challenged the outsourcing of their jobs, the
> response to which would be identical to the responses already
> provided, as they each challenged the same personnel action. No
> new information would have been provided by responses to
> [inquiries regarding the merits of Plaintiffs' claims] by Dismissed
> Plaintiffs. On the other hand, responses to questions propounded
> about the harm suffered by each Dismissed Plaintiff would likely
> differ from each other, requiring separate responses from each

> plaintiff, but the intervening passage of time would require
> supplementation of any responses provided. The damages
> discovery would not have concluded in any event and, therefore,
> Dismissed Plaintiffs' failure to respond to the discovery of the
> remedies they seek did not delay or inhibit the conclusion of
> discovery on this subject.

See Reply to Mot. for Recons. at 1-2. As further evidence of their uniform liability claims, the

dismissed plaintiffs note that defendants only took approximately twenty depositions of

individual plaintiffs, although over two hundred plaintiffs remained in the case, before filing

their original summary judgment motion. See id. at 12.

Because the delayed discovery requests were of such limited value, the unduly

harsh sanction of dismissal would be neither warranted nor proportional to the prejudice

defendants would face from the dismissed plaintiffs' reinstatement. This is particularly so where

any prejudice resulted from the dismissed plaintiffs' understandable confusion, rather than any

egregious or willful misconduct, and such prejudice may be resolved or mitigated by the Court.[11]

Of course, where plaintiffs file a case, they "take[] on certain responsibilities, including the duty

to participate in discovery in good faith." See Campbell v. Nat'l R.R. Passenger Corp., 309

F.R.D. at 24. But the dismissed plaintiffs' errors here were neither willful nor egregious, and

"the Court has the right, if not the duty, to temper justice with understanding." See id. (internal

quotations and citation omitted).

---

[11] The dismissed plaintiffs have proffered several alternatives to dismissal more appropriate to the circumstances presented here. See Shepherd v. Am. Broad. Cos., Inc., 62 F.3d 1469, 1478 (D.C. Cir. 1995); see also FED. R. CIV. P. 37(b)(2). For example, the Court could prohibit them from submitting evidence and giving testimony at trial regarding liability issues not raised in discovery. See Reply to Mot. for Recons. at 11-12. The Court could also impose similar restrictions to account for any lost or destroyed evidence, should this issue arise. See id. at 12.

### IV.  CONCLUSION

For the reasons set forth in this opinion, the Court will grant the dismissed plaintiffs' motion [Dkt. No. 317] for reconsideration and reinstate their claims.  An order consistent with this opinion shall issue this same day.

SO ORDERED.


_____/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE:  March 27, 2018