```
_____
                                        )
KATHLEEN BREEN, et al.,                 )
                                        )
        Plaintiffs,                     )
                                        )
        v.                              )    Civil Action No. 05-0654 (PLF)
                                        )
ELAINE L. CHAO, Secretary of            )
Transportation, Department of           )
Transportation, et al.,                 )
                                        )
        Defendants.                     )
_____)
```

OPINION

This matter comes before the Court on the motion [Dkt. No. 316] of fifteen prospective plaintiffs to reconsider this Court's prior orders denying them leave to join or, in the alternative, intervene in the above-captioned case. Upon careful consideration of the parties' written submissions, the relevant legal authorities, and the entire record in this case, the Court will grant the instant motion for reconsideration and permit the prospective plaintiffs to join this case.[1]

_____

[1]    In connection with the pending motion for reconsideration, the Court has reviewed the following filings, including the exhibits attached thereto: Class Action Complaint [Dkt. No. 1] ("Compl."); First Amended Class Action Complaint [Dkt. No. 3] ("Am. Compl."); Plaintiffs' Motion for Class Certification (Corrected) [Dkt. No. 4] ("Mot. for Certif."); Prospective Plaintiffs' Motion for Joinder, or in the Alternative, to Intervene, as Plaintiffs in the Instant Action [Dkt. No. 63] ("Mot. for Joinder"), Defendants' Opposition [Dkt. No. 70] ("Opp'n to Mot. for Joinder"), and Prospective Plaintiffs' Reply [Dkt. No. 72] ("Reply to Mot. for Joinder"); Prospective Plaintiffs' Motion for Reconsideration of the Court's January 7, 2008 Memorandum Opinion and Order [Dkt. No. 128] ("First Mot. for Recons."), Defendants' Opposition [Dkt. No. 129] ("Opp'n to First Mot. for Recons."), and Prospective Plaintiffs' Reply [Dkt. No. 131] ("Reply to First Mot. for Recons."); Transcript of Status Hearing (Feb. 7, 2007) [Dkt. No. 286] ("Feb. 7, 2007 Hr'g Tr."); and Prospective Plaintiffs' Motion to Reconsider

# I. FACTUAL AND PROCEDURAL BACKGROUND

The Court recently recounted the factual and procedural history of this case in its opinion granting in part and denying in part defendants' motion for summary judgment. <u>See</u> <u>Breen v. Chao</u>, 253 F. Supp. 3d 244, 247-53 (D.D.C. 2017). The Court thus recites here only those facts relevant to the instant motion for reconsideration.

Plaintiffs filed a class action complaint on March 31, 2005, amended on June 24, 2005, against the Federal Aviation Administration ("FAA") alleging violations of the Age Discrimination in Employment Act ("ADEA").[2] The complaint as amended explained that "[t]he original nine Plaintiff Class Representatives [were] joined by 825 additional Plaintiffs," each of whom was "not only . . . a member of the class, but also assert[ed] individual claims of age discrimination on his or her own behalf." <u>See</u> Am. Compl. at 79. These prospective class members were each "over 40 years of age and adversely affected by the FAA's decision to eliminate federal employment and related benefits . . . at the 58 Automated Flight Service Stations as announced by the FAA on February 1, 2005." <u>See</u> <u>id</u>. at 78-79. The amended complaint clarified that the prospective class included "approximately 834" of the 1,770 total Flight Service Controllers who were over the age of 40 and had been adversely affected by the reduction-in-force, but that additional individuals might be included in the class in the future. <u>See</u> <u>id</u>. at 79 n.1, 84 & n.2.

---

Denial of Joinder or Intervention [Dkt. No. 316] ("Second Mot. for Recons."), Defendants' Opposition [Dkt. No. 331] ("Opp'n to Second Mot. for Recons."), and Prospective Plaintiffs' Reply [Dkt. No. 336] ("Reply to Second Mot. for Recons.").

[2] Plaintiffs filed a motion for class certification on June 29, 2005. <u>See</u> Mot. for Certif. The Court denied the motion to certify the class without prejudice on February 7, 2007, <u>see</u> Feb. 7, 2007 Hr'g Tr. at 10, and plaintiffs never renewed their motion for class certification.

The amended complaint also explained that the nine prospective class representatives, as well as the 825 additional plaintiffs to the case, had exhausted their administrative remedies by providing notice to the Equal Employment Opportunity Commission ("EEOC") of their intent to file the civil action pursuant to the ADEA's bypass provision, 29 U.S.C. § 633a(d).  See id. at 83-84.  In a unique feature of the ADEA, federal employees may bring their claims directly to federal court after providing notice to the EEOC, pursuant to Section 633a(d), without first going through the full administrative complaint process set forth in Section 633a(b).  To invoke this bypass provision, a party must provide not less than thirty days' notice to the EEOC of their intent to file a civil action and must do so within 180 days after the alleged unlawful practice occurred.  See 29 U.S.C. § 633a(d).

On May 8, 2007, twenty prospective plaintiffs filed a motion to join the case.[3] Like the hundreds of plaintiffs already parties to the case, these prospective plaintiffs were formerly employed as flight service controllers and were over forty years of age when adversely affected by the FAA's reduction-in-force announced on February 1, 2005.  Like the plaintiffs, they alleged that this adverse action had violated their rights under the ADEA.  In their motion for joinder, the prospective plaintiffs admitted that they had not personally filed any notice to the EEOC to invoke the ADEA's bypass provision, as each of the other plaintiffs had done.  See Mot. for Joinder Mem. at 4.  The prospective plaintiffs argued, however, that they should be permitted to join under the doctrine of vicarious exhaustion.  See id. at 4-10.

