**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| KATHLEEN BREEN, *et al.*, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>ELAINE CHAO, SECRETARY OF )<br>TRANSPORTATION, DEPARTMENT OF )<br>TRANSPORTATION, *et al.*, )<br>)<br>Defendants. )<br>) | Civil Action No. 05-cv-654 (PLF) |

## **JOINT STATUS REPORT**

Pursuant to the Court's April 2, 2018 Order, the parties have met in person and through multiple telephone conferences to discuss the manner in which this case may be tried, along with several other related issues, and now submit this joint status report.

**I.   Areas of Agreement**

In the course of their discussions, the parties have come to an agreement on several topics, and propose the following: (1) the trial should be bifurcated, with an initial liability phase followed by a damages phase, as needed; (2) the parties have begun to explore the possibility of settlement and will continue to do so as the parties prepare for trial; (3) Plaintiffs stipulate that Defendants need not file an answer to Plaintiffs' April 10, 2018 Second Amended Complaint; and (4) Plaintiffs will soon file a Motion to Admit Additional Dismissed Plaintiffs in which Defendants will not file a written opposition.[1]

---

[1] As Defendants noted in Plaintiffs' most recent motion to amend, Defendants will continue to preserve their objections to the general notion that plaintiffs previously dismissed from this action, or denied joinder, should be let back into this case. *See* Plaintiffs' Motion to Reconsider Denial of Joinder or Intervention for Three Additional Plaintiffs (Dkt. No. 383).

In addition, the parties jointly propose a way to bring finality to the question of who is a plaintiff in this case. Although the parties agree that liability should be bifurcated from damages at this stage of the litigation, the parties also agree that, for purposes of settlement discussions, it is essential that the parties have a clear understanding of who is a plaintiff in this case as soon as practicable. On March 27, 2018, the Court granted Plaintiffs' motion for reconsideration and permitted 226 plaintiffs whose claims previously were dismissed to be added back into the case. *See* Dkt. No. 377. That same day, the Court granted Plaintiffs' motion for reconsideration and permitted 15 plaintiffs whose motion for leave to join, or in the alternative, to intervene, previously had been denied, to be added back into the case. *See* Dkt. No. 379. Accordingly, the parties propose that Plaintiffs be given 90 days from the May 1, 2018 status hearing to provide notice to any previously-dismissed plaintiff who would be subject to the Court's March 27, 2018 orders. Within ten days after this 90-day period, Plaintiffs would file a motion to amend their complaint to include any previously-dismissed plaintiff who has responded to Plaintiffs within the 90-day period that he or she wishes to join the case. Defendants would not file any written opposition to such a motion, other than preserving their previously-stated opposition to such motions for reconsideration of dismissal, and will not be required to file an additional answer to Plaintiffs' amended complaint, should Plaintiffs' motion be granted. The parties agree that any previously-dismissed plaintiff who wishes to be reinstated after the filing of the amended complaint must demonstrate good cause under Federal Rule of Civil Procedure 16 for not previously seeking reinstatement, and that such cause could not be demonstrated based on the reasons expressed in the Court's March 27, 2018 orders.

## II.     Areas of Disagreement

### 1.     Whether Plaintiffs May Engage in Additional Discovery

The parties disagree on whether additional discovery would be appropriate.

**Plaintiffs' Position**

For the following reasons, Plaintiffs seek the opportunity to conduct limited additional discovery and to present an expert who can provide an opinion on the procedures employed by the A-76 process used in this case.

The focus of the limited, additional discovery Plaintiffs seek was informed by the Court's Summary Judgment ruling issued on May 26, 2017. Dkt. 344. In that ruling, the Court highlights as capable of demonstrating pretext and ultimately bearing on liability the decision to label Flight Service as a "non-core" function and whether decisions made by FAA managers during the A-76 public-private competition deviated from established practice at the FAA or at other agencies. *See id*. at 29-33. The discovery the Plaintiffs seek to undertake is intended to develop the record on the circumstances surrounding, and the bases for, these two sets of decisions.

Accordingly, the Plaintiffs seek to propound the following requests for production:

1.     Memoranda, emails, reports and/or communications reporting any decisions, recommendations and inquiries made by the FAA's Office of the Assistant Administrator for Financial Services during the course of the process by which Flight Service was listed in the 2002 FAIR Act Inventory as "commercial," "Reason Code B," and/or "non-core."

