```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA

 * * * * * * * * * * * * * * * *
KATHLEEN A. BREEN, et al.,        )  Civil Action
          Plaintiffs,             )  No. 05-cv-654
vs.                               )
                                  )
PETER BUTTIGIEG, et al.,          )  May 13, 2021
          Defendants.             )  2:06 p.m.
                                  )  Washington, D.C.
 * * * * * * * * * * * * * * * *
```

**TRANSCRIPT OF STATUS CONFERENCE
BEFORE THE HONORABLE PAUL L. FRIEDMAN,
UNITED STATES DISTRICT COURT SENIOR JUDGE**

*(All parties appearing via video or teleconference)*

**APPEARANCES**:

```
FOR THE PLAINTIFFS:      JOSEPH M. SELLERS
                         Cohen Milstein Sellers & Toll PLLC
                         1100 New York Avenue, NW
                         Suite 500 East Tower
                         Washington, DC 20005
                         (202) 408-4604
                         Email: jsellers@cohenmilstein.com

                         GARY M. GILBERT
                         Gilbert Employment Law, P.C.
                         1100 Wayne Avenue, Suite 900
                         Silver Spring, MD 20910
                         (301) 608-0880
                         Email: gary-efile@gelawyer.com

FOR THE DEFENDANTS:      ADAM D. KIRSCHNER
                         U.S. Department of Justice
                         P.O. Box 883
                         Washington, DC 20044
                         (202) 305-9265
                         Email: adam.kirschner@usdoj.gov


Court Reporter:          Elizabeth Saint-Loth, RPR, FCRR
                         Official Court Reporter

       Proceedings reported by machine shorthand, transcript
          produced by computer-aided transcription.
```

**P R O C E E D I N G S**

THE COURTROOM DEPUTY:  This is Civil Action 05-cv-654, Kathleen Breen, et al. versus Peter Buttigieg, et al.

For plaintiffs I have Mr. Joseph Sellers and Mr. Gary Gilbert.  For defendants I have Mr. Adam Kirschner.  Our court reporter today is Ms. Elizabeth Saint-Loth.  All parties are present.

THE COURT:  Okay.  Well, good afternoon, everybody.  I'm sorry I can't see you all.

So we're here for a status conference to get a report on the settlement.  I have read the settlement agreement and am very happy that you have reached agreement and very grateful to the mediators who have worked on this case for quite a while.  I think I referred it to mediation back in -- was it March, January or March?

MR. KIRSCHNER:  February of 2020.

THE COURT:  Right.  We were scheduled to go to trial in March and instead, thankfully, you all were able to agree or at least make the effort, and the effort has proved fruitful.

So Mr. -- whoever wants to speak first, whether it's Mr. Sellers or Mr. Gilbert or Mr. Kirschner to just, sort of, run through things and bring me up to date, I'd appreciate it.

1           MR. SELLERS:  So unless there is any objection why
2    don't I start.  I don't think anything I am going to say is
3    going to be terribly --
4           THE COURT:  For the court reporter --
5           MR. SELLERS:  This is Joseph Sellers.  I'm sorry.
6           I am Joseph Sellers representing the plaintiffs in
7    this case.  Thank you, Your Honor.
8           So, as you said, we're really pleased to report
9    the parties have reached a settlement in this case and the
10   agreement is attached to a status report filed in April,
11   April 28th.
12          Before we talk about where we go from here, as is
13   the primary purpose of the status conference, as we haven't
14   appeared for more than a year and the negotiations have
15   proceeded in a nonpublic forum, I thought it would be worth
16   apprising the Court of the path that led us to the
17   settlement.  Notwithstanding that, as this is a multiparty
18   case, it was never certified as a class action, we don't
19   believe the rules require the settlement be approved by the
20   Court.
21          As the Court will recall last February, we were
22   about a month before the commencement of trial and the Court
23   convened a status conference and reminded us of the benefits
24   of settlement and the risks for both sides and the
25   uncertainty about the outcome of a liability trial, much