_____

[3] The instant motion for reconsideration explains that while twenty prospective plaintiffs sought to join the case in 2007, five of those prospective plaintiffs have not retained plaintiffs' counsel to date.  See Second Mot. for Recons. at 1. n.1.  As a result, only fifteen prospective plaintiffs now move for reconsideration.

On January 7, 2008, Judge Richard W. Roberts, to whom this case was then assigned, issued a memorandum opinion and order denying the prospective plaintiffs' motion for joinder. See Breen v. Peters, 529 F. Supp. 2d 24, 29 (D.D.C. 2008). In doing so, Judge Roberts held that the doctrine of vicarious exhaustion applies only where a party has undergone the "full-blown administrative complaint process required by law." See id. at 28. Because Section 633a(d) serves as an alternative to the administrative complaint process set forth in Section 633a(b), he reasoned that the doctrine of vicarious exhaustion could not apply where the original civil action claims were administratively exhausted solely under the Section 633a(d) bypass provision. See id. at 26-28. On February 7, 2008, the prospective plaintiffs moved for reconsideration of the ruling denying their motion for joinder. That motion for reconsideration argued that Judge Roberts had implicitly relied on matters not briefed by the parties and, as a result, erred in denying the motion for joinder. See First Mot. for Recons. at 2-3.[4] Judge Roberts issued a memorandum opinion and order [Dkt. No. 181] denying this first motion for reconsideration on August 15, 2008.

In the instant motion for reconsideration, the prospective plaintiffs assert that new evidence now justifies reconsideration of the Court's rulings denying their motion for joinder and their first motion for reconsideration. Specifically, the prospective plaintiffs explain that one of the original plaintiffs – Frank Eastman – did in fact utilize Section 633a(b)'s administrative complaint process to exhaust his administrative remedies. See Second Mot. for Recons. at 4-6.

---

[4] The prospective plaintiffs first filed a motion for reconsideration and for leave to file a subsequent memorandum in support of reconsideration in ten business days on January 24, 2008, to which defendants filed an opposition on February 5, 2008. At the status conference on February 8, 2008, the Court construed the pending motion as a motion for extension of time and granted it nunc pro tunc. The parties thereafter briefed the merits of the first motion for reconsideration.

They explain that plaintiffs' new counsel only recently learned of Mr. Eastman's administrative complaint challenging the FAA's reduction-in-force. See id. at 4 & n.2.

Frank Eastman filed his administrative complaint on March 6, 2006. See Second Mot. for Recons. Ex. 1 at 1-4. On March 21, 2006, the Department of Transportation's Office of Civil Rights ("DOT-OCR") informed Mr. Eastman that because a motion for class certification was then pending in federal court and his administrative complaint would be subsumed within the pending civil class action complaint, the agency would hold his administrative complaint in abeyance until the Court issued a decision on class certification. See id. at 5-6. On September 28, 2006, because 180 days had elapsed since his complaint was filed and no class certification decision had been issued, the agency dismissed Mr. Eastman's complaint as its final agency decision. See id. at 7-9. Mr. Eastman subsequently appealed this dismissal to the EEOC. See id. at 10-13. The EEOC affirmed the agency's dismissal on March 19, 2007, and denied his subsequent motion for reconsideration on May 7, 2007. See id. at 14-18, 21. Mr. Eastman thus thoroughly exhausted his administrative remedies pursuant to Section 633a(b), see id. at 8, 16-17, 21, and did so prior to the prospective plaintiffs' filing a motion for joinder on May 8, 2007. The prospective plaintiffs argue that this new evidence demonstrates that they had a basis for vicariously exhausting their administrative remedies and, as a result, they should be permitted to join the case.

In their opposition, defendants challenge the characterization of Mr. Eastman's complaint as new evidence. See Opp'n to Second Mot. for Recons. at 3-4. Defendants also argue that vicarious exhaustion does not apply to the prospective plaintiffs' claims because: (1) they were not named as members of the prospective class in the pleadings; (2) no administrative class complaint was filed in this case; and (3) the ADEA's notice and exhaustion

requirements are jurisdictional. See id. at 9-13. Finally, defendants contend that the prospective plaintiffs' joinder motion falls outside of the applicable statute of limitations. See id. at 5-8.

In their reply brief, the prospective plaintiffs further explain why the Court should treat the fact that Mr. Eastman exhausted his administrative remedies as new evidence. See Reply to Second Mot. for Recons. at 1-3. The prospective plaintiffs submit a sworn declaration from the former office administrator of Gebhardt & Associates, plaintiffs' prior counsel. See Reply to Second Mot. for Recons. Ex. 1. The declaration affirms that the former office administrator and, by implication, prior counsel were unaware of Mr. Eastman's administrative complaint. See id. at 1-2. The prospective plaintiffs also respond to defendants' arguments regarding vicarious exhaustion, asserting that: (1) the prospective plaintiffs' claims are functionally identical to those of the current plaintiffs; (2) the prospective plaintiffs did not need to file an administrative class complaint, as the FAA had notice of the scope of the litigation; and (3) the ADEA's notice and exhaustion requirements are not jurisdictional according to longstanding circuit precedent. See Reply to Second Mot. for Recons. at 3-5, 8-9. The prospective plaintiffs also argue that the motion for joinder was filed within the applicable statute of limitations. See id. at 5-8.

## II.  LEGAL STANDARD

The Federal Rules of Civil Procedure do not specifically address motions for reconsideration. See Estate of Klieman v. Palestinian Auth., 82 F. Supp. 3d 237, 241-42 (D.D.C. 2015). "While the most analogous rule is Rule 60, which provides relief from a final judgment or order, motions to reconsider interlocutory orders are not governed by Rule 60(b), but rather, such determinations 'are within the discretion of the trial court.'" Id. at 242 (quoting Keystone Tobacco Co. v. U.S. Tobacco Co., 217 F.R.D. 235, 237 (D.D.C. 2003)); see also FED. R. CIV.