2.     Memoranda, emails, reports, instructions and/or communications reporting any decisions, recommendations and inquiries made by the Office of Competitive Sourcing and any teams operating within that Office, the Source Selection Evaluation Board and Source Selection Authority during the course of the A-76 bidding and evaluation of the Flight Service function.

3.     Memoranda, emails, reports, guidance and/or communications given or sent to Renee Anderson, the Human Resources Representative assigned to assist the MEO team, or any predecessor or successor to Ms. Anderson in this position, regarding the support, guidance and assistance HR was supposed to provide the MEO team during the course of the A-76 process.

> This request excludes the December 1996 Department of Transportation Office of the Inspector General Audit Report, the April 1998 Flight Service Architecture Core Group Report, and the December 2001 Memorandum entitled "Report on Automated Flight Service Stations: Significant Benefits Could Be Realized by

> Consolidating Sites in Conjunction with Deployment of OASIS," as these documents have already been produced.

The first request above seeks materials generated in connection with the decision to classify the Flight Service workforce as "non-core," rather than "core," and therefore available for removal from the FAA through the A-76 process. Plaintiffs have limited the request to materials generated in the particular office where this decision is believed to have been made.

The second request above seeks materials generated in the particular offices where the A-76 process was conducted within the FAA and the origin of and rationales for the particular procedures used in conducting the A-76 process.

The third request seeks materials generated about the nature and extent of assistance provided the MEO team, which presented the primary alternative to contracting out the Flight Service Controllers, and the limitations on the services the HR representative was permitted to provide. This request bears directly on one of the key areas of decision that the Court noted as possibly providing a basis from which to infer pretext. *See* Dkt. 344 at 31.

In addition, Plaintiffs seek the opportunity to offer opinions from an expert in the A-76 process about whether, and if so to what extent, the procedures employed in the A-76 process at issue in this case were consistent with or departed from procedures used in other A-76 competitions.

The balance of equities favors granting the request to undertake this limited, additional discovery. Although Plaintiffs, like Defendants, are eager to bring this case to a conclusion, they also wish to ensure that the record is developed in the areas on which liability may turn. While Plaintiffs would be substantially disadvantaged by being denied the limited discovery they seek, Defendants would not be disadvantaged by delaying the trial of this action for the period of time

that would be required to conduct the requested discovery.[2]  In the end, justice would be better served by ensuring that the trial of this long-standing case, in which the rights of the FAA and the many plaintiffs are at issue, is adjudicated on a record developed in the particular areas on which the Court focused in its recent Summary Judgment ruling.

**Defendants' Position**

It is Defendants' position that Plaintiffs cannot show good cause under Federal Rule of Civil Procedure 16(b)(4) to reopen both fact and expert discovery nearly ten years after discovery closed. After approximately two years of extensive and far-reaching discovery, merits discovery closed in February 2009.[3]  Consequently, any request by Plaintiffs for additional discovery requires a modification of the scheduling order, for which Plaintiffs must show good cause. *See* Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."); *United States v. Sci. Applications Int'l Corp.*, 301 F.R.D. 1, 3 (D.D.C. 2013) ("Typically, reopening discovery would require a showing of good cause because reopening discovery requires an amendment of a scheduling order." (citation omitted)). Plaintiffs cannot make that showing here.

**A. Legal Standard for Reopening Discovery.**

This Court has identified six factors to consider when determining whether to re-open discovery: "(1) whether trial is imminent; (2) whether the request is opposed; (3) whether the non-moving party would be prejudiced; (4) whether the moving party was diligent in obtaining

---

[2] Nor have Defendants shown that the proposed discovery requests would constitute an undue burden. *See infra* at 12 n.8.

[3] An initial discovery conference was held on February 8, 2007. *See* Dkt. No. 53. Although discovery was initially set to close on February 7, 2008, it was extended several times upon joint motion of the parties. *See, e.g.*, Dkt. Nos. 139, 150, 205, 229. Merits discovery ultimately closed on February 13, 2009, after the Court granted the parties' request for the last expert depositions to be taken no later than that date. *See* Minute Order, February 12, 2009.