1   less the risks and delays associated with the trial of the
2   plaintiffs' damages claims individually if the plaintiffs
3   had been successful in proving liability.
4           At the Court's prompting, and the parties'
5   consent, the Court asked the Circuit Court mediation office
6   to provide mediation services to assist us to explore
7   whether we can settle the case.
8           We're very pleased the Court -- the office
9   appointed Dina Gold of that office, the mediation office,
10  and Michael Lewis of the JAMS dispute firm to serve jointly
11  as mediators in this matter.  We want to thank the Circuit
12  mediation office and, particularly, its director, Carolyn
13  Lerner, for arranging for the mediation so quickly and
14  assigning such able mediators to the case.
15          THE COURT:  Well, you couldn't have done much
16  better than with those two, I think.
17          MR. SELLERS:  I think you are right, they were --
18  well, I am going to get to that; but I agree.
19          These seasoned mediators really provided an
20  invaluable contribution to the successful resolution of this
21  matter, but I am going to touch on that a little more in a
22  moment.  But there were several features of this case that
23  made settlement complicated, probably more -- it may have
24  been more on the FAA side, but these are the ones that we
25  are aware of.

1               First of all, while the parties had completed
2    discovery that was necessary to try the liability which
3    permitted us, each side, to assess the risks at least of
4    trying the liability phase of the case, we were far from
5    having completed the discovery of the losses for each
6    plaintiff who claimed that they were seeking relief in this
7    case for 671 individuals -- information of which was partly
8    in their possession and partly in the possession of the FAA.
9    And the collection of that information obviously was very
10   critical to the parties' evaluation of the claims and defenses.
11              So while we had to -- in addition to that, of
12   course, the plaintiffs had to consider the risks that were
13   considerable of litigation and the benefits of resolving the
14   claims now rather than potentially years later after a trial
15   on liability and, in the event we were successful, a trial
16   on 671 individual claims and potential appeals thereafter.
17              But with these challenges the mediators convened
18   an all-day mediation session which set the stage for dozens
19   of sessions that followed.  During these sessions the
20   mediators met with each side's counsel to exchange legal
21   arguments, evidence that each side believed supported its
22   positions, and were very helpful in helping us to focus on
23   the relative strengths and weaknesses of the points that at
24   least we saw; and I assume they did the same for the FAA.
25              Over the course of the past year, Mr. Gilbert and

1    I spoke with the mediators probably more than 50 times and
2    exchanged emails with them many times more than that.  The
3    mediators made themselves available at all times of the day
4    and evening, and on weekends.  And some weeks we seemed to
5    speak with the mediators every single day, and sometimes
6    more than once a day, about various issues that required
7    negotiation or clarification; and those were just the
8    conversations with us.  I suspect they were fairly busy
9    speaking with counsel for the FAA as well.
10            As the Court is aware, mediators play a very
11   valuable role in helping to resolve complex and difficult
12   legal disputes like this one, even though they are rarely
13   noted in the public record.  While they didn't enter an
14   appearance in the case, they rendered an immensely important
15   service to the parties; and we believe to the Court.
16            And on behalf of the plaintiffs, we want to thank
17   Ms. Gold and Mr. Lewis for their inexhaustible energy, their
18   patience, and their commitment to getting to a "yes," in
19   this case -- a result we wouldn't have achieved without them.
20            In addition to negotiating the overall amount
21   payable to the plaintiffs, as you know, the agreement
22   requires that each plaintiff approve of the amounts to be
23   disbursed to each of them and execute releases individually
24   as, again, more efficient procedures for resolving these
25   claims might have been available that weren't here because