P. 54(b) ("[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."); Langevine v. District of Columbia, 106 F.3d 1018, 1023 (D.C. Cir. 1997) ("Interlocutory orders are not subject to the law of the case doctrine and may always be reconsidered prior to final judgment. This is true even when a case is reassigned to a new judge." (citations omitted)).

This judicial discretion is broad. While the judicial interest in finality disfavors reconsideration, a district court has inherent authority to reconsider its interlocutory orders "as justice requires." See Wannall v. Honeywell Int'l, Inc., 292 F.R.D. 26, 30-31 (D.D.C. 2013), aff'd sub nom. Wannall v. Honeywell, Inc., 775 F.3d 425 (D.C. Cir. 2014) (citations omitted). Although the "as justice requires" standard may be imprecise, it is at least clear that a court has "more flexibility in applying Rule 54(b) than in determining whether reconsideration is appropriate under Rules 59(e) and 60(b)." See id. at 30, 32 (internal quotations and citation omitted).

To determine whether justice requires reconsideration of an interlocutory decision, courts look to whether the moving party has demonstrated "(1) an intervening change in the law; (2) the discovery of new evidence not previously available; or (3) a clear error of law in the first order." Estate of Klieman v. Palestinian Auth., 82 F. Supp. 3d at 242 (citation omitted). Even where none of these three factors is present, "the Court may nevertheless elect to grant a motion for reconsideration if there are other good reasons for doing so." Cobell v. Norton, 355 F. Supp. 2d 531, 540 (D.D.C. 2005). For example, justice may require revision where "the Court has patently misunderstood a party, has made a decision outside the adversarial

issues presented to the Court by the parties, [or] has made an error not of reasoning but of apprehension . . . ." See Singh v. George Washington Univ., 383 F. Supp. 2d 99, 101 (D.D.C. 2005) (internal quotations and citation omitted); see also Stewart v. FCC, 189 F. Supp. 3d 170, 173 (D.D.C. 2016).

The efficient administration of justice requires, however, that there be good reason for a court to reconsider an issue already litigated by the parties: "[W]here litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." Isse v. American Univ., 544 F. Supp. 2d 25, 30 (D.D.C. 2008) (quoting Singh v. George Washington Univ., 383 F. Supp. 2d at 101). Ultimately, the moving party has the burden to demonstrate "that reconsideration is appropriate and that harm or injustice would result if reconsideration were denied." FBME Bank Ltd. v. Mnuchin, 249 F. Supp. 3d 215, 222 (D.D.C. 2017) (quoting U.S. ex rel. Westrick v. Second Chance Body Armor, Inc., 893 F. Supp. 2d 258, 268 (D.D.C. 2012)); see also Isse v. American Univ., 544 F. Supp. 2d at 29.

## III. ANALYSIS

### A. *The New Facts Presented to the Court Warrant Reconsideration*

Before addressing the merits, the Court must first determine whether the fact that Mr. Eastman administratively exhausted his complaint – a fact not previously known to the Court – warrants reconsideration.

The parties do not dispute that Mr. Eastman thoroughly exhausted his administrative remedies. Rather, the parties dispute whether Mr. Eastman's administrative complaint constitutes "new evidence" justifying reconsideration under the relevant case law. In doing so, they contest whether and when the parties knew that Mr. Eastman had filed an

administrative complaint challenging the reduction-in-force, although they acknowledge that neither party notified the Court of this fact until the prospective plaintiffs filed the instant motion for reconsideration.

The prospective plaintiffs assert that plaintiffs' former counsel – Joseph D. Gebhardt, of Gebhardt & Associates, LLP – was not aware of Mr. Eastman's administrative complaint at the time the motion for joinder was filed. The prospective plaintiffs correctly note that Mr. Eastman submitted all of the administrative filings himself, and it does not appear that earlier administrative filings were sent to Gebhardt & Associates. See Second Mot. for Recons. Ex. 1 at 1-4, 10-13, 19-20. Mr. Eastman did list Gebhardt & Associates as his counsel, however, on the notice of appeal he personally submitted to the EEOC on November 3, 2006. See id. at 10. Subsequently, the EEOC listed Gebhardt & Associates on the certificate of mailing for its decision affirming the DOT-OCR's dismissal, issued on March 19, 2007. See id. at 18. It is also worth noting, however, that after this mailing, Mr. Eastman requested reconsideration of the EEOC's decision on his own behalf, without the apparent assistance of Gebhardt & Associates. See id. at 19-20.

The prospective plaintiffs also proffer the declaration of Leoni Bloomfield Benjamin, who worked as Gebhardt & Associates' office administrator from the beginning of March 2007 until May 31, 2014. See Reply to Second Mot. for Recons. Ex. 1 at 1. Ms. Benjamin affirms in her declaration that she does not recall receiving the March 2007 EEOC decision in Mr. Eastman's administrative case. See id. She further explains that she knew of the pending litigation and that the firm was not participating in any EEOC administrative proceedings. See id. Thus, she affirms, she would have brought the anomaly of receiving an administrative decision from the EEOC to the attention of the lawyers for whom she worked.

See id.  Instead, she "did not learn that Mr. Eastman had filed an EEO complaint (in addition to participating in the lawsuit) until informed of it in December 2016." See id. at 1-2.