5

discovery within the guidelines established by the court; (5) the foreseeability of the need for additional discovery in light of the time allotted by the district court; and (6) the likelihood that the discovery will lead to relevant evidence." *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 138 F. Supp. 3d 1, 2 (D.D.C. 2015) (Freidman, J.) (citation omitted).[4]

"Courts in this District have routinely denied requests for discovery beyond a cut-off date where a party has shown a lack of diligence during the allowed time period." *St. Paul Mercury Ins. Co. v. Capitol Sprinkler Inspection, Inc.,* No. 05-2115, 2007 WL 1589495, at *6 (D.D.C. June 1, 2007) (citing cases), *aff'd sub. nom. Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.*, 630 F.3d 217 (D.C. Cir. 2011). The touchstone in determining diligence is whether the party seeking to re-open discovery did foresee or could have foreseen the need for the information being sought. *See DAG Enterp., Inc. v. Exxon Mobil Corp.,* 226 F.R.D. 95, 106 (D.D.C. 2005); *see, e.g.*, *2910 Georgia Ave. LLC v. Dist. of Columbia*, 312 F.R.D. 205, 211 (D.D.C. 2015) (finding good cause to re-open discovery when new information came to light *after* discovery had closed, and so "the parties did not have an opportunity to fully develop the record on these issues—issues that both parties agree are central to this case"). Indeed, the "[m]ere failure on the part of counsel to proceed promptly with the normal processes of discovery and trial preparation should not be considered good cause." *DAG Enterp.,* 226 F.R.D. at 105 (citation omitted); *see, e.g.*, *Hussain v. Principi*, 344 F. Supp. 2d 86, 93 (D.D.C. 2004) (finding no good cause to re-open discovery when previous counsel failed to conduct adequate discovery), *aff'd sub nom. Hussain v. Nicholson*, 435 F.3d 359 (D.C. Cir. 2006).

---

[4] Defendants oppose Plaintiffs' request to reopen discovery. In addition, although the Court has not yet set a trial date, given that the Court issued its decision on summary judgment in May 2017 and has resolved Plaintiffs' outstanding two motions for reconsideration, it would appear that a trial date is imminent, particularly in a case that has been pending for thirteen years.

6

Although prejudice to the party opposing modification of the pretrial order may serve as an additional basis to deny the modification, prejudice is irrelevant for determining whether the movant has been diligent and, consequently, shown good cause. *DAG Enterp.,* 226 F.R.D. at 110 ("The existence or degree of prejudice to the party opposing modification may supply an additional reason to deny a motion to modify a scheduling order, but it is irrelevant to the moving party's exercise of diligence and does not show good cause.") (citing 3 *Moore's Federal Practice* § 16.15[b] (2003)).

### B. Plaintiffs Cannot Show Good Cause for Broad Additional Document Discovery

Plaintiffs' proposed discovery requests were entirely foreseeable to plaintiffs at the outset of discovery more than 11 years ago. Although, as plaintiffs acknowledge, the requests themselves are new, the subject matters are not. Two in particular—requesting documents pertaining to the decision that flight services would be the subject of a public-private competition and documents pertaining to the competition itself—cover practically the entire scope of this litigation. Plaintiffs should not be allowed to reopen discovery nearly a decade after the discovery period closed just because they have additional counsel, and where the Court has narrowed the issues for trial in its summary judgment decision.[5]

Plaintiffs do not dispute that these issues were actually foreseen during discovery, and any contention to the contrary is easily rebutted by the extensive discovery in this case that covered these issues. *See 2910 Georgia Ave.*, 312 F.R.D. at 211 (reasoning that Plaintiffs already had "an opportunity to fully develop the record on these issues—issues that both parties agree are central to this case."). During the two years of merits discovery in this case, the parties

---

[5] Although Plaintiffs have added certain new attorneys, such as those at Cohen Millstein, Lenore Garon, who has participated in this case from its earliest days, has yet to withdraw as counsel.