1      there was no certified class.
2              The process of communicating with 671 individual
3      plaintiffs occurred in several large meetings -- there were
4      group meetings that we had with them -- as well as
5      individual calls and emails to each plaintiff, often
6      multiple times, in order to educate each of them about the
7      value of the settlement; explain and justify the amount to
8      be contributed to each plaintiff; answer follow-up
9      questions; locate some plaintiffs who had moved or were
10     otherwise unresponsive.
11             Needless to say this was an enormously
12     time-consuming process.  It required nearly full-time work
13     from several lawyers at my firm, and many more lawyers from
14     Mr. Gilbert's firm, and especially from Mr. Gilbert himself
15     over a period of months.
16             Having litigated more than 50 class actions in my
17     career, Your Honor, I found this process to be perhaps the
18     most intensive commitment of resources to serve our clients
19     in my experience.
20             The settlement couldn't have been achieved as well
21     without the highly professional and very cooperative
22     behavior of counsel for the FAA led by Mr. Kirschner, who
23     was accompanied by Ms. Carlotta Wells and Mr. Martin
24     Tomlinson, among others on their team.
25             While it was very clear they would have presented

1   a big risk defense at trial -- notwithstanding that we
2   believe we would have prevailed -- they became full and
3   invaluable partners in the yearlong process leading to this
4   settlement.
5           In this year of when relationships between counsel
6   for adversaries are too often preyed, we found the behavior
7   of the lawyers representing the FAA in this matter to be
8   exemplary.  We want to thank them for their professionalism
9   and their invaluable contributions to this settlement.
10          Finally, on behalf of the plaintiffs, we want to
11  thank the Court for getting this case moving again after
12  nearly a decade in which it was dormant, for prompting the
13  parties to consider and ultimately embark on a settlement of
14  this action, and especially for its patience as we
15  repeatedly asked for more time to complete negotiation of
16  the settlement.
17          In return, Your Honor, we believe we may have
18  saved the Court from a monthlong bench trial, wading through
19  what would undoubtedly have been interminable proposed
20  findings of fact and conclusions of law and, in the event
21  liability was established, presiding over 671 damage
22  proceedings.
23          With that, sort of, report on the history, I would
24  like to turn briefly to the status of the litigation at this
25  point and then turn it over to Mr. Gilbert, unless the Court

1    has any comments or questions.
2            THE COURT:  And then to Mr. Kirschner.
3            MR. SELLERS:  And to Mr. Kirschner, yes.
4            So pursuant to paragraph 10 of the agreement, the
5    plaintiffs sent to the mediators releases of 671 plaintiffs,
6    plus the release of Mr. Domingo who, while he appears
7    pro se, we offered to represent him for the purpose of
8    settlement.
9            We understand the mediators have confirmed that
10   they have the releases from all of the plaintiffs, and they
11   have so informed counsel for the FAA.  We understand that
12   counsel for the FAA is preparing the transmission of
13   information to the Treasury that's necessary to process the
14   payment of funds required by paragraph 10 of the agreement
15   and that its transmission will be forthcoming shortly.
16           Once the funds are received by plaintiffs'
17   counsel, pursuant to paragraph 14 of the agreement, we will
18   file a motion seeking dismissal with prejudice of all of the
19   claims in this action except for the limited jurisdiction
20   the parties have asked the Court to retain.
21           And I am now going to turn it over to Mr. Gilbert,
22   and then we obviously want to hear from Mr. Kirschner.
23           THE COURT:  Thank you, Mr. Sellers.
24           Mr. Gilbert.
25           MR. GILBERT:  Thank you, Your Honor.

1               Always following Joe is a bit like when I speak at
2       seminars and I have to follow the most eloquent and
3       entertaining presenter.  It's difficult to match his very
4       articulate comments.
5               I would just like to echo just very briefly if I
6       could, Your Honor, my gratitude both to the Court for the
7       patience the Court has shown and, more importantly, the
8       attention that you have given to this proceeding.  I note
9       that -- just a couple more comments on that.  In the 40
10      years that I have been practicing law, I don't think I have
11      ever been involved in a case that I think more clearly
12      exemplifies the principles that we expect in litigation, in
13      terms of civility and the conduct of all of the parties
14      involved.
15              Indeed, I would say that this case was a model for
16      how federal court litigation should proceed.  I note, in
17      particular, the civility, the professionalism, the
18      professional courtesy that has been extended repeatedly by
19      counsel for the government and the other members of the
20      litigation team from the government; and it is not just what
21      we expect in the world today, especially with the
22      difficulties that we have confronted with the COVID
23      pandemic.  It's greatly appreciated.  And I just think that
24      the Court should be aware of that.
25              I also cannot strongly enough echo the comments