The prospective plaintiffs argue that not only was former counsel unaware of Mr. Eastman's administrative complaint, but defendants were aware of this material fact and failed to notify the Court.  Prior to the administrative appeal to the EEOC, the DOT-OCR itself handled Mr. Eastman's administrative complaint.  See Second Mot. for Recons. Ex. 1 at 5-9. And in their discovery responses, defendants provided a list of age discrimination complaints filed against the FAA that included Mr. Eastman's administrative complaint, without noting its significance except to state that it was "procedurally dismissed." See Second Mot. for Recons. at 4 n.2.  Defendants thus possessed information that one of the original plaintiffs had exhausted his administrative remedies under Section 633a(b).  But instead of disclosing this information, defendants affirmatively represented to the Court that "none of the plaintiffs [had] filed an administrative complaint" and did not correct this mistake at any later date.  See Opp'n to Mot. for Joinder at 4 n.2.

Defendants do not address their own failures to disclose the fact that Mr. Eastman had exhausted his administrative remedies under Section 633a(b).[5]  But they maintain that because "Gebhardt was listed as Mr. Eastman's attorney on his November 3, 2006, EEOC notice of appeal and the EEOC mailed its March 19, 2007, decision to both Mr. Eastman and Gebhardt," and because Mr. Eastman was relatively active in the case, "[t]he record plainly reflects that plaintiffs' counsel knew of Mr. Eastman's administrative complaint at the time

_____

[5]     The Court notes that while the DOT and FAA certainly knew Mr. Eastman had filed an administrative complaint, it is unclear whether counsel at the Department of Justice also had actual knowledge of this fact.  Because it is not necessary to resolving the instant motion, the Court need not explore this matter further.

plaintiffs' counsel filed the initial joinder motion." See Opp'n to Second Mot. for Recons. at 4 (citations omitted). Defendants' stance exaggerates the clarity of the matter.

Determining whether and when the parties knew or did not know of the existence of Mr. Eastman's administrative complaint would be a highly fact-intensive inquiry. Resolution of the matter would require the Court to hold a hearing involving testimony from those who worked at Gebhardt & Associates and at the relevant federal agencies during the pertinent time periods, as well as the submission of exhibits. It would require that the Court parse who might accurately remember what they knew a decade ago. Such a hearing would amount to a trial-within-a-trial and only further delay resolution of this case. But while "new evidence" is one of the common justifications to which this Court looks first to determine whether reconsideration is appropriate, the Court's discretion is not so limited.

Although it is unclear what the parties knew, Judge Roberts certainly did not know that Mr. Eastman had exhausted his administrative remedies under Section 633a(b) at the time he issued his January 7 and August 15, 2008, memorandum opinions and orders. To the contrary, Judge Roberts denied the prospective plaintiffs' motion for joinder in reliance on a fact now known by all to be incorrect – he expressly based his prior rulings on the fact, advanced by both parties, that the original plaintiffs had all proceeded through the ADEA's bypass provision, Section 633a(d), and none of them had exhausted their administrative remedies under Section 633a(b). In denying the first motion for reconsideration, Judge Roberts described this fact as "the crux" of his decision denying the motion for joinder. See Mem. Op. & Order at 4 (Aug. 15, 2008). And the undersigned did not know this fact – this "crux" of Judge Roberts' decision – to be incorrect until the prospective plaintiffs filed the instant motion for reconsideration.

In light of the circumstances presented and the entire history of this case, the Court finds the misapprehension of such a material fact to be "good reason" justifying reconsideration. Cf. Stewart v. FCC, 189 F. Supp. 3d at 173; Isse v. American Univ., 544 F. Supp. 2d at 29-30; Singh v. George Washington Univ., 383 F. Supp. 2d at 101-02. This is particularly so because the alternative would preclude the prospective plaintiffs from litigating their claims on their merits, the prejudice to defendants from granting the prospective plaintiffs' motion for joinder is limited (and may be mitigated by the Court), see infra Part III(C), and any errors in failing to earlier discover Mr. Eastman's complaint or disclose its existence to the Court would have been those of the defendants, their counsel, or plaintiffs' former counsel. The prospective plaintiffs have met their burden to demonstrate that reconsideration is appropriate and injustice would result were reconsideration to be denied. See, e.g., FBME Bank Ltd. v. Mnuchin, 249 F. Supp. 3d at 222; Isse v. American Univ., 544 F. Supp. 2d at 29. The Court thus determines in its discretion that justice requires reconsideration.

### B. The Prospective Plaintiffs Vicariously Exhausted Their Administrative Remedies

Reconsidering the matter in light of the facts now presented, the Court must assess whether the prospective plaintiffs vicariously exhausted their claims.

Before bringing a civil suit under the ADEA, a plaintiff must exhaust administrative remedies through the EEOC's administrative complaint process or file notice in compliance with the ADEA's bypass provision. See 29 U.S.C. § 633a; see also Peters v. District of Columbia, 873 F. Supp. 2d 158, 180 (D.D.C. 2012); cf. Davis v. District of Columbia, 246 F. Supp. 3d 367, 388 (D.D.C. 2017).[6] The purpose of administrative exhaustion "is to afford the

---

[6] This circuit's case law does not entirely make clear whether the Section 633a(d) bypass provision serves as one avenue for administratively exhausting claims or as an alternative

agency an opportunity to resolve the matter internally and to avoid unnecessarily burdening the courts." Peters v. District of Columbia, 873 F. Supp. 2d at 180 (quoting Artis v. Bernanke, 630 F.3d 1031, 1034 (D.C. Cir. 2011)). A plaintiff "need not individually file an EEOC complaint," however, where another plaintiff has done so and "the two claims are so similar that it can fairly be said that no conciliatory purpose would be served by filing separate EEOC charges." See Foster v. Gueory, 655 F.2d 1319, 1321-22 (D.C. Cir. 1981); see also Peters v. District of Columbia, 873 F. Supp. 2d at 182; Coghlan v. Peters, 555 F. Supp. 187, 201-02 (D.D.C. 2008). Rather, the doctrine of vicarious exhaustion (also known as the "single filing rule") recognizes that in such circumstances, "it would be 'wasteful, if not vain,' to require separate EEOC filings." Foster v. Gueory, 655 F.2d at 1322 (quoting Oatis v. Crown Zellerbach Corp., 398 F.2d 496, 498 (5th Cir. 1968)); see also Peters v. District of Columbia, 873 F. Supp. 2d at 182.