7

took more than 50 depositions between them, Defendants responded to 67 document production requests and 66 interrogatories, and produced approximately 16,360 pages of documents. Much of that discovery focused on the two broad issues Plaintiffs now seek additional discovery over. That counsel who have since been added to Plaintiffs' litigation team may wish to pursue similar subject matters through a different line of questioning does not excuse a lack of diligence. *Hussain*, 344 F. Supp. 2d at 93 (finding no good cause to re-open discovery when previous counsel failed to conduct adequate discovery).

Taking the Plaintiffs requests in turn demonstrate the foreseeability of these topics. First, plaintiffs ask for the entire breadth of documents and communications that may have arisen during the competition. But, as far back as August 24, 2005, Defendants filed an opposition to Plaintiffs' motion for preliminary injunction addressing many of Plaintiffs' criticisms of the selection of Lockheed Martin over the MEO and other bidders. Defendants included, for example, a declaration from the Source Selecting Authority, Dennis DeGaetano, who was the one who selected Lockheed Martin. *See* Dkt. No. 22, Ex. X. In his declaration, Mr. DeGaetano described his attention to the analyses from the Cost and Evaluation Teams as well as proposals made by the Source Selection Evaluation Board. *See id*. Plaintiffs indeed deposed Mr. DeGaetano and introduced an excerpt of the technical evaluation of the MEO proposal as an exhibit to his deposition. Although Plaintiffs now wish to go further and ask for all of the deliberations during the competition phase, that undisputedly is something they could have foreseen after reviewing Mr. DaGaetano's declaration nearly13 years ago.

Plaintiffs also want the full breadth of documents and communications pertaining to the decision to subject flight service to competition and, in particular, its designation under the FAIR Act Inventory as a non-core commercial function. Again, Defendants introduced declarations on this very subject nearly thirteen years ago in opposition to Plaintiffs' motion for preliminary

injunction and before discovery commenced. For example, Deputy Chief Financial Official, Office of the Assistant Administrator for Financial Services, John Hennigan, submitted a declaration that went into great detail about the process for submitting flight services to competition. *See* Dkt. No. 22, Ex. P. In his declaration, John Hennigan described the FAIR Act inventory process, *id.*, and Plaintiffs devoted large blocks of his deposition three years later to the very subjects that Plaintiffs now seek to reopen. That Plaintiffs chose to address these issues mostly through depositions plainly reflects that these matters were foreseeable to Plaintiffs during the course of discovery, and they should be held to those strategic decisions and not be permitted to reopen discovery that concluded more than a decade ago.

Finally, Plaintiffs want documents and communications pertaining to Rene Anderson, who provided human resource support for the MEO. Although Defendants disclosed Rene Anderson in their initial disclosures in March 2007, Plaintiffs chose not to depose her and instead asked other deponents about their interactions with Ms. Anderson. Again, that was a strategic litigation decision Plaintiffs made for how to address these matters. Accordingly, the nature of the discovery that they now request was certainly foreseeable when Defendants disclosed Ms. Anderson as a potential witness near the outset of discovery.

The notion that Plaintiffs actually foresaw these issues also is reflected in their summary judgment filings. For example, Plaintiffs' Opposition to Defendants' Motion for Summary Judgment (Dkt. No. 265-3) squarely addressed "Defendants' A-76 process . . . and its subsidiary processes," Dkt. No. 265-3 at 2, the classification of core versus non-core functions and "the selection of Flight Service for an A-76 study[,]" *id.* at 10, "the selection of Flight Service for contracting out[,]" *id.* at 11, "component practices of the A-76 process[,]" *id.* at 14, and what Plaintiffs alleged to be "normal concomitant[s] of an A-76 competition," *id.* at 21. Plaintiffs' brief devotes numerous pages to discussing the process by which Defendants' determined to