1   about the mediators in this case.  They undertook a
2   herculean task, one which I can't imagine they expected they
3   had the energy and the participation that was required of
4   them; I can't imagine they envisioned it when we first met
5   back in -- I think it was March of 2020.  The mediators
6   certainly went above and beyond in many ways, indeed,
7   volunteering to undertake tasks that I think go well beyond
8   what we can expect of mediators.
9           And I will note, Your Honor, that there had been
10  at least one individual who had initially advised the Court
11  that they were not interested in participating.  We notified
12  the Court we would not be representing that person; we were
13  granted leave.  And thanks to the efforts of the mediator,
14  that person also joined in the settlement of this case so
15  that was -- I think speaks very, very highly -- I have never
16  encountered such professionalism from mediators.  I have
17  been involved in, literally, thousands of mediations in the
18  40 years of my career.
19          THE COURT:  Let me interrupt you just to say,
20  Mr. Gilbert -- I don't know Ms. Gold that well, but I have
21  known Michael Lewis even longer than I have known Joe
22  Sellers; that says something.
23          I think Joe has probably heard me say this before,
24  that my massive Black Farmers class action -- which went on
25  even longer than this -- I think would not have settled if

1   it weren't for Michael Lewis; so he is quite a treasure to
2   the courts, to the bar, and to the mediation world.  And I
3   am as grateful to him for what he has done in other cases as
4   I know people are around the country as you've just
5   expressed here.
6              But the point both you and Mr. Sellers make that
7   settling a case with 621 [sic] individuals that's not a
8   class action -- I can't even imagine how counsel on both
9   sides and the mediators made it happen, but I appreciate it.
10             MR. GILBERT:  Yes, Your Honor.  671.
11             And I will say that I know we sometimes use
12  expressions such as this but, in this instance, I actually
13  mean quite sincerely -- I do not think that this case could
14  have achieved a resolution but for the unique skills of the
15  mediators in this case.  A talented mediator would not have
16  been enough.  The exceptional talents of the mediators in
17  this case was required.
18             If I may turn to the remaining tasks, we are
19  seeking -- Your Honor, we are seeking to have the Court
20  retain jurisdiction for a limited purpose.  In paragraph 15
21  of the agreement the agreement provides that the parties
22  will ask the Court to retain jurisdiction.
23             As Your Honor is aware, the agreement provides
24  that the funds in this case are being paid as a -- to
25  compensate and to -- for lost retirement benefits.

1            There were 25 individuals who, through an
2    agreement between the parties, are receiving an adjusted
3    annuity, a government annuity.  And, as a result, the
4    completion of the tasks necessary to achieve the adjustment
5    of their annuities will require a bit more time and energy
6    on the part of the government -- I am not sure necessarily
7    the Department of Justice, but certainly from OPM and from
8    the FAA.  And, therefore, because it will take them a bit
9    longer, we would like the Court to retain jurisdiction
10   solely for the purpose of ensuring that the necessary tasks
11   are completed.
12           In particular, the agreement provides that those
13   25 individuals, each of whom needed just a little bit more
14   service credit in the job that was at issue here, flight
15   services -- just a little bit more service credit -- and the
16   agreement provides that the government will pay both the
17   employee and the employer's contribution to the retirement
18   system to effectuate that adjustment to their annuity
19   benefits.  There are a variety of steps -- I don't think we
20   need to bore the Court with the specifics of those steps,
21   but there are a few steps that need to be done in order to
22   calculate the amounts that need to be paid to OPM for the
23   retirement system to effectuate the annuities.  And just out
24   of an abundance of caution, to make sure nothing goes wrong
25   unexpectedly and we need to seek enforcement, we would like