With this rationale in mind, the applicability of the vicarious exhaustion doctrine hinges on the functional, rather than formal, similarity of the parties' claims. See Brooks v. Dist. Hosp. Partners, L.P., 606 F.3d 800, 807 (D.C. Cir. 2010) (holding that the claims of external applicants for nursing assistant positions were vicariously exhausted by claims asserted by internal applicants challenging the same employment test because their claims were "so

---

to exhaustion altogether. Compare Rann v. Chao, 346 F.3d 192, 195 (D.C. Cir. 2003) ("We have held that the timeliness and exhaustion requirements of § 633a(d) are subject to equitable defenses and are in that sense non-jurisdictional." (citations omitted)), with Kennedy v. Whitehurst, 690 F.2d 951, 964 (D.C. Cir. 1982) ("[U]nder the ADEA pursuit of a remedy through administrative channels is optional and not a mandatory prerequisite to the filing of a civil action. Neither the private nor the federal employee sections of the ADEA requires anything more by way of 'exhaustion' than the provision of notice to the appropriate federal official of the intention to sue." (internal quotations and citations omitted)). Because this distinction is one without significance to deciding the instant motion for reconsideration, the Court does not attempt to resolve the question here.

similar . . . that no purpose would be served by requiring them to file independent charges"
(citation omitted)); Cook v. Boorstin, 763 F.2d 1462, 1466 (D.C. Cir. 1985) ("The test . . . for
vicarious exhaustion hinges on functional identity of claims . . . ." (citation omitted)); Davis v.
District of Columbia, 246 F. Supp. 3d at 390 (holding that the vicarious exhaustion doctrine
applied because "[t]he relevant EEOC charges and the claims before this court arose from the
same allegedly discriminatory practices").  And when courts in this circuit have declined to
invoke vicarious exhaustion, they have done so based on findings that the claims were not
sufficiently similar, but substantively varied and individualized.  See Peters v. District of
Columbia, 873 F. Supp. 2d at 181-87 (holding that vicarious exhaustion was unavailable because
claimants' allegations of discrimination and retaliation were not factually similar to one another);
Byrd v. District of Columbia, 807 F. Supp. 2d 37, 62-64 (D.D.C. 2011) (holding that vicarious
exhaustion was unavailable where a plaintiff's complaint would require "a different factual
inquiry and testimony from different witnesses" compared to the administratively exhausted
complaint).  Application of the single filing rule does require, however, that at least one plaintiff
in the case exhausted their administrative remedies and did so in a timely manner.  See Coghlan
v. Peters, 555 F. Supp. 2d at 201-02.

   Considering Mr. Eastman's administrative complaint and the very similar nature
of the claims brought by the prospective plaintiffs, the Court agrees that the doctrine of vicarious
exhaustion applies here.  The claims exhausted in Mr. Eastman's administrative complaint are
functionally identical to those which the prospective plaintiffs seek to raise in this lawsuit.
Mr. Eastman and the prospective plaintiffs were all formerly employed as flight service
controllers and over forty years of age when they were adversely affected by the FAA's
reduction-in-force.  See Am. Compl. at 78-79; Second Mot. for Recons. at 2; Second Mot. for

Recons. Ex. 1 at 5.  Their claims concern the very same employment action and allege that this employment action amounted to age discrimination in violation of the ADEA.  Because their claims are so functionally similar to Mr. Eastman's claim, the prospective plaintiffs have vicariously exhausted their administrative remedies.  See Brooks v. Dist. Hosp. Partners, L.P., 606 F.3d at 807; Cook v. Boorstin, 763 F.2d at 1466; Davis v. District of Columbia, 246 F. Supp. 3d at 389-90.

Defendants' contend that because Mr. Eastman was named as a plaintiff in this case and the prospective plaintiffs were not so named, vicarious exhaustion does not apply because the FAA would have treated the prospective plaintiffs' administrative claims differently. This argument prioritizes technical form over functional identity and practical reality.  The FAA knew it faced a potential class of aggrieved plaintiffs in the instant case and decided to hold in abeyance an individual administrative complaint, which would have been subsumed in the class action, pending the possibility that these grievances could be resolved in a single lawsuit.  The Court is certainly not clairvoyant.  But had each of the prospective plaintiffs timely filed administrative complaints, the agency likely would have held all of their functionally identical claims in abeyance too, pending resolution of the motion for class certification, and then dismissed the complaints after 180 days passed without a ruling on class certification.  The review by the FAA or DOT-OCR of such administrative filings likely would have been futile and a waste of government resources.