9

subject Flight Services to the A-76 competition, Defendants' reasons for the A-76 competition, and Plaintiffs' arguments that Defendants' reasons for the A-76 competition were pretextual. *Id.* at 37-52, 66, 69, 71, 72. Similarly, Plaintiffs' Corrected Statement of Material Facts Not in Dispute (Dkt. No. 265-4), identifies facts regarding the A-76 competition that it adduced during discovery. *Id.* ¶ 3-8, 10, 12, 21. Likewise, the record indicates that Plaintiffs actually foresaw the need for information related to Defendants' selection of Lockheed Martin as the winning bidder. As Plaintiffs' summary judgment opposition brief explains, "The FAA discriminated against the Flight Service Controllers . . . in the contracting out to Lockheed Martin[,]" Dkt. No. 265-3 at 7, and Plaintiffs' brief discussed the selection of Lockheed indicating the centrality of that issue, *id.* at 35.[6] Similarly, the Court's Opinion (Dkt. No. 344) indicated that the A-76 and selection of Lockheed were defining facts of this case. Dkt. No. 344 at 6-9 (discussing events under the heading "Before the A-76 Study"), *id.* at 9-12 (discussing events under the heading "The A-76 Study Leading to the RIF"). As such, Plaintiffs cannot show that the need for discovery on these issues only became foreseeable now, and Plaintiffs' request for additional information on these issues, almost a decade later, should be summarily rejected.

Plaintiffs' lack of diligence on these matters is highlighted by their failure to take any actions to reopen discovery even after the Court issued its summary judgment decision.[7] In

---

[6] Plaintiffs never sought additional discovery pursuant to former Rule 56(f) before responding to Defendants' motion for summary judgment in 2009, or when current counsel filed their supplemental summary judgment briefs on September 30 and November 22, 2016. *See* Dkt. Nos. 309, 324. To the contrary, Plaintiffs asserted that the "evidence set forth [in Plaintiffs' supplemental briefing] would allow a reasonable factfinder to hold that consideration of age was a factor in the challenged personnel action." *See* Dkt. No. 309 at 4 (citation omitted).

[7] To be sure, Defendants do not agree that the Court's summary judgment decision would justify reopening discovery. In fact, the Court's summary judgment decision *narrowed* the issues in the case to those that it believed were material issues of disputed fact, which included alleged irregularities in the A-76 competition. Plaintiffs' apparent position that the Court's identification of a factual dispute for resolution at trial justifies reopening discovery has no basis in the law.

August 2017, the Plaintiffs filed a motion for a status conference where, among other things, they stated that they "wish to address the need for limited additional discovery in order to prepare properly for trial on the remaining claims before the Court." *See* Dkt. No. 348 at 1.  In response to Plaintiffs' filing, Defendants noted that Plaintiffs' request in a status conference to reopen discovery was inappropriate and that they should file a Rule 16 motion demonstrating good cause to amend the scheduling order to re-open merits discovery, a prospect that Defendants cast "serious[] doubt" on given the close of discovery eight years earlier. *See* Dkt. No. 349 at 1-2.  Eight months have passed since Plaintiffs' belated stated intention to reopen discovery, and their failure to take any action in furtherance of that stated intention simply highlights their lack of diligence.

      Although prejudice to the Defendants is irrelevant in determining whether Plaintiffs have been diligent and, thus, shown good cause, here it serves as an additional basis to deny Plaintiffs' requested discovery.  *See DAG Enterp.*, 226 F.R.D. at 110.  The key decisions at issue happened over 15 years ago, and merits discovery ended nearly a decade ago.  Many agency employees have since retired, and agency counsel has changed over several times since the close of discovery.  Accordingly, the search for documents likely would be particularly burdensome in this fourteen-year-old case.  Moreover, additional discovery likely will lead to additional discovery disputes, leading to even more time and expense in a case that should be set for trial without undue delay.  *See id.* (finding prejudice to party opposing reopening of discovery where it would result in the party incurring "significant expense and [ ] further delay in these proceedings[,]" including litigation over the terms and scope of any additional discovery).[8]

---

[8] Even if the reopening of discovery theoretically could lead to additional relevant evidence, these belated discovery requests are not proportionate to the needs of the case given the substantial documents produced in this case and the burden such additional discovery would cause Defendants.  *See* Fed. R. Civ. P. 26(b)(1).  In any event, it was not until April 20, 2018,

## C. Plaintiffs Cannot Show Good Cause for Additional Expert Discovery

Plaintiffs also seek to re-open expert discovery to identify a new expert to opine upon the alleged irregularities in the A-76 process that resulted in the challenged reduction-in-force. As with their request to re-open document discovery, Plaintiffs cannot show good cause under Rule 16 to amend the scheduling order to re-open expert discovery at this late date.