1    the Court to simply retain jurisdiction.
2             I do also just want to note that we were
3    especially pleased with the agreement that -- as I
4    mentioned, the funds are providing for -- to compensate the
5    individuals for lost retirement benefits.  And, as a result,
6    the agreement also provides that -- it, of course, has no --
7    it takes no position with regard to tax consequences.  But
8    we are pleased that individuals will be able to consult with
9    their individual tax preparers and determine whether there
10   is any opportunity to seek any kind of deferred accounts --
11   deposit the funds into deferred accounts, IRA, 401(k),
12   whatever it may be.  The agreement takes no position on
13   that; and, of course, we don't give tax advice, so we have
14   left it to the plaintiffs to seek appropriate advice.  So
15   those are the remaining steps, Your Honor.
16            Perhaps if there are any questions -- I will just
17   check to see if Joe has anything further; and we'll turn it
18   over to Mr. Kirschner.
19            Any questions, Your Honor?
20            THE COURT:  No, Mr. Gilbert.  Thank you very much.
21            MR. GILBERT:  Thank you, Your Honor.
22            THE COURT:  Anything further, Mr. Sellers, or
23   shall we hear from the government?
24            MR. SELLERS:  I have nothing further, Your Honor.
25            THE COURT:  Mr. Kirschner.

1           MR. KIRSCHNER:  Thank you, Your Honor.
2           I just want to concur with both Mr. Gilbert and
3  Mr. Sellers about the professionalism throughout this case
4  and throughout the mediation process.
5           We really do appreciate all that the
6  individuals -- we agree with what they have mentioned.  We
7  appreciate this Court for its patience in preparation for
8  trial and its patience for us to conclude their case.
9           We appreciate the professionalism on the opposing
10 side.  It truly was a very, very professional endeavor.  And
11 we wish -- and I concur wholeheartedly with both Mr. Sellers
12 and Mr. Gilbert, and underline that, on the development of
13 this case.  I appreciate the professionalism by them and
14 also the attorneys and their law firms.
15          And then lastly, but certainly not least, I can't
16 emphasize enough Mr. Lewis and Ms. Gold, they both were
17 exceptional in terms of being there for -- to talk to
18 counsel, to coordinate things, and to resolve this.  And I
19 really do -- I can't underscore any more than what's already
20 been said about how exceptional they have been; so I just
21 wanted to concur with what's already been said.
22          As to what needs to go forward, I think we are
23 pretty much in agreement with what Mr. Sellers and
24 Mr. Gilbert said.
25          Just one small clarification.  In terms of the

1  continuing jurisdiction, it's laid out in paragraph 15 --
2  and nothing that Mr. Gilbert has said is -- it may come to
3  your attention, but I just wanted to clarify it for Your
4  Honor, that -- it's about the work that the FAA must do to
5  transmit the information.  So, yes, it's with a continuing
6  jurisdiction in this case, that it's the FAA and not OPM.  I
7  wanted to make sure that there was no ambiguity about that,
8  that the continuing jurisdiction and -- (telephone
9  interruption) I apologize for my phone.
10               But, anyway, Your Honor, I just wanted to make
11 sure there wasn't any ambiguity on that front, that it's --
12 it's about the responsibilities of the FAA for when that
13 gets completed.  We provide that notice to the plaintiffs;
14 they will provide those to the Court.
15               So with that, Your Honor, I am happy to answer any
16 questions that you have.
17               THE COURT:  No.  I am fine with what's been said
18 today.  And I fully understand what you have just said.  The
19 agreement says that the agreement contains the entirety of
20 the agreement; so the limited jurisdiction is not as it was
21 paraphrased today although that was helpful to me, but the
22 language of the agreement itself controls.
23               I also want to thank the government,
24 Mr. Kirschner, because this case went on for a very, very
25 long time and everybody was getting ready for trial.  And I