In addition, defendants assert that the doctrine of vicarious exhaustion should not apply because Mr. Eastman filed his administrative complaint as an individual complainant.  In support of this argument, defendants point to D.C. Circuit precedent holding that exhaustion of only four individual plaintiffs' claims under the Rehabilitation Act could not be invoked as the

basis for vicariously exhausting the claims of fifty-four individuals in a prospective class action lawsuit challenging a medical test that had resulted in employment disqualifications. See Barkley v. U.S. Marshals Serv., 766 F.3d 25, 29-30, 33-37 (D.C. Cir. 2014). Noting the distinct administrative procedures for individual actions and class actions, the D.C. Circuit in Barkley v. United States Marshals Service explained that its holding reflected the importance of these procedures in affording "the affected government agency notice of the potential scale of a multiple-employee complaint" and providing it with an "opportunity to discover and correct discriminatory practices that may amount to class-wide discrimination." See id. at 35 (citations omitted). This precedent does not govern here, however, for several distinct reasons.

First, the D.C. Circuit's holding in Barkley involved an interpretation of the Rehabilitation Act, a statute that, unlike the ADEA, includes jurisdictional exhaustion requirements and lacks any bypass provision. See Barkley v. U.S. Marshals Serv., 766 F.3d at 34-35; see also Koch v. Schapiro, 699 F. Supp. 2d 3, 12 (D.D.C. 2010). Second, the D.C. Circuit's holding in Barkley reflected its concern that permitting the administrative complaints of four individual plaintiffs to vicariously exhaust the claims of fifty other individual plaintiffs in a prospective class action would rob the agency of fair notice and an opportunity to respond to class-wide claims. See Barkley v. U.S. Marshals Serv., 766 F.3d at 35-37. Such concerns are not present here. Prior to the prospective plaintiffs' motion for joinder, the agency received 834 bypass provision notices pursuant to Section 633a(d), as well as an administrative complaint pursuant to Section 633a(b), notifying it of the magnitude of the discrimination allegations. The DOT-OCR itself cited the prospective class action as its reason for holding Mr. Eastman's administrative complaint in abeyance. And in doing so, the agency defined the proposed class as including "all Flight Service Air Traffic Control Specialists employed by the

FAA who are over 40 years of age and adversely affected by the FAA's decision to eliminate federal employment and related benefits . . . at the 58 Automated Flight Service Stations as announced by the FAA on February 1, 2005," <u>see</u> Second Mot. for Recons. Ex. 1 at 5 (emphasis added), a definition which would have included the prospective plaintiffs as class members. Third, the nature of the reduction-in-force itself put the agency on notice of the scale of the matter – the single employment action cost hundreds of affected individuals their jobs in one fell swoop and in one uniform manner. And despite the thirty-day notice of the bypass provision, as well as the opportunity to respond to Mr. Eastman's administrative complaint, the agency chose not to resolve the flight service controllers' grievances internally. Thus, it cannot be said that defendants lacked adequate notice or opportunity under the provisions of the ADEA to satisfy the purposes of administrative exhaustion. <u>See</u> <u>Peters v. District of Columbia</u>, 873 F. Supp. 2d at 180. The addition of fifteen or twenty individual plaintiffs to the group of former employees affected by the agency's reduction-in-force – a group the agency knew numbered well over 800 – certainly would not have come as any surprise to defendants. <u>Cf</u>. <u>Barkley v. U.S. Marshals Serv.</u>, 766 F.3d at 35-37.

Finally, defendants argue that vicarious exhaustion does not apply to ADEA claims because the statute's notice and exhaustion requirements are jurisdictional. Certainly, if the ADEA's exhaustion requirements were jurisdictional, this Court would have no authority to create an equitable exception, such as vicarious exhaustion, to that jurisdictional requirement. <u>See</u> <u>Blackmon-Malloy v. U.S. Capitol Police Bd.</u>, 575 F.3d 699, 704 (D.C. Cir. 2009). But the D.C. Circuit has held that the timeliness and exhaustion requirements of Section 633a are not jurisdictional and are instead subject to equitable defenses. <u>See</u> <u>Rann v. Chao</u>, 346 F.3d 192, 195 (D.C. Cir. 2003) (citing <u>Kennedy v. Whitehurst</u>, 690 F.2d 951, 961 (D.C. Cir. 1982), and <u>Zipes</u>

v. Trans World Airlines, 455 U.S. 385 (1982)); see also Koch v. Walter, 934 F. Supp. 2d 261, 269-270 (D.D.C. 2013); Koch v. Schapiro, 699 F. Supp. 2d at 12. Judge Roberts cited this line of precedent in denying the dismissed plaintiffs' motion for joinder in 2008, see Breen v. Peters, 529 F. Supp. 2d at 26 (citing Rann v. Chao, 346 F.3d at 195), and defendants have not cited any intervening changes to this controlling authority.

To the contrary, the D.C. Circuit has made clear that in order for exhaustion to be considered jurisdictional, "a statute must contain 'sweeping and direct statutory language indicating that there is no federal jurisdiction prior to exhaustion, or the exhaustion requirement is treated as an element of the underlying claim.'" See Avocados Plus Inc. v. Veneman, 370 F.3d 1243, 1248 (D.C. Cir. 2004) (quoting Weinberger v. Salfi, 422 U.S. 749, 757 (1975)). If it wishes to so limit judicial review, Congress must state "in clear, unequivocal terms that the judiciary is barred from hearing an action until the administrative agency has come to a decision." Id. (quoting I.A.M. Nat'l Pension Fund Benefit Plan C v. Stockton Tri Indus., 727 F.2d 1204, 1208 (D.C. Cir. 1984)).