When the Court enters a pretrial order governing the submission of expert reports, that order controls the determination as to whether an expert submission is timely. *Akeva, LLC v. Mizuno Corp.*, 212 F.R.D. 306, 309-10 (M.D.N.C. 2002) (holding that where discovery plan did not contemplate rebuttal reports, party was not entitled to submit rebuttal report); *id*. at 311 ("[S]trict adherence to discovery rules are necessary to prohibit not only trial by ambush, but discovery gaming wherein a party holds back evidence or does not pay sufficient attention in the first instance to develop expert testimony."). Accordingly, "[f]iling an expert disclosure or a supplement thereto after the close of discovery requires leave of the Court pursuant to Federal Rule of Civil Procedure 16(b)." *St. Paul Mercury Ins*, 2007 WL 1589495 at *6.

For the same reasons that Plaintiffs cannot show diligence in seeking additional document discovery, they cannot show diligence at this late stage of pretrial proceedings to re-open expert discovery and identify a new expert witness. *See In re Rail Freight*, 138 F. Supp. 3d

---

that Plaintiffs provided for the first time the details of the discovery that they now seek with any level of specificity. *See, e.g.,* Dkt. No. 349 at 3-4 (acknowledging the general topics that Plaintiffs seek to reopen in discovery but emphasizing the vague nature of those descriptions). Accordingly, Defendants are still in the process of evaluating the full burden of responding to new materials Plaintiffs now request. This process is confounded by (1) the fact that many of the individuals who were employed by the FAA a decade ago have either left the FAA or moved to different positions, and (2) the FAA has since transitioned its email system in such a manner that uncovering emails from 15 years ago would be particularly burdensome. Nevertheless, Defendants will do its best to provide as much information associated with the burden regarding these broad requests at the May 1, 2018 scheduling conference.

at 2 (holding that defendant was not diligent in seeking to submit new expert declaration where the subject matter of the declaration was well-known to both parties during discovery).

Consistent with the Rule 16 scheduling order in this case, on March 18, 2008, Plaintiffs identified Dale L. Belman, Ph. D, as an expert witness to conduct a statistical analysis of the data produced by Defendants during the course of discovery. The next day, Plaintiffs identified Joseph L. Tryon, Ph.D., as an expert witness who provided a methodology that he alleges is appropriate to calculating loss of pay and retirement for Plaintiffs in certain categories. Since then, Plaintiffs have not identified any additional expert witnesses.

Although expert discovery closed more than nine years ago, and, as discussed above, the parties were well aware that the A-76 process was squarely at issue both during discovery and in the parties' summary judgment briefing, Plaintiffs now belatedly seek to identify a new expert witness to opine upon alleged irregularities in the A-76 process. Under these circumstances, where it was not just reasonably foreseeable but actually foreseen that the A-76 process would be a central issue in this case, Plaintiffs cannot show the diligence necessary to establish good cause under Rule 16 to support amending the scheduling order to permit the disclosure of a new expert witness.

In addition, the prejudice to Defendants if Plaintiffs were permitted to proffer a new expert witness at this late date is manifest. The district court's decision in *DAG Enterp.*, 226 F.R.D. at 110, is instructive in considering the substantial prejudice to Defendants in this case. In *DAG Enterp.*, plaintiffs sought a third-party subpoena to obtain documents after the close of discovery, which they then intended to use to offer new expert opinions. *Id.* The district court quashed plaintiffs' third-party subpoena and denied the request to re-open discovery to offer new expert testimony after the close of discovery because, in addition to the failure to show diligence, the defendant would have been substantially prejudiced. *Id.* ("Plaintiffs' attempt to instigate a