1    am not sure -- none of us knows what would have happened at
2    the trial.  The idea of a monthlong bench trial was one
3    thing; but what was particularly daunting was the idea --
4    because it wasn't a class action -- of how to figure out the
5    damages piece of it for each individual.
6              And I think that the Department of Justice -- and
7    I assume the powers that be at the Department of
8    Transportation and the Federal Aviation Administration as
9    well -- came to the table in good faith or this would not
10   have happened.  And from what you say and what Mr. Sellers
11   and Mr. Gilbert have said -- both sides worked very hard
12   with the mediators.  And, again, it always takes -- it takes
13   two to tango.  And I think that once we got the ball
14   rolling, and I guess I put some pressure on both of you a
15   month or two before trial was to begin -- I appreciate very
16   much the good faith under which these discussions were
17   undertaken by both sides, and the government deserves a lot
18   of credit for approaching it with an open mind.  And both
19   sides deserve a lot of credit for approaching it with the
20   kind of professionalism and civility that -- you know, I
21   wasn't there.  But when Mr. Gilbert says, in 40 years of
22   practicing law, this is one of the high points of working
23   with opposing counsel and one of the high points of working
24   with mediators -- and Joe has had a lot of experience with
25   mediators; so when all of you say that about each other and

1    the mediators, I can only imagine this was, as you've
2    described it, a unique experience.  And the results are --
3    the results are excellent as far as I can tell.
4               So I appreciate it.  I am pleased.  And I
5    understand that -- I agree with what Mr. Sellers said at the
6    outset; because this is not a class action, there is no need
7    for notice to the world; there is no need for a fairness
8    hearing, and there is no need for the Court to approve the
9    settlement.
10              I do understand from what was said here today that
11   the relevant people, which is the 671 plaintiffs, were all
12   contacted, were all involved, all had individual -- came to
13   a group meeting, discussions -- or else this wouldn't have
14   happened because at this point they have all signed
15   releases; no one put a gun to their heads.
16              So I have nothing more to say unless you do except
17   to thank you all for -- thank you all for this -- the word
18   herculean effort has been used with respect to the
19   mediators, but the herculean effort undertaken by counsel as
20   well.
21              I am happy -- if anybody else has anything more to
22   say, otherwise I will just await the motion to dismiss.
23              MR. SELLERS:  Your Honor, this is Joseph Sellers
24   for plaintiffs; we have nothing else.  Thank you.
25              MR. KIRSCHNER:  Nothing else, Your Honor, from the

1  government.  Thank you for your time.

2              THE COURT:  Well, thank you all.

3              And I'm sorry -- as I said, I couldn't see you

4  today because I am having problems at home with our internet

5  connection for some reason.  So I think that concludes

6  today's proceedings, and thank you all very much.

7  Congratulations.

8              MR. KIRSCHNER:  Thank you, Your Honor.

9              MR. SELLERS:  Thank you, Your Honor.

10             MR. GILBERT:  Thank you, Your Honor.

11             THE COURT:  Take care.

12             (Whereupon, the proceeding concludes, 2:33 p.m.)

13                         **CERTIFICATE**

14             I, ELIZABETH SAINT-LOTH, RPR, FCRR, do hereby
    certify that the foregoing constitutes a true and accurate
15  transcript of my stenographic notes, and is a full, true,
    and complete transcript of the proceedings to the best of my
16  ability.
             PLEASE NOTE:  This hearing was held via
17  videoconference and telephonically in compliance with the
    COVID-19 pandemic stay-safer-at-home recommendations and is
18  therefore subject to the limitations associated with the use
    of technology, including but not limited to telephone signal
19  interference, static, signal interruptions, and other
    restrictions and limitations associated with remote court
20  reporting via telephone, speakerphone, and/or
    videoconferencing capabilities.
21             This certificate shall be considered null and void
    if the transcript is disassembled in any manner by any party
22  without authorization of the signatory below.

23       Dated this 24th day of May, 2021.

24       /s/ Elizabeth Saint-Loth, RPR, FCRR
         Official Court Reporter
25