The ADEA contains no such "sweeping and direct statutory language." See Avocados Plus Inc. v. Veneman, 370 F.3d at 1248. Section 633a(b), which provides for the administrative complaint process, contains no language restricting the jurisdiction of federal courts, let alone language that does so in "clear, unequivocal terms." See id. Likewise, Section 633a(c), which describes the federal courts' jurisdiction to hear civil actions, does not contain any limiting language which could be read to restrict jurisdiction. See Blackmon-Malloy v. U.S. Capitol Police Bd., 575 F.3d at 705; Avocados Plus Inc. v. Veneman, 370 F.3d at 1248. Although Section 633a(d) states that "no civil action may be commenced by any individual under this section until the individual has given the Commission not less than thirty days' notice

of an intent to file such action," this language by its own terms governs only "[w]hen the individual has not filed a complaint concerning age discrimination with the Commission" pursuant to Section 633a(b). The limits Congress imposed solely on the bypass provision thus do not control the entirety of Section 633a. There thus is no jurisdictional bar to this Court's reconsidering the matter, in light of the fact that Mr. Eastman exhausted his administrative remedies pursuant to Section 633a(b), and concluding that the vicarious exhaustion doctrine applies to the prospective plaintiffs' claims.

### C. Permitting the Prospective Plaintiffs to Join the Case Would Serve the Interests of Justice and Is Not Rendered Futile by the Statute of Limitations

Having determined that the prospective plaintiffs did in fact vicariously exhaust their claims, the Court must finally decide whether to permit the prospective plaintiffs to join this case. Cf. Brooks v. Dist. Hosp. Partners, 606 F.3d at 808 (explaining that the single filing rule does not apply unless a party has been properly joined to the suit brought by the original filer).

The parties spill much ink fighting about the applicable statute of limitations. But in doing so, they fail to address (or even mention) the basic legal standards that apply to a motion seeking to amend a complaint to add a plaintiff. In assessing the relevant legal authorities, the Court determines that the prospective plaintiffs' claims would relate back to the original complaint, which defendants do not dispute was timely filed. As a result, the Court need not resolve the parties' dispute regarding the applicable statute of limitations.

Rule 21 of the Federal Rules of Civil Procedure provides, in relevant part, that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party." FED. R. CIV. P. 21. In turn, Rule 20 sets forth guidelines for permissive joinder, providing that parties may join an action as plaintiffs if "they assert any right to relief . . . with respect to or arising out

of the same transaction, occurrence, or series of transactions or occurrences" and "any question

of law or fact common to all plaintiffs will arise in the action."  See FED. R. CIV. P. 20(a)(1).  The

Court thus has discretion in determining whether to permit the prospective plaintiffs to join this

case, so long as it does so "on just terms" and in accordance with Rule 20 governing permissive

joinder.  See also Alexander v. Edgewood Mgmt. Corp., 321 F.R.D. 460, 462-63 (D.D.C. 2017).

In exercising this discretion, courts also assess the potential for prejudice to any party or undue

delay.  See id. at 463.

The Court is not aware of any reason why the prospective plaintiffs would fail to

meet the Rule 20 standard.  As noted above, defendants do not articulate any opposition to the

contrary, except to state that they would be unfairly prejudiced were the prospective plaintiffs

permitted to join the case.  See Opp'n to Second Mot. for Recons. at 13 n.6.  Instead, defendants

argue that the prospective plaintiffs' claims would be barred by the statute of limitations.

The Court's granting of a joinder motion "does not resuscitate claims that are

barred by the statute of limitations."  See Griffin v. District of Columbia, 1996 WL 294280, at *1

n.1 (D.D.C. May 28, 1996); see also 7 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY

KAY KANE, FEDERAL PRACTICE & PROCEDURE § 1688 (3d ed. 2017).  And futility is grounds to

deny a motion to join a plaintiff where the prospective plaintiffs' claims would not survive a

motion to dismiss because of the statute of limitations.  See Fleck v. Cablevision VII, Inc., 799 F.

Supp. 187, 190 (D.D.C. 1992); see also Hawkins v. Groot Indus., Inc., 210 F.R.D. 226, 229

(N.D. Ill. 2002).

Rule 15 of the Federal Rules of Civil Procedure governs when, for statute of

limitations purposes, an amended complaint relates back to an earlier filed complaint.  Although

the Rule only expressly deals with amendments that change "the party . . . against whom a claim

is asserted," see FED. R. CIV. P. 15(c)(1)(C), the Advisory Committee's notes make clear that the Rule applies by analogy to amendments that add plaintiffs as well. See FED. R. CIV. P. 15 advisory committee's note to 1966 amendment; see also Leachman v. Beech Aircraft Corp., 694 F.2d 1301, 1308 (D.C. Cir. 1982). In order to invoke the relation-back doctrine, Rule 15 requires two things: (1) the new claim must arise from the same "conduct, transaction, or occurrence" set forth in the original pleading; and (2) the party against whom the claim is asserted must have had sufficient notice of the claim. See FED. R. CIV. P. 15(c)(1)(C); Leachman v. Beech Aircraft Corp., 694 F.2d at 1308-09. Such notice must come "within the period provided by Rule 4(m) for serving the summons and complaint." See FED. R. CIV. P. 15(c)(1)(C).

The prospective plaintiffs seek to challenge, as a violation of the ADEA, the loss of their jobs resulting from the FAA's reduction-in-force – the very same employment decision that serves as the basis for the current plaintiffs' claims brought under the very same statute. As a result, they meet the "conduct, transaction or occurrence" requirement. See, e.g., Estate of Doe v. Islamic Republic of Iran, 808 F. Supp. 2d 1, 17 (D.D.C. 2011); Page v. Pension Benefit Guar. Corp., 130 F.R.D. 510, 512 (D.D.C. 1990). The only remaining issue thus concerns notice.