13

new cycle of expert discovery would cause Defendants to incur significant expense and produce further delay in these proceedings."). Like the Defendants in this case, the court first noted that the defendants had already incurred significant expense including: discovery; evaluating plaintiffs' experts' reports; offering their own expert reports; and deposing plaintiffs' experts. *Id.* Allowing plaintiffs to "redo" or "substitute" new expert reports would prejudice the defendants, the court reasoned, because it was likely that the following "six-step process will create significant expense for Defendants, despite the fact that they acted in a diligent manner during the discovery period, following the Court's deadlines and entering all necessary evidence": (1) the parties would litigate over the scope of any new document discovery; (2) the plaintiff would submit a new round of expert reports incorporating that new discovery; (3) a new round of discovery would begin, focusing on whether the produced documents could serve as a proper basis for projecting damages; (4) defendants would be forced to depose plaintiffs' experts based on this newly produced information; (5) defendants would likely offer rebuttal witnesses to challenge plaintiffs' expert's new opinions; and (6) motions *in limines* would need to be resolved by the court. *Id.* The district court concluded that "[c]ompelling a party with 'clean hands' to incur significant additional expense and spend a large amount of additional time in discovery when the opposing side has not acted with diligence and has not shown 'good cause' is simply unwarranted." *Id.*

The same conclusion is undoubtedly true here. If Plaintiffs were allowed to seek additional documents for use by a new expert witness, the same six burdens identified in *DAG Enterp.* would be placed on Defendants, from inevitably litigating the scope of the new document production requests (as well as the costs and burdens associated with searching, reviewing, and producing responsive documents from a reduction-in-force that occurred more than a decade ago), deposing Plaintiffs new expert, retaining our own expert(s) (a process that

14

itself is both time consuming and often-times costly), preparing a rebuttal expert report, and likely motions practice. Accordingly, even if Plaintiffs could demonstrate diligence, which they cannot, the overwhelming prejudice to Defendants—which have abided by the court deadlines and has "clean hands"—more than justifies denying Plaintiffs' request to identify a new expert witness at this late date. *See In re Rail Freight*, 138 F. Supp. 3d at 3 (denying defendant's request to submit expert declaration after the close of discovery because it would unfairly prejudice plaintiffs and necessitate even further additional discovery); *St. Paul Mercury*, 2007 WL 1589495, at *8 (denying supplemental expert report after the expert disclosure deadline because, among other reasons, plaintiff would be prejudiced by the need to depose the expert, designate its own rebuttal expert, and provide expert reports to the defendants, "all at significant cost" to the plaintiff).

### 2. Pre-Trial Schedules

Within 14 days following this Court's order as to whether additional discovery would be permitted, the parties will file a status report proposing a pre-trial schedule and, if necessary, a discovery schedule.

| | |
|---|---|
| Dated: April 24, 2018 | Respectfully submitted, |
| /s/ Joseph M. Sellers | /s/ Gary M. Gilbert |
| Joseph M. Sellers, Bar No. 318410 | Gary M. Gilbert, Bar No. 15808 |
| Shaylyn Cochran, Bar No. 1012977 | Linda A. Kincaid, Bar No. 416936 |
| Brian Corman, Bar No. 1008635 | Stephanie M. Herrera, Bar No. MD17994 |
| **COHEN MILSTEIN SELLERS** | Michal B. Shinnar, Bar No. MD0033 |
| **& TOLL PLLC** | **GILBERT EMPLOYMENT LAW, P.C.** |
| 1100 New York Avenue, N.W. | 1100 Wayne Avenue, Suite 900 |
| Suite 500, East Tower | Silver Spring, MD 20910 |
| Washington, DC 20005 | Telephone: (301) 608-0880 |
| Telephone: (202) 408-4600 | Facsimile: (301) 608-0881 |
| Facsimile: (202) 408-4699 | Gary#ggilbertlaw.com |
| jsellers@cohenmilstein.com | |

*Attorneys for Plaintiffs*

        Chad A. Readler
        Acting Assistant Attorney General

        Jessie K. Liu
        United States Attorney

        Joshua E. Gardner
        Assistant Branch Director

        <u>/s/ Adam D. Kirschner</u>
        Adam D. Kirschner
        Senior Trial Counsel
        Kari E. D'Ottavio
        Christopher W. Radcliffe
        Trial Attorneys
        UNITED STATES DEPARTMENT OF
          JUSTICE
        CIVIL DIVISION, FEDERAL PROGRAMS
          BRANCH
        20 Massachusetts Ave., N.W.
        Washington, DC 20530
        Telephone: (202) 353-9265
        Facsimile:  (202) 616-8470
        Adam.Kirschner@usdoj.gov

*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served via the CM/ECF electronic filing system on this 24th day of April, 2018, and thereby served upon the parties and/or their counsel.

By: /s/ Brian Corman