In cases such as this one, "when a new plaintiff with a new claim is sought to be added after the statute of limitations has lapsed, something more is needed than merely notice to the defendant of the conduct or occurrence that gave rise to the claim." See Leachman v. Beech Aircraft Corp., 694 F.2d at 1308. Adopting the reasoning of the Fifth Circuit, the D.C. Circuit has explained:

> Not only must the adversary have had notice about the operational facts, but it must have had fair notice that a legal claim existed in and was in effect being asserted by, the party belatedly brought in. This becomes of special importance in situations in which a common set of operational facts gives rise to distinct claims . . . among distinct claimants . . . .

21

Id. at 1308-09 (quoting Williams v. United States, 405 F.2d 234, 238 (5th Cir. 1968)). To fulfill this notice requirement, therefore, defendants must have both notice of the existence of the prospective plaintiffs' claims and of their involvement in the original action. See Page v. Pension Benefit Guar. Corp., 130 F.R.D. at 512 (citations omitted). This notice requirement can be met either informally, such as when "the relationship between the original and new plaintiffs forms an 'identity of interest,'" see id. at 512-13 (citations omitted), or formally, such as when a plaintiff files a class action complaint, see Griffin v. District of Columbia, 1996 WL 294280 at *2 n.2; see also Fleck v. Cablevision VII, Inc., 799 F. Supp. at 192. In addition, the failure of a complaint to effect notice does not foreclose the issue where a party has received actual notice. See Page v. Pension Benefit Guar. Corp., 130 F.R.D. at 513.

Here, defendants had fair notice of the prospective plaintiffs' claims and their potential involvement in the litigation because the original complaint was instituted as a prospective class action. See Fleck v. Cablevision VII, Inc., 799 F. Supp. at 192. The amended complaint explained that the class included "approximately 834 of the FAA's 1,770 current Flight Service Controllers," and noted that additional individuals might be included in the class in the future. See Am. Compl. at 78-79 & n.1, 84 & n.2. And the FAA itself characterized the proposed class as including "all Flight Service Air Traffic Control Specialists employed by the FAA who are over 40 years of age and adversely affected by the FAA's decision to eliminate federal employment and related benefits . . . at the 58 Automated Flight Service Stations as announced by the FAA on February 1, 2005." Second Mot. for Recons. Ex. 1 at 5 (emphasis added). Such a definition certainly would have included the prospective plaintiffs as class members. Thus, defendants knew that a class of affected plaintiffs had sued to challenge the reduction-in-force and, through their own employment records, knew the identities of the

plaintiffs who had been subject to the challenged employment action. Defendants had "fair notice" of the scope of the case and understood that the alleged discriminatory action had affected numerous individuals, including the prospective plaintiffs. Cf. Fleck v. Cablevision VII, Inc., 799 F. Supp. at 192; Hawkins v. Groot Indus., Inc., 210 F.R.D. at 232. The prospective plaintiffs have not sought to "chang[e] any of the underlying facts" giving rise to liability, and defendants had fair notice of their claims and potential involvement in the case. Cf. Golden v. Mgmt. & Training Corp., 266 F. Supp. 3d 277, 281-83 (D.D.C. 2017). Thus, under these circumstances, the relation back doctrine applies. As a result, the statute of limitations would not bar the prospective plaintiffs' claims.

Having determined that joinder would not be futile, the Court also concludes that the prospective plaintiffs could be permitted to join this action "on just terms" and that doing so would serve the interests of justice. See FED. R. CIV. P. 21; Alexander v. Edgewood Mgmt. Corp., 321 F.R.D. at 462-63. As discussed above, the prospective plaintiffs assert claims that arise out of the same conduct and occurrence giving rise to the current plaintiffs' claims, and these claims share many common questions of law and fact. See FED. R. CIV. P. 20(a)(1). In addition, defendants have not identified any unfair prejudice which the Court could not mitigate or resolve, and any resulting delays would be minor.[7] For example, defendants have not been

---

[7]     The Court, in a separate opinion [Dkt. No. 378] issued today, has addressed the potential for unfair prejudice and undue delay resulting from the late reinstatement of numerous dismissed plaintiffs. The Court's discussion in that opinion – determining that the risk of unfair prejudice was minimal, as was the risk of undue delay, and that any unfair prejudice could be mitigated or resolved by the Court – also generally applies to the Court's analysis here. In fact, defendants do not raise any arguments in their opposition to the instant motion for reconsideration regarding the matter of prejudice, except to cite their brief opposing the dismissed plaintiffs' motion for reconsideration. See Opp'n to Second Mot. for Recons. at 13 n.6. Thus, while the Court summarizes its conclusions here, it directs the parties to its earlier opinion for a more fulsome assessment of the matter.

unfairly prejudiced by the fact that the prospective plaintiffs have not participated in discovery. Defendants already have access to much of the information they would have requested in discovery responses, because each individual was a federal employee. And the prospective plaintiffs' discovery responses regarding liability would have been duplicative, while damages discovery must be supplemented for all plaintiffs in any event. Furthermore, any unfair prejudice to defendants may be mitigated or resolved by the Court – for example, by permitting abbreviated additional discovery, limiting the testimony or evidence presented at trial to exclude matters not fairly raised in discovery, or imposing restrictions to account for any lost or destroyed evidence. As defendants will suffer only minimal, if any, prejudice, and joinder will not create any undue delays, the Court determines that permitting the prospective plaintiffs to join the case and resolve their disputes on the merits would serve the interests of justice.

## IV. CONCLUSION

For the reasons set forth in this opinion, the Court will grant the prospective plaintiffs' motion to reconsider the Court's prior orders denying them leave to join or, in the alternative, intervene and permit the prospective plaintiffs to join this case. An order consistent with this opinion shall issue this same day.

SO ORDERED.

_____/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE: March 27, 